UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIFFANY WAGNER,

    Plaintiff,

v.

COUNTY OF PLUMAS, et al.,

    Defendants.

No. 2:18-cv-03105-KJM-DB

ORDER

Plaintiff Tiffany Wagner moves for an order amending the scheduling order and for leave to amend her complaint. Mot., ECF No. 17. Defendant Brandon Compton opposes, Compton Opp'n, ECF No. 20, as does defendant County of Plumas, Plumas Opp'n, ECF No. 21. Plaintiff has replied. Reply, ECF No. 23. The motion was submitted without oral argument. *See* ECF No. 24. Having considered the moving papers and the record before it, the court GRANTS plaintiff's motion.

I.    BACKGROUND

    A. Factual Background

This case arises from plaintiff's employment as a correctional officer with the Plumas County Sheriff's Office ("PCSO"). Compl., ECF No. 1, ¶ 5. She alleges Plumas County Sheriff Gregory Hagwood engaged in sex discrimination, passing her over for a promotion in favor of defendant Brandon Compton, who was promoted to Correctional Sergeant, a supervisory

role over her. *Id.* ¶ 32. Hagwood allegedly created and maintained a sexually hostile work environment in which women who reported sexual harassment were retaliated against. *Id.* ¶¶ 22–24. Hagwood also allegedly failed to prevent sex discrimination and sexual harassment by his subordinates. *Id.* ¶ 21. Plaintiff alleges she was repeatedly sexually harassed and assaulted by Compton. *Id.* ¶¶ 7, 34, 35. Plaintiff brings state and federal law claims arising from these allegations for sexual harassment, sex discrimination, retaliation, failure to prevent discrimination, violations of the Ralph Civil Rights Act, the Bane Civil Rights Act, Title VII of the Civil Rights Act of 1964, § 1983 claims sounding in equal protection and the First Amendment, and the Public Safety Officer's Procedural Bill of Rights Act. *See generally id.*

As relevant to this motion, Plumas County Sheriff's Department terminated plaintiff's employment since the filing of the original complaint. Mot. at 3. Plaintiff filed her complaint on November 30, 2018; Plumas County terminated her on October 7, 2019. *Id.* She alleges Undersheriff Dean J. Canalia and Sergeant April C. Gott conspired with the defendants currently named in her complaint to violate her civil rights under 42 U.S.C. § 1985. *Id.*; Proposed First Am. Compl. ("PFAC") ¶¶ 185–194, ECF No. 17, Ex. A. Compton was placed on administrative leave following plaintiff's complaint about his alleged harassment. PFAC ¶ 58. In her proposed first amended complaint, plaintiff alleges that on the day after Compton was placed on administrative leave,

> Sergeant Compton called the Jail and asked to speak to Sergeant April Gott to ask her about the Internal Affairs ('IA'), and asking her what everyone was talking about. Sergeant Gott is friends with Sergeant Compton and his wife. Yet County permitted Sergeant Gott to participate in actions against Plaintiff.

*Id.* ¶ 60. Gott then allegedly suborned a false inmate grievance against plaintiff. *Id.* ¶¶ 66–68.

As to Canalia, the complaint alleges he knew Compton lied in a criminal investigative interview regarding plaintiff's sexual harassment and assault complaint, yet Canalia authored a Notice of Intent to Discipline plaintiff that included the allegation that plaintiff "filed a false criminal complaint alleging that Sergeant Brandon Compton sexually assaulted [her]." *Id.* ¶¶ 75, 78. Based on this disciplinary notice, plaintiff says she was constructively terminated from her employment. *Id.* ¶ 79.

The acts alleged above constitute the basis of plaintiff's proposed new conspiracy claim under 42 U.S.C. § 1985(1) and (2).

B. Procedural Background

The court set the fact discovery deadline in the case as December 15, 2019. Pretrial Scheduling Order, ECF No. 15 at 2. The pretrial scheduling order also cautioned the parties that "[n]o further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown." *Id.* Plaintiff commenced written discovery at the outset of the case. Reply at 2. In July 2019, after defendants' administrative and criminal investigations of the plaintiff concluded, plaintiff began to notice defendants' depositions. *Id.*; Declaration of Calvin Chang ("Chang Decl.") ¶ 8, ECF No. 23 at 8–9. Plaintiff's counsel repeatedly rescheduled the depositions to account for the rescheduling of a mediation involving the parties to the operative complaint; the mediation concluded on November 2, 2019, without the case settling. *Id.* ¶ 8. At the time she filed the instant motion on November 20, 2019, plaintiff had taken or scheduled ten depositions before the December 15, 2019 close of discovery. *Id.* ¶ 9. In addition to seeking to amend her complaint, plaintiff also requests an extension of fact discovery until May 15, 2020.[1] *Id.* ¶ 12.

II. LEGAL STANDARD

A party seeking leave to amend pleadings after a deadline specified in the scheduling order must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" standard. *Johnson v. Mammoth Recreations*, *Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). Motions for leave to amend pleadings after the court's issuance of a pretrial scheduling order under Federal Rule of Civil Procedure 16 are deemed as motions to modify the scheduling order even when no formal request has been made. *Id.* Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Distinct from Rule 15(a)'s liberal amendment policy, Rule 16(b)'s good cause standard focuses primarily on the diligence of the moving party, and its reasons for seeking modification. *Johnson*, 975 F.2d at 609.

---

[1] The Chang Declaration lists this date as May 15, 2019, but this is an obvious typographical error.

If good cause exists, the movant next must satisfy Rule 15(a). *Cf. id.* at 608 (citing approvingly *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987), for its explication of this order of operations). Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give leave [to amend the pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments." *Ascon Props, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton, et al.*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Courts consider five factors in determining whether justice requires allowing amendment under Rule 15(a): "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (citing *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991)).

III. <u>DISCUSSION</u>

    A. <u>Rule 16(b): Good Cause</u>

Plaintiff bears the burden of showing good cause exists to modify the scheduling order. Fed. R. Civ. P. 16(b)(4). If a party moves to amend its complaint and reopen discovery, the court must consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM North Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted).

Plaintiff has shown good cause. There is no trial date set, and any potential date is still months away. The request to amend and modify the scheduling order is opposed, but for reasons discussed below, an opposition does not, standing alone, negate good cause. Compton characterizes the prejudice he would suffer as a "significant[] expan[sion] [of] the cost and burden

4

of this litigation." Compton Opp'n at 5. Sheriff Hagwood and Plumas County argue "any extension would be unjust to Defendants, who have diligently followed the scheduling order and prepared for the close of discovery," and say they "would be prejudiced by the delay" without identifying the source or nature of any prejudice. Plumas Opp'n at 3, 6. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609 (citation omitted).

The diligence of the party seeking amendment and extension of discovery is the focus of the good cause inquiry under Rule 16. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson*, 975 F.2d at 609). While defendants argue plaintiff's decision to not begin depositions until November 15, 2019, was "a failed strategical decision by plaintiff," the court disagrees. *See* Plumas Opp'n at 3. Unlike in *Johnson* and similar cases, the facts underlying the proposed amended complaint, which support the request for more time for discovery, had not occurred until shortly before the close of discovery.

While parties have an "unflagging obligation" to alert the scheduling judge of the nature and timing of anticipated amendments in their status reports so the judge can consider whether such amendments may properly be brought solely under the Rule 15(a) standard, *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1371 (1st Cir. 1991), that obligation does not impose a requirement that a plaintiff anticipate future adverse employment actions solely in the control of defendants. Here, when the complaint was filed, plaintiff remained employed with PCSO and had not yet been subject to the allegedly retaliatory investigation and discharge that is the subject of the proposed new conspiracy cause of action. Plumas County and Sheriff Hagwood may be correct that "Plaintiff's ultimate termination was certainly no surprise." Plumas Opp'n at 5. But a likely future course of events foreshadowed by plaintiff's being placed on administrative leave "as early as August 2, 2018," *id.*, is not grounds to amend a complaint before its claims are ripe, nor could plaintiff be expected to depose witnesses about events yet to happen.

/////

Sergeant Compton argues the facts alleged in the proposed amended complaint were known to plaintiff at the outset of the case. Compton Opp'n at 4. It is true plaintiff knew of the phone call between Sergeants Compton and Gott, which was recited in the original complaint, but that does not mean the call did not acquire new significance after subsequent events. The same is true of the allegations about Gott and Canalia in the operative complaint; later events tend to support an inference of knowing cooperation between these proposed defendants, when such an inference could not have been plausibly drawn at the time of the initial complaint.

Plaintiff's counsel avers he noticed or proposed several depositions in August, September and November, before plaintiff was terminated. *See* Chang Decl. ¶ 8. As noted, he rescheduled several depositions due to scheduling conflicts. The court notes plaintiff's counsel noticed only Sheriff Hagwood's deposition on August 22, 2019. Plaintiff's counsel suggested the balance of the depositions prior to the November 4, 2019 mediation, as opposed to actually noticing them. *See* Reply at 4. However, on these facts, this does not indicate plaintiff lacked diligence in complying with the court's discovery order.

As to the last factors, it was likely foreseeable by the time Plumas County issued its Notice of Intent to Discipline on July 15, 2019, that plaintiff would be fired, necessitating discovery regarding the reasons for the termination. As discussed above, foreseeability is not sufficient to make claims ripe for a proposed complaint, but it does militate in favor of plaintiff's notifying the court of the need to extend the discovery cutoff earlier than she did. Given the diligence discussed above, however, this factor does not outweigh the other factors in a finding of good cause.

The likelihood of further discovery yielding relevant evidence also weighs in favor of plaintiff. Further depositions will likely shed light on the decision to terminate plaintiff, which is relevant to claims in both the operative complaint and the proposed amended complaint, which the court allows as explained further below.

For the foregoing reasons, the court finds good cause to amend the scheduling order as required by Rule 16.

/////

### B. Rule 15: Undue Delay, Prejudice and Futility

#### 1. Undue Delay

Defendants argue undue delay, prejudice and futility support denying plaintiff's motion to amend the complaint under Rule 15. In light of Rule 15's policy of favoring amendments, defendants have the burden to show amendment is not in the interests of justice. *DCD Programs*, 833 F.2d at 187. An unjustified delay is "undue" under the Rule 15 analysis. *Western Shoshone*, 951 F.2d at 204. It is within the court's discretion to deny leave to amend when the amendment proposes adding new claims that movants knew or should have known about when the earlier pleading was filed. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Whether there has been 'undue delay' should be considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date." *Wizards of the Coast LLC v. Cryptozoic Entertainment LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015) (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991)).

As discussed above, some facts underlying the proposed amendment were known to plaintiff at the outset of the case. However, those facts alone did not support the proposed amendment; rather, the new claims ripened only after her recent termination at the hands of defendants' alleged conspiracy. The effect of the close of discovery is discussed above. There is no trial date currently set. The court finds no undue delay.

#### 2. Prejudice

"In the context of a motion to amend, prejudice means 'undue difficulty in prosecuting a lawsuit as a result of change in tactics or theories on the part of the other party.'" *Bennett v. Forbes*, No. 17-cv-464-MMA (KSC), 2017 WL 4557215, at *6 (S.D. Cal. Oct. 12, 2017) (quoting *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969)). Prejudice to the opposing party carries the greatest weight in the Rule 15 analysis. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The opposing party "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the … amendment been

timely.'" *Shuey v. County of Ventura*, No. 2:14-cv-09520-ODW (SHx), 2016 WL 4367224, at *4 (C.D. Cal. Aug. 11, 2016) (alteration in original) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

Defendants have not met their burden of showing prejudice if the proposed amendment is allowed. *DCD Programs*, 833 F.2d at 187. The proposed amendment adds an additional theory of recovery, but it does not constitute a "change in tactics or theories on the part of the other party" that creates undue difficulty for the defendants. Nor do defendants specifically identify any unfair disadvantage or deprivation of the opportunity to present facts or evidence from the proposed amendment. The proposed amendment contains no revelation unforeseen to defendants; it adds a theory of recovery based on a more complete and current understanding of the same transaction or occurrence.

### 3. Futility

Defendants' primary argument against amendment is futility. Futility can, by itself, justify denial of a motion for leave to amend. *Bonin*, 59 F.3d at 845. The Ninth Circuit has recently stated the test for futility as when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (citing *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)).[2] The Compton and Plumas oppositions each present two futility arguments. First, each argues plaintiff's proposed amended complaint would fail to state a claim for conspiracy. Second, each asserts the proposed § 1985 claim would be barred by the intra-corporate conspiracy doctrine.

---

[2] *Barahona* draws this quote from *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), through its citation of *Sweaney*. *Rykoff-Sexton* characterizes the test for futility as "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)" and thus borrows the "no set of facts" standard from the now-overruled *Conley v. Gibson*, 355 U.S. 41 (1957). Although the court believes the "plausibility" standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) is the appropriate overarching standard, the Ninth Circuit continues to cite the "no set of facts" standard for futility, *e.g.* in *Barahona*, and this court is thus bound to it. *See also Aldan v. World Corp.,* 267 F.R.D. 346, 360–61 (N. Mar. I. 2010) (discussing divergence of symmetry between Rules 12(b)(6) and Rule 15 futility post-*Iqbal*). In any event, applying the "no set of facts" standard in this instance does not yield a different outcome than the "plausibility" standard.

8

a. <u>Pleading Conspiracy</u>

The touchstone of adequate pleading of conspiracy is the pleading of facts that, if true, create a plausible statement of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations and internal quotation marks omitted)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim for conspiracy, plaintiff must show "an agreement or meeting of the minds to violate [her] constitutional rights." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989). "A conspiracy can be inferred from conduct and need not be proven by evidence of an express agreement." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). "For example, a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). However, to state a claim, the plaintiff must do more than plead independent parallel conduct on the part of the defendants. *See Twombly*, 550 U.S. at 554.

Defendants assert plaintiff's proposed amendment does not plausibly show agreement between the alleged conspirators. Sergeant Compton objects that there is no agreement pled between himself and Sergeant Gott in the following allegation:

> On July 21, 2018, Sergeant Compton called the Jail and asked to speak to Sergeant April Gott to ask her about the Internal Affairs ("IA"), and asking her what everyone was talking about. Sergeant Gott is friends with Sergeant Compton and his wife. Yet County permitted Sergeant Gott to participate in actions against Plaintiff.

PFAC ¶ 60.

The Plumas opposition also notes the absence of a direct allegation of agreement between either Sheriff Hagwood or Undersheriff Canalia and any other alleged coconspirator. Defendants argue "[t]hat both Hagwood and Canalia may have known of circumstances involving the veracity of Compton does not illustrate any agreement." Plumas Opp'n at 6. The proposed amended complaint states only that "Defendant Canalia included knowingly false material facts,"
/////

9

in his Notice of Intent to Discipline and that "Defendant Hagwood conspired with and ratified the false statements[.]"  PFAC ¶ 78.

As to Compton and Gott, the allegation of the July 21, 2018 phone call and subsequent subornation of a false inmate grievance plausibly creates the inference that Compton and Gott agreed either implicitly or explicitly to retaliate against plaintiff.  However, as to Hagwood and Canalia, the lack of any particularized allegation that they communicated with Compton, Gott or each other about the events does not adequately support the inference of an agreement.  For them, the proposed amended complaint shows the parallelism proscribed by *Twombly*, 550 U.S. at 554, not agreement.  Nonetheless, because the proposed amendment is properly pled as to Compton and Gott, amendment is not futile as to them.

b. Intra-Corporate Conspiracy

Defendants also argue the intra-corporate conspiracy doctrine bars the proposed § 1985 claim as a matter of law, making it futile.  The intra-corporate conspiracy doctrine holds that because corporate entities are singular legal entities, their agents and officers acting on their behalf cannot be liable for conspiracy, as there is no agreement between or among discrete legal actors.  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984) (establishing doctrine in application to Sherman Act claims).  The Supreme Court has never addressed whether a public entity can be liable for a § 1985 conspiracy carried out by or with its employees.  *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 n.11 (1979) (declining to address applicability of doctrine to § 1985 claims against public entities); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017) (same).  Most, but not all, circuit courts have applied the doctrine to bar claims against public entities.  *Webb v. Cty. of El Dorado*, No. 2:15-cv-01189-KJM-EFB, 2016 WL 4001922 at *5 (E.D. Cal. July 25, 2016) (collecting circuit court cases).  The Ninth Circuit has noted the split but declined to address the issue.  *Portman v. City of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993).

The Ninth Circuit has stated that application of the doctrine outside the antitrust context may be limited depending on the public interest the particular prohibition on conspiracy is intended to protect.  *See Webster v. Omninitrition Intern., Inc.*, 79 F.3d 776, 786–87 (9th Cir.

10

1996) (holding intra-corporate conspiracy doctrine inapplicable to RICO conspiracy). In *Webster*, the court cited with approval the following observation of the Seventh Circuit:

> Since a subsidiary and its parent theoretically have a community of interest, a conspiracy "in restraint of trade" between them poses no threat to the goals of antitrust law—protecting competition. In contrast, intracorporate conspiracies do threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers and separating racketeers from their profits.

*Id.* at 787 (quoting *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1989)). In *Rashdan v. Geissberger*, in analogizing to *Webster*, the court held the public policy of preventing civil rights discrimination underlying § 1985(3) foreclosed application of the intra-corporate conspiracy doctrine. No. C 10-00634 SBA, 2011 WL 197957, at *6–7 (N.D. Cal. Jan 14, 2011).

This court considered this question in *Webb v. County of El Dorado, supra.* There, this court cited *Rabkin v. Dean*, a Northern District case, for the proposition that the doctrine bars a § 1985 claim "where the conspiratorial conduct challenged is essentially a single act by a single governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity." 2016 WL 4001922, at *7 (quoting *Rabkin*, 856 F. Supp. 543, 552 (N.D. Cal. 1994)). In *Webb*, this court distinguished the facts of that case from those in *Rabkin* and found them more analogous to a First Circuit case in which the doctrine did not apply. *Id.* at * 8 (citing *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984)). In both *Stathos* and *Webb*, the defendants "took a series of actions . . . these actions involved discussions between them, which was necessary for their actions to be effective; and [] they intended the results." *Id.* at *7 (quoting *Stathos*, 728 F.2d at 20). Where the acts complained of went "beyond the ministerial acts of several executives needed to carry out a single discretionary decision," the intra-corporate conspiracy doctrine did not bar § 1985 claims. *Id.* (quoting *Stathos*, 728 F.2d at 21).

As in *Webb*, the court must undertake a "close examination of the factual allegations of [the] case . . . to make an informed decision regarding application of the intracorporate conspiracy bar." *Id*. As in *Webb* and *Stathos*, the allegations in this case go beyond a single discretionary act squarely within the official functions of the defendants. The alleged conspiracy appears to involve a series of independent acts, some of them outside of the

scope of the actors' capacity as agents of the Plumas County Sheriff's Office. Examples include Compton's alleged contact with Gott in contravention of his administrative leave status and Gott's alleged subornation of a false inmate grievance against plaintiff. At least on their face, these acts do not appear to be part of the kind of unified internal decision-making process the intra-corporate conspiracy doctrine is intended to address.

On these facts, the intra-corporate conspiracy doctrine does not bar the proposed amendment as a matter of law, and thus amendment would not be futile on these grounds.

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend her complaint and for an extension of the fact discovery cutoff is GRANTED. Plaintiff shall file an amended complaint consistent with this order within fourteen days. The scheduling order is hereby amended for fact discovery to close May 15, 2020. The parties are directed to file a joint status report within fourteen days of this order addressing any further adjustments to the scheduling order necessitated by this change.[3]

IT IS SO ORDERED.

DATED: February 18, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] On February 12, 2020, the parties stipulated to extend the cutoff for dispositive motions. That stipulation is denied without prejudice to a new stipulation in light of this order.