**CAL LAW APC**
CALVIN CHANG (SBN 277851)
980 – 9th Street, 16th Floor
Sacramento, California 95814
Telephone:     916.538.0225
cal@callawapc.com

**JOSEPH E. MALONEY**
Attorney at Law SBN 95458
12005 Peregrine Way
Auburn, California 95603
Telephone: 530.885.7787
joseph.maloney@jmaloneylaw.com

Attorneys for Plaintiff TIFFANY GOODSON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY GOODSON, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF PLUMAS, et al,<br><br><br>        Defendants. | CASE NO. 2:18−CV−03105−KJM−DB<br><br>**DECLARATION OF<br>JOHN D. O'CONNOR** |

        Accompanying this document is the Supplemental Declaration of John D. O'Connor in support of plaintiff's motion for attorney's fees and costs.


Dated:   October 6, 2023                    _/s/Joseph E. Maloney _____,
                                                          JOSEPH E. MALONEY
                                                          Attorneys for Plaintiff TIFFANY GOODSON

1        ## DECLARATION OF JOHN D. O'CONNOR

2        I, John D. O'Connor, do hereby declare as follows:

3    **I.      QUALIFICATIONS AND BACKGROUND**

4        1.      I am an attorney and licensed to practice law in all courts in the State of

5    California and have been so licensed since December 1972. I am currently the principal of

6    O'Connor and Associates, a law firm consisting of myself and several associates that specializes

7    in commercial litigation. I have fifty years of significant trial experience, including current jury

8    trial experience. In addition to my litigation practice, I have been retained as an attorney fee

9    expert on approximately two hundred and fifty occasions and have served as a consulting expert

10   on many more occasions.

11       2.      The following is a brief summary of my background and qualifications.

12       3.      I attended The University of Notre Dame in South Bend, Indiana, where I

13   graduated *magna cum laude* in 1968. In 1972, I graduated *cum laude* from the University of

14   Michigan Law School, where I was a member of the *Order of the Coif* and Associate Editor of

15   the Michigan Law Review. I was admitted to the California bar in 1972.

16       4.      After being admitted to the California bar, I held numerous positions at private

17   law firms where my practice focused on trial litigation. In 1972 and 1973, I was an associate

18   with the trial firm of Belli, Ashe, and Choulos, where I assisted Mr. Melvin Belli in the trial of

19   several large cases and tried three cases on my own. From January 1974 through December

20   1979, I was an Assistant United States Attorney for the Northern District of California in San

21   Francisco. In that capacity, I tried white-collar criminal cases as well as a variety of civil

22   matters.  Much of my civil work with the U.S. Attorney's office involved employment

23   discrimination cases brought against Government facilities, including one class action race and

24   discrimination case, which involved negotiating fees for thirteen lawyers.  In 1980 and 1981, I

25   was a senior associate at the prominent San Francisco firm of Brobeck, Phleger, and Harrison.

26

27

5. From 1982 through 2001, I was a principal and managing partner of the law firm of Tarkington, O'Connor & O'Neill, where our clients were mainly insurance companies, corporate risk management departments, and governmental entities, such as the FDIC, FSLIC, RTC, NCUA, and the United States government.

6. From 2001 through 2006, I was Special Counsel and a Director (equivalent in a legal corporation to a partner) for the Howard Rice firm, now merged with Arnold and Porter, practicing within the litigation department. At Howard Rice, I pursued a high-stakes litigation practice, including defense of R. J. Reynolds Tobacco Company and intellectual property disputes. At Howard Rice, I was designated as chief trial counsel in two major "soft IP" litigations, each case involving the scope of rights transferred under certain contractual arrangements, one representing an e-commerce platform provider and another representing Vivendi regarding the scope of rights to license video games in internet café settings.

7. Since July 2006, I have practiced on my own with several associates under the name of O'Connor and Associates. My practice continues to focus on complex business litigation, with some personal injury work for both plaintiff and defense, including an active trial practice. In my career I have tried over seventy civil and criminal cases in state and federal jurisdictions throughout the country. Approximately one-third of my time has been spent as a consultant and expert witness in attorney fee disputes.

8. In 1982, I began managing the Tarkington office and as our firm quickly grew to over eighty lawyers, I regularly kept abreast of billing standards in the community, and regularly subscribed to specialized publications geared to law firm management, such as the Altman and Weil annual reports and the monthly published Partners' Report. I also regularly reviewed more widely published legal periodicals.

9. As written billing guidelines became in vogue for institutional clients in the mid-eighties, I participated heavily in working with our institutional clients in government, insurance, and other large businesses to establish and implement practical billing standards. I

regularly consulted with these clients about their perception of the positive and negative in our billings, and where appropriate, remedied the same.

10.    I have kept abreast of the billing rates in the Bay Area, in both Northern and Southern California, and generally throughout the country since 1982.  Because we represented clientele in different business and governmental sectors, it was important to me to be conversant about rates throughout the litigation field ranging from premium to lower, more commoditized rates.

11.    Because our practice at the Tarkington firm often involved coverage, legal malpractice, and reinsurance and excess monitoring work, we reviewed the billings of a wide variety of firms in our regular practice, including premium-rate billings, lower, highly negotiated insurance defense charges, and standard business litigation charges with rates falling between these two groups.

12.    Although I have been involved in a significant amount of legal fee review, negotiation, and litigation since 1977, my involvement in legal fee dispute work increased significantly in 1989.  In that year, I was the Tarkington partner in charge of our work with failed and failing financial institutions on behalf of the FDIC, FSLIC, RTC, and NCUA.  At that time, we had performed extensive work in connection with the failed Golden Valley Bank, Turlock, California, then in Receivership under the aegis of the FDIC.  The insurance carrier for the bank insisted that we advise the government to release the insurance carrier from its defense obligations with a nominal payment.  After our refusal, the insurance company subjected the Receiver and our firm to numerous audits in an unsuccessful attempt to force the government to release the carrier from its obligations.  At this point I necessarily became immersed in the various billing standards prevalent in the community.

13.    During these years of legal fee disputes, I spent the majority of my time dealing with the developing field of legal "auditing" and related litigation.  As a result, I gained a wide knowledge of auditing practices, prevailing billing standards, and approaches employed by

legal fee experts, auditors, and litigators.

14. Due to my growing expertise in the legal fee and auditing issues, during the years 1991 through 2001, I consulted with numerous law firms throughout the country who were seeking my advice on audit criticisms leveled against their practices, almost invariably involved in large fee disputes. I also consulted on numerous occasions with fee payors in fee disputes. I continue this work as a subspecialty of my litigation practice through the present time.

15. While at Howard Rice from late 2001 through July 2006, we kept informed about both premium rates in the area and rates charged by the wider sector of more market-driven business firms, so that we could in turn appropriately set ours on an annual basis. Because we did work throughout California, our surveys involved both Northern California and Southern California, as well as national firm rates. It has been my experience that the rate structure of the San Francisco Bay Area is virtually identical to that in the greater Los Angeles area.

16. Since July 2006, I have practiced on my own with several associates under the name of O'Connor and Associates. My practice continues to focus on complex business litigation, including an active trial practice, with consistent work as well as a litigation fee expert.

17. I have been retained as an attorney fee expert on approximately two hundred and fifty occasions and have served as a consulting expert on many more occasions. A significant portion of those cases have been large and complex.

18. In total, I have testified as an expert or handled litigation in approximately twenty states. I regularly review published rate surveys, generally broken down by location, fields of practice, size of firm, and status of lawyer. For the past several years, I have also been consulting and lecturing nationwide through the auspices of the National Association of Legal Fee Analysis ("NALFA"). In addition to lecturing myself, I have attended numerous lectures of

legal fee analysts, expert witnesses, and general counsel on fee matters. I have had the honor of being named by NALFA the "nation's top attorney fee expert" since 2017.

19.    My *Curriculum Vitae* is attached hereto as **Exhibit A.**

20.    I have been retained by Plaintiff respond to Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees, including the Declaration of J. Scott Smith, which appears to be Defendants' counsel's argument masquerading as expert opinion. In rendering my opinion, I have reviewed the Motion for Attorneys' Fees, supporting declarations and exhibits, Defendants' Opposition thereto, and Plaintiff's Reply brief and supplemental declarations. I have also had several discussions with Plaintiff's counsel concerning the facts and nuances of this case.

21.    As a result of the foregoing, I am competent and willing to offer opinions on the pertinent fee issues.

II.    **SUMMARY OF OPINIONS**

22.    Defendants' objects to Plaintiff's fee request on the grounds that counsel's requested hourly rates are excessive, that Plaintiff failed to carry her burden as to reasonable hourly rates and therefore counsel's rates should be set to the rates Defendants paid their counsel in the instant matter; that counsel's hours are excessive and five categories of deductions should be applied to counsel's requested hours; that no multiplier is warranted; and that the fee award must be reduced because the fee request is disproportionate to the amount of damages recovered.

23.    Not only is Defendants' interpretation of governing case law misguided, but their Opposition and Mr. Smith's Declaration and supporting exhibits are inconsistent, and Mr. Smith attached a highlighted copy of Mr. Lambdin's invoice exchanged during the parties meeting and conferring concerning attorneys' fees rather than Mr. Lambdin's timesheet filed in support of the instant Motion.

1    24.    Plaintiff submitted evidence of counsel's reasonable hourly rates routinely

2    accepted by courts as sufficient to carry fee petitioner's burden.  Plaintiff's requested rates are

3    indeed reasonable for the instant matter.

4    25.    The five categories of objections listed by Mr. Smith do not warrant any

5    meaningful deductions.  I have prepared a series of charts summarizing and reflecting Mr.

6    Smith's objections attached hereto as **Exhibit B**.

7    26.    The "double billing" objection is more properly expressed as "duplicative

8    billing."  Lawyers conferring, as they must during litigation, is not properly called double or

9    duplicative billing. In that regard, I do not discern any excessive conferencing which would be

10   the more appropriate objection to lawyers speaking to one another. I, in fact, did not observe

11   anything approaching excessive conferencing here.

12   27.    Finally, the objection under the rubric of "clerical" covers that which for the

13   most part does not involve clerical work at all such as lawyers reviewing documents and taking

14   notes.  The few snippets of small time entries for routine tasks are generally for tasks such as

15   gathering documents for a deposition or putting them in one's briefcase at the end of the day.  In

16   short, Defendants' case is not made in this area.

17   28.    The claimed "block billing" entries are not blocked at all, meaning that *tasks* are

18   not aggregated.  Furthermore, Defendants' request for 100% deduction of purportedly block

19   billed entries is contrary to case law, with Courts more often making a 10% to 15% deduction to

20   block billed entries, with particularly egregious cases facing a 30% deduction.

21   29.    The items requiring "further explanation" or "clarification" do not generally

22   require clarification at all; they are adequately described in and of themselves, even if opposing

23   counsel claims not to understand them.  Additionally, they are not "vague," the more proper

24   objection to any entry that could not be understood.  To be sure, there is one entry in which the

25   defense claims Mr. Lambdin allegedly billed for sleeping in a van, in which Mr. Lambdin bills

26   9.0 hours.  The problem with this criticism is that it is simply not true, as one can see from Mr.

27

**DECLARATION OF JOHN D. O'CONNOR    6**

Smith's Declaration. The 9.0 hours was part of a billing entry with plentiful description provided in an invoice exchange during meet and confer efforts whereas a shorter description was included in the invoice filed in support of the Motion.

30.    The "investigation" and "process server" objection is quizzical.  Lawyers often investigate and Mr. Chang had confidence that Mr. Lambdin was the proper investigator to look into other activities of Sgt. Compton, and the appropriate person to approach Mr. Norberg.  I have review counsel's supplemental declarations and Plaintiff adequately justify an award of fees for this work.

31.    None of these five areas of criticism appear to be undergirded by some principled, conceptual basis for the particular area of criticism.  For instance, what type of activities are meant to be included in the "double billing" category?  Why is "investigation" an area of activity for which the attorneys could not bill?  Why do clearly stated activities need "further explanation?" We are not told. What is meant by "clerical" billing, and what standards are used to determine what is improper "clerical" billing?  Why are tasks that look like ordinary legal activities "clerical"? We are not given the rationale.  Why are entries describing one task, or entries with one or more activities related to the same task "block billed" warranting a deduction?

32.    Defendants' contention that fees must be reduced because they are grossly disproportionate to the amount of damages recovered is contrary to relevant case law and ignores the reality that Defendants' own litigation tactics directly contributed to the amount of fees sought herein.

## III.    DISCUSSION

33.    As discussed more fully below, Plaintiff carried her burden is establishing a reasonable lodestar and requested multiplier whereas Defendants failed to carry their burden of objection.  Plaintiff's requested hourly rates, requested hours, and requested multiplier are reasonable and should be awarded.

### Applicable Billing Rates

34.    The first failing of Mr. Smith's analysis regards hourly rates.  In his opining about what the applicable rate is, he makes no meaningful effort to slot the rates of petitioning counsel into a truly analogous cohort of lawyers of similar skill, experience, and reputation performing similar services in the applicable legal market.

35.    "The burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." (*Blum v. Stenson* (1984) 465 U.S. 886, 895, fn. 11.)  Here, Plaintiff's counsel submitted their own declarations attesting to their experience and hourly rates, as well as the declarations of other attorneys who practice employment law in Sacramento and who are familiar with the Sacramento market.  These supporting declarations filed by other attorneys include rates they have been awarded in other similar Sacramento employment cases.

36.    Defendants reject Plaintiff's showing, arguing that requested rates are based "on the highly fictionalized marketplace of how much other lawyers have convinced trial court judges to award them" and that Plaintiff must establish "what fee-paying clients are willing to pay in the local market in the Eastern District of California for services similar to employment trials." (Opposition at 11-13).  Defendants' position is contrary to applicable case law and seeks to impose a heightened standard that a fee-paying client must have paid the attorney his or her requested rate for it to be reasonable.  After creating this strawman argument, Defendants argue that rates should be set to the rates that Defendants' counsel charge which Mr. Smith declares his firm charges corporate clients: $300 for partner time and $275 for associate time.

37.    "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." (*Camacho v. Bridgeport Fin., Inc.* (9th Cir. 2008) 523 F.3d 973, 980 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F.2d 403,

**DECLARATION OF JOHN D. O'CONNOR    8**

407).)  Plaintiff provided this evidence in its Motion, carrying her burden, and it is for the Court to weigh the evidence.

38.    I have litigated for years, beginning in 1982, on behalf of municipal and other governmental entities including considerable assignments in employment litigation and prison-related claims.

39.    I have also worked for years as a fee expert for defense lawyers for governmental entities and am well aware of their rates as being well below those of the lawyers seeking fees from the entities they represent.

40.    In this latter regard, I have never opined that the rate schedules paid by governmental entities should be equivalent to the hourly rates of successful prevailing plaintiff counsel in suits against the governmental entity.  Moreover, I have never reviewed a Court opinion which states that the rates of governmental entity defense counsel should be equivalent to those of prevailing plaintiff counsel.

41.    I know very well that the moderate rate schedules my firm, the Tarkington firm, charged these entities, equivalent in inflation-adjusted dollars to those charged presently by Defense counsel, have no relationship to the fees in the market for the applicable cohort of litigation lawyers.

42.    To be sure, in some cases, plaintiff counsel's fees are only moderately above those of defense counsel as, for example, in straightforward personal injury claims or "barriers" ADA cases, also very straightforward.

43.    But often prevailing plaintiff counsel's fees are higher by significant percent, such as in class action or other complex claims.  But whether these rates are only slightly higher or are greatly higher, the rates awarded to Plaintiff's counsel are invariably higher than the rates charged by Defense counsel with a continuing contractual relationship with a governmental entity, often under a contract which guarantees a steady flow of litigation assignments.

**DECLARATION OF JOHN D. O'CONNOR    9**

44.     Around 2000, I lost an employment discrimination jury trial in Alameda County, Honorable Ronald Sabraw presiding.  I recognized the above fee discrepancy, and agreed to pay the prevailing firm, Dickson and Ross, well more than twice the rate I was charging my client.

45.     In short, the rates sought by Mr. Chang, Mr. Maloney and Mr. Lambdin are squarely within the range of applicable rates for lawyers of their skill and experience, and do not push the outer limits of prevailing hourly rates.

46.     I agree with Mr. Smith's general opinion that a form of circular or, as he terms it, "cyclic" showing of rates, should not be dispositive.  In other words, I agree that an averment by a contingency lawyer, stating that his or her rates is X dollars per hour should not, standing alone, be considered meaningful or conclusive evidence.  This is so because in some cases there may not be a showing of why that rate correctly slots the lawyer in the appropriate cohort, and also even if it does, there may be no showing that the opining lawyer has achieved that rate in litigation similar to the case at bench.

47.     However, if the rate as averred by a declaring lawyer has been recognized and assigned by another Court after a consideration of the applicable legal market, that prior judicial decision, if applied to a similar lawyer in a similar case, can be very helpful and authoritative in assigning a rate in the instant case.

48.     In this regard, Defendant incorrectly argues, and Mr. Smith opines incorrectly, that the case law requires a Court to "fix a fair market value" for the services at issue, focusing on whether a fee-paying client has paid the attorney his or her requested rate.  This is simply not a correct statement of the law.  And what does it mean? What is the "market value"? If by this Defendant means to say, and it appears it does, that counsel must show that civil rights victims pay a certain rate out of their own pockets in the ordinary course of events. This, frankly, is absurd.

49.     The test in a civil rights case where fees are awarded by statute is not whether a private party plaintiff would normally pay a lawyer his or her hourly rate out of his own pocket

**DECLARATION OF JOHN D. O'CONNOR    10**

for the fees sought, since common sense tells us that most civil rights plaintiffs are impecunious. The burden of showing that clients normally pay a certain rate to civil rights lawyers can never be met.

50.    Indeed, the standard so proposed would contradict the stated rationale in legislative history for the various civil rights fee shifting statutes, that is, that prosecution of these cases must be incentivized by paying the substantial rates that private lawyers receive from paying clients in non-civil rights cases requiring analogous skills and experience. In *Horsford v. Board of Trustees of California State University*, the Court addressed the policy considerations behind FEHA's fee-shifting statute:

> 'The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination' on account of, inter alia, race or color. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 582–583 [110 Cal. Rptr. 2d 809, 28 P.3d 860].) " ' "[W]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " ( *Id.* at p. 583, quoting *Baggett v. Gates, supra,* 32 Cal.3d at p. 142.) The award of reasonable attorney fees accomplishes "the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices.' (Gov. Code, § 12920.)"

(*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 394.)

51.    It is precisely because the plaintiff cannot usually pay for a lawyer, either on an hourly or acceptable contingent basis to pursue the civil rights case, that the law encourages representation by awarding fees usually often far more than the portion of the award which would be due and payable under a percentage contingent fee.

52.    Put differently, if the law were to hold that a prevailing plaintiff could get no more fees than would normally be paid on a contingent basis from the award granted, then there would be no need for a fee shifting statute. In other words, there would be no need for a fee

shifting statute if plaintiffs were able to obtain representation simply by agreeing to a contingency fee out of the award to be sought.

53.     Indeed, the Court in *Moreno v. City of Sacramento* stressed the importance of awarding fees sufficient to attract qualified counsel to civil rights cases while cautioning against awarding a fee that would constitute a windfall. (*See*, *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1111.)  Plaintiff's requested rates would not constitute a windfall in this hard-fought, complex case as discussed more fully below.

54.     Now to the rates sought.  Plaintiff's counsel did not rely solely on Declarations of contingent fee Plaintiff lawyers.  But to the extent it did so rely, these Declarations were not just circular bootstrapping.

55.     Rather, I draw attention to Exhibit A to Mr. Smith's Declaration, attaching Mr. Whelan's Declaration in *Gateway Capitol Community Charters* in the Superior Court for the County of Sacramento.  This Declaration, as its own Exhibit A attaches a Sacramento Superior Court fee award in *Medro Johnson v. Sears Roebuck*.

56.     The *Medro Johnson* fee award notes that the basis of which the Court relied in awarding Mr. Whelan $625 per hour in 2012.  The Court specifically rejected the opinion of the defense expert and relied on my Declaration because I very carefully related the requested rate for Mr. Whelan to the rate of private lawyers of similar skill and reputation in the market for civil rights employment cases.

57.     So, when the Court awarded Mr. Whelan $625 per hour in 2012, which with inflation would be approximately $800 per hour today, this award was based upon a foundation of rates of lawyers of similar skill, reptation and experience in similar litigation in the relevant legal market.  That rate, accordingly, is not merely a "cyclic" rate as Mr. Smith contends.

58.     So, Mr. Whelan's Declaration is well-founded, and not merely "cyclic."  Moreover, the Court's opinion in *Medro Johnson* makes clear that the Court was validating my opinion as to the applicable market and therefore is not only an approval of Mr. Whelan's

hourly rate in 2012, but also of my credibility and reliability as an expert witness opining on the applicable market.

59.     I was also the expert opining on behalf of Mr. Alan Reinach and Ms. Wendy Mussell in a civil rights employment case which, like *Medro Johnson*, was closely analogous to the instant case in terms of the applicable legal market and the employment of lawyers of similar skill, reptation and experience.  In *Brown v. California Dept. of Corrections and Rehabilitation*, Sacramento Superior Court Case No. 34-2015-00176321, a case requiring skill in the area, but not as factually complex as the instant case, involved a prison's lack of religious accommodations for a Seventh Day Adventist.  In that case, based upon my opinion as to the applicable market and the applicable rates, Mr. Reinach was awarded $750 per hour and Ms. Mussell was awarded $700 per hour.  These rates fit nicely with the experience levels of Mr. Maloney and Mr. Chang.  I also note that the court awarded Mr. Jonathan Cherne, who was barred in 2011 and has similar skills and experience as to Mr. Lambdin, $550 per hour.

60.     Again, these awards are not merely "cyclic" awards in which rates are bootstrapped by bare allegations of applicable rates, as Mr. Smith contends.  Because they are based instead on careful market analyses by two separate Sacramento courts in similar cases with similarly skilled lawyers, based in large part on my opinions, they constitute very strong precedent supporting the rates sought here.  Both cases argue for higher rates for both Mr. Maloney and Mr. Chang than the rates sought herein.

61.     Indeed, for lawyers with specialized experience, the rates of Mr. Chang and Mr. Maloney are well supported not only by private practitioners in employment litigation involving civil rights aspects, but also by rate surveys and the Laffey Matrix as discussed in the original Fee Motion.  Likewise, the modest rate sought on behalf of Mr. Lambdin should not be controversial and is in the middle of the pack for experienced litigation lawyers in the Sacramento area.

62.    Regarding Mr. Lambdin's role as a specialized factual investigator (he also provided non-investigative legal services) seeking to locate a witness of particular relevance and sensitivity, his retention and rate should not be controversial.

63.    All "investigation" need not be the sole province of a "private investigator." It is common for lawyers to call witnesses for interview and there is no standard in the community requiring that a "private investigator" be used for such activities, especially when the interviewing investigator may only get one chance to speak to the witness about sensitive and nuanced matters. I can say without fear of contradiction that there are thousands of lawyers as I write this that are calling potential witnesses and interviewing them, often deposing them later. I have done so on many occasions, including with the Howard Rice firm, where we kept our rates at the very highest charged in the state. The firm is now merged with Arnold and Porter, one of the highest rate firms in the country. Interviewing witnesses is one of the tasks lawyers perform, and in this case, it would be close to malpractice to have sensitive witnesses questioned by an unschooled investigator without nuanced knowledge of the litigation and the psychology of dealing with prison witnesses.

64.    In rendering an opinion on reasonable hourly rates, I frequently refer to the Real Rate Report. The "Real Rate Report: Lawyer Rates, Trends and Analysis" published by Wolters Kluwer's ELM Solutions and CEB ("Real Rate Report") examines anonymous data sourced from legal invoices that were actually billed to clients and sets forth hourly rates based on various criteria, including location, experience, position, whether the matter involved litigation, and practice area. The Real Rate Report is highly respected and has been recognized by courts as a reliable resource:

> Because the Real Rate Report "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies," it provides "a much better reflection of true market rates than self-reported rates in all practice areas."

**DECLARATION OF JOHN D. O'CONNOR    14**

(*Donastorg v. City of Ont.*, 2021 U.S.Dist.LEXIS 246890, at *19-20 (C.D.Cal. Sep. 23, 2021).)

65.    While the Real Rate Report includes more data for larger metropolitan areas across the country, it does include a relevant data point for the Sacramento market.  I attach hereto as **Exhibit C** relevant data cut from the highly respected Real Rate Report for reflecting partner and associate rates for major cities throughout the country based on data through June 2022.  Per **Exhibit C**, Sacramento partners command a third quartile rate of $659, a median rate of $430, a first quartile rate of $375, and a mean rate of $503.  Sacramento associates command a third quartile rate of $375, a mediate rate of $350, a first quartile rate of $263, and a mean rate of $320.

66.     First, I note that Defendants' recommended hourly rates fall below the first quartile rate for partners and marginally above the first quartile rate for associates.  Counsel's skill, experience, and reputation are far greater than the first quartile of attorneys in the Sacramento market, indeed, counsel warrant third quartile rates, which are consistent with the rates sought herein.

67.    I will now proceed to specific assertions by Defendant and Mr. Smith of incorrectly charged fees.

### The Number of Hours Billed is Reasonable

68.    Before returning to specific billing criticisms, that Mr. Maloney expended approximately 800 hours is not surprising in the least.  Mr. Maloney had no motive to spend excessive time, given the uncertainty of result which the County successfully induced by delving into unfavorable actions of Plaintiff Goodson, albeit unrelated to Compton's assaults.  Again, *Moreno v. City of Sacramento* is instructive:

> It must also be kept in mind that lawyers are not likely to spend
> unnecessary time on contingency fee cases in the hope of inflating
> their fees. The payoff is too uncertain, as to both the result and the
> amount of the fee. It would therefore be the highly atypical civil
> rights case where plaintiff's lawyer engages in churning. By and
> large, the court should defer to the winning lawyer's professional
> judgment as to how much time he was required to spend on the

case; after all, he won, and might not have, had he been more of a
slacker.

(*Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1112.)  This was not a fee-shifting case wherein prevailing plaintiff's counsel had anything close to a guarantee of success and needlessly churned the case to run up attorney's fees.  Rather, Plaintiff's success was not a fait accompli, and Plaintiff's counsel had to overcome significant obstacles to successfully prosecute this case.  Furthermore, Defendants, not Plaintiff, were responsible for the expanded scope of the litigation, including noticing an in-person deposition in Hawaii, the retaliatory actions, and pretextual investigations into Plaintiff.  After terminating Plaintiff's employment, Defendant suborned a criminal investigation and prosecution of Plaintiff in another jurisdiction that was voluntarily dismissed by the prosecutor who informed the state court that Plaintiff's conduct was most likely not criminal.  Defendant deemed Plaintiff's sexual harassment was false and constituted the crime of filing a false police report, which was found to be retaliatory on its face.

69.     I know as a trial lawyer of over 50 years experience that time spent in trial and in the few months prior to trial will usually double all time expended up to the point of immediate trial preparation.

70.     Accordingly, in assessing the gross amount of hours expended, especially by Mr. Maloney, I have several related opinions in reply to the opposition assertions regarding the overall expenditure of time.

71.     First, given the scope of the litigation was necessarily expanded by the County, the total expenditure of hours is neither surprising nor unreasonable.

72.     Second, as an experienced and thorough trial lawyer, Mr. Maloney's time in total is well within standard and far below the elastic limits of reasonableness.  For instance, I would expect that Mr. Maloney would expend at 150-200 hours during trial and roughly twice that, or 300-400 hours, in trial preparation in the two months preceding trial.  My point is simply that

1  trials take enormous effort, and that immediate preparation and trial time often doubles the

2  amount expended prior to the immediate preparation.

3      73.    Finally, as alluded to above, it was the County, not the Plaintiff, which caused

4  the expansion of this case for which it has no equitable basis to complain. (*See*, *Peak-Las*

5  *Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 114 ["A defendant 'cannot

6  litigate tenaciously and then be heard to complain about the time necessarily spent by the

7  plaintiff in response.'"].)  As such, Plaintiff is entitled to a fully compensatory award of

8  attorney's fees, which includes those fees necessarily incurred by Plaintiff in response

9  Defendants.

10                          **Indicia of Billing Judgment**

11      74.    Impressively, throughout the billing entries submitted, are time entries which are

12  reduced from "actual time," including such reductions in the criticized areas.  There are an

13  unusually large number of such voluntary reductions, demonstrating billing judgment, and

14  arguing against any suggestion that timekeeping practices were inflationary.  As such, counsel's

15  voluntary exercise of billing judgment as explained in the instant motion, further demonstrates

16  the reasonableness of Plaintiff's lodestar. (*See, Syers Props. III v. Rankin* (2014) 226 CA4th 691,

17  700 [counsel's voluntary reductions are a factor in favor of affirming hours determination].)

18              **Petitioning Lawyers' Fees Are Correctly Charged**

19      75.    I note prefatorily that Mr. Smith's criticisms are seemingly not based on his

20  experience or expertise, as a fee expert qualified by a Court.  Defendants' analysis is also

21  inconsistent – Mr. Smith's declaration states, "Based on these challenges, I believe that of Mr.

22  Lambdin's total billing should be reduced by 140.6 hours and that Mr. Chang's bills should be

23  reduced by 225 hours. Mr. Maloney's billing shows 417.21 hours that are questionable." (Smith

24  Decl. at ₱ 8.)  Yet, Defendants argue in their opposition that: "All totaled, there are at least 117

25  hours that must be discounted from Mr. Lambdin's bills. All totaled, Mr. Lambdin's fees must

26  be reduced by 140.6 hours" (Opposition at p. 15:27-28); "[a]ll totaled, Mr. Chang's bills should

27

be reduced by 237.6 hours" (Opposition at p. 16:20); "[a]ll totaled, Mr. Maloney's bills should be reduced by 417 hours." (Opposition at p. 17:10.)

76.      I further note that all of the highlighted exhibits attached to Mr. Smith's Declaration consisting of Plaintiff's counsel's invoices are not those invoices submitted by Plaintiff in support of the instant Motion.  Plaintiff's counsel provided time records to Defendants in advance of the instant motion pursuant to court ordered meeting and conferring and cautioned that these invoices were subject to change should the parties not settle the amount of attorneys' fees.  Plaintiff then filed her fee motion including invoices, some of which were different than those exchanged during meet and confer efforts.  However, Mr. Smith's exhibits are based on the meet and confer invoices while Defendants' opposition appears to be based on the invoices submitted with Plaintiff's Motion. For example, Mr. Lambdin's November 13, 2019, entry "patrol shopping (Norberg)" does not appear in Exhibit B to Smith's Declaration, but does appear in the invoice submitted in support of the instant Motion.  I also note that Defendants address two 9-hour entries on August 19, 2022, one with a more fulsome description and one for "(slept in van)." (*See*, Opposition at p. 15.)  However, Plaintiff only seeks 9-hours for Mr. Lambdin's work on August 19, 2022.  The entry with the longer description was included in the meet and confer invoice whereas the shorter entry was included in the invoice submitted in support of the instant Motion.

77.      Furthermore, as discussed more fully below, I have reviewed Mr. Smith's exhibits and prepared charts analyzing the same, including a summary chart (**Exhibit B-1**), a chart reflecting objections to Mr. Lambdin's time (**Exhibit B-2**), Mr. Chang's time (**Exhibit B-3**), Mr. Maloney's time (**Exhibit B-4**), double billing objections (**Exhibit B-5**), block billing objections (**Exhibit B-6**), clerical work objections (**Exhibit B-7**), further clarification objections (**Exhibit B-8**), and private investigation and process server work objections (**Exhibit B-9**).  Mr. Smith's exhibits reflect a total of 140.6 hours for Mr. Lambdin. 251.2 hours for Mr. Chang, and 397.21 hours for Mr. Maloney, for a total of 789.01 hours. (*See*, **Exhibit B-1**). Deducting these

totals from counsel's requested hours results in 434.64 hours for Mr. Maloney, 528.3 hours for Mr. Chang, and 73.2 hours for Mr. Lambdin.

78.    Turning to Mr. Smith's objections, there are five areas of color-coded criticisms of the billings of the petitioning lawyers: (1) yellow for "double billing", (2) pink for "block billing", (3) blue for "clerical work at attorney rate," (4) orange for "billing which requires further clarification", and (5) green for "billing for private investigation and process server work at an attorney rate." (Smith Decl. at ⌐ 7.)

**"Double Billing"**

79.    Mr. Smith flagged a total of 96.3 hours for what he calls "double billing," consisting of 64.9 hours for Mr. Lambdin, 24.4 hours for Mr. Chang and 7 hours for Mr. Maloney. (*See,* **Exhibits B-1**, **B-5**.)  By "double billing" I assume he means "duplicative" efforts.  In this regard, I would also add the criticism of Ms. Warner that Mr. Lambdin attended some depositions along with Mr. Chang, which I therefore interpret to mean that the efforts were claimedly duplicative.

80.    Mr. Lambdin was acting as an investigator, and if Mr. Chang felt Mr. Lambdin would be helpful as a resource during questioning, his presence would be quite rational.   The other alternative would be less effective and more costly, which might be an extensive fact memo prepared by Mr. Lambdin so exhaustive that his presence would not have been needed. But such a process would require great time for preparation of the memo by Mr. Lambdin and much memo-review by Mr. Chang.  Also, if Mr. Lambdin had a trusting interview with the witness or knew him or his institution, such might help the witness to be forthcoming.

81.    As practicing lawyers know, it is often advantageous when questioning a witness to be accompanied by someone who has deposed or interviewed the witness previously.

82.    It is simply not the ironclad rule that all depositions must be attended by only one lawyer.  Ms. Warner may have an opinion from her point of view that only one lawyer was required in the particular case, but may not understand why Mr. Chang wanted Mr. Lambdin

1     present, which is a matter within Mr. Chang's discretion.  It does not appear to me that Mr.

2     Chang or Mr. Maloney abused that discretion.

3          83.     Most of the "double billing" criticisms relate to one plaintiff counsel

4     communicating with another.  This is not considered duplicative billing.  Each lawyer is

5     performing a different task, even though they are both conferring about the same subject matter.

6          84.     While having multiple lawyers unnecessarily performing the same act can be

7     considered "duplicative," when co-counsel communicate with one another, the appropriate

8     objection would be "excessive conferencing" not "duplicative tasks." But only when the total

9     amount of conferencing is unreasonable.

10         85.     Litigating lawyers must confer with their co-counsel throughout the litigation,

11    and usually oral conferencing is more efficient than writing detailed memos.  There are certainly

12    cases I have reviewed where litigating lawyers spend an inordinate amount of time conferring

13    with one another, often in meetings of five or six lawyers.  But in any case, where conferencing

14    is criticized, the key question is whether such conferencing is necessary or efficient when

15    performed.

16         86.     In various cases, I have in fact criticized excessive conferencing.  In so doing I

17    aggregate the hours spent by lawyers speaking with one another and compare it to the legitimate

18    needs of the case.  Generally speaking, "excessive conferencing" is an objection that is usually

19    limited to obviously inefficient and unnecessarily lengthy conferences, and therefore such

20    objection is appropriately made only in a minority of cases and normally by adding the total

21    hours spent throughout the litigation.

22         87.     Regarding this claim of "double billing," which largely consists of the instances

23    in which one lawyer speaks to or emails another lawyer, it is the County that is responsible for

24    turning this into a two-lawyer case, thereby necessitating some level of communication between

25    Mr. Chang and Mr. Maloney.  Of course, these lawyers should also communicate with the

26    investigating lawyer, Mr. Lambdin.

27

**DECLARATION OF JOHN D. O'CONNOR     20**

88.    Indeed, if there are two lawyers needed for a case, each would be subject to criticism if they did not confer with one another throughout the litigation.  The amount of communication between the two main lawyers was moderate and appears to be necessitated by key events or issues.

89.    In short, I see no explanation as to why this inter-lawyer communication was excessive or unnecessary.

### Block Billing

90.    Mr. Smith flagged a total of 539.86 hours for "block billing," consisting of 192.2 hours for Mr. Chang and 347.66 hours for Mr. Maloney. (*See*, **Exhibits B-1**, **B-6**.)

91.    As an expert for over thirty years, I have worked for both parties seeking fees and for parties opposing fees.  In contrast, there are experts who work virtually exclusively for those seeking fees, and others who work exclusively for those opposing fees.  These latter experts are able to take more extreme positions than if they accepted assignments for both sides.  But that said, virtually without exception, all experts in the field of attorney's fee disputes apply principles similarly from case to case, including their definitions of "block billing."

92.    For example, experts who routinely and invariably criticize so-called "block billing" have certain methods of defining same.  For instance, an expert may say that an entry with two semicolons and/or periods are "blocked."  Others will require only one semicolon or period.

93.    The proper rationale behind the controversial criticism of block billing is that more than one *task* is being described in the entry, therefore making it difficult to determine how much time was spent on one *task* and another *task* or *tasks.*

94.    So, accurately defined, "block billing" is any entry in which more than one *task* is described.  As the better reasoned cases hold, block billing is discouraged but not prohibited. (*See, Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325 ["Block billing, while not objectionable per se in our view…"].) It results in discounted time when it results in

entries that are difficult to discern as to reasonableness. For this reason, the cases that criticize block billing, properly, do so because the entries are thereby vague.

95.     However, a *task* may have several constituent *activities* which are part of the *task*. Indeed, the ABA Billing Guidelines clearly distinguish between tasks and activities.

96.     It is therefore not "block billing" to enter for the purposes of full description several related activities in one billing entry.

97.     For instance, it is perfectly appropriate to bill 8.0 hours for "Preparation for deposition of Sergeant Smith." But a conscientious biller may also include in that same entry constituent tasks in preparation for the deposition of Sergeant Smith, such as "review written statement of Smith; review documents produced by Smith; study deposition of Jones regarding allegations against Smith."

98.     The above latter billing entry is most assuredly not "block billing." Rather, it is a conscientious and fulsome description of the task of preparing for the deposition of Smith.

99.     In my experience in opposing other expert opinions, often the battle line is drawn as to a particular entry as to whether or not more than one task is described. Even at that, such "block billing" does not necessarily warrant criticism if the reviewing court is satisfied that the entry is not meant to obfuscate and if each task is adequately described such as an assessment of reasonableness can be made as to the overall time.

100.    Indeed, the case law is clear that merely because an entry is blocked does not mean that a discount is required.

101.    In fact, as Defendant likely knows if case law was consulted is that the ordinary cut for block billing is 10 to 15%, and only occasionally, in egregious cases, 30%. (*See, Welch v. Metro. Life Ins. Co.*, (9th Cir. 2007) 480 F.3d 942, 948 (citing California State Bar's Committee on Mandatory Fee Arbitration's report that block billing may increase time by 10% to 30%). And, to repeat, cuts are only rendered under extraordinarily suspect billing practices. Yet, Defendant is advocating for 100% cuts for block billing and other categories where only

small discounts are made in appropriate situations. The only area out of five criticized

categories where wholesale cuts are appropriate is for truly "clerical" billing.

102.    I note that Defendants request that the Court deduct 100% of the 539.86 "block

billed" hours.  However, a 10% deduction would only be 53.99 hours, a 15% deduction would

only be 80.98 hours, and a 30% deduction would only be 161.96 hours, assuming that all

identified entries in fact constitute impermissible block billing.  However, as discussed more

fully below, Mr. Smith's objections lack merit.

103.    In this case, unlike most cases in which I deal with opposing experts, the opinion

with which I am dealing is one stated, not by an opposing expert, but by an opposing litigation

counsel.

104.    I have reviewed all of the claimed "block billing" entries flagged by Mr. Smith

and can discern no principled pattern by which he identifies entries subject to the "block

billing" criticism.

105.    For example, oddly, Mr. Smith includes as block billing various entries which

may involve lengthy tasks, but which only include one description of that task, with no sub-

descriptions of constituent activities, the latter often a source of confusion in analyzing block

billing.

106.    For example, on November 12, 2018, is the following entry which Mr. Smith

criticizes as being blocked: "Review 180 pages attached personnel file." On April 1, 2019, the

following entry is claimed to constitute block billing: "Review Defendant County production of

1046 pages."  Yet, another entry on August 8, 2018, is criticized as block billing: "Review Jail

videos, 9 videos."  Likewise, on July 26, 2018, 3.5 hours is billed, having been reduced from

4.9 hours: "Travel to Reno meet with client and back."

107.    Each of the above entries is not even arguably blocked, but, rather, consists only

of a single entry which no expert would claim is blocked.

**DECLARATION OF JOHN D. O'CONNOR    23**

108.    I have reviewed hundreds of declarations of opposing experts and have never seen a block billing criticism of an entry with only one activity described.

109.    There are other entries criticized as constituting block billing, which in fact do contain multiple descriptions.  For example, on January 21, 2019, there is an entry for "review folders; Notes and incorporate into case files."

110.    This entry shows two activities separated by a semicolon, but as is obvious, these entries describe only one task, which is making notes for the case files.  This is a classic case of two activities which constitute aspects of the same task.  Indeed, this entry could have been written without a semicolon.  In this case, the time could not be broken up as between the task of reviewing the folders and that of taking notes, since they are but two aspects of the same work, or, stated differently, two activities related to the same task.  That is, the biller is taking notes while reviewing files.  How can this time be disaggregated?  It cannot.

111.    In summary, the claims of block billing fail because the criticized entries can be broken down into either one of two groupings.  One grouping is of entries that are not multiple at all, but merely describe one task consisting of one activity, however lengthy that one activity may be.  The second category of incorrect objection is of grouping of entries of activities which all relate to the same overall task.

112.    As part of **Exhibit B**, I have aggregated the criticized entries as color-coded by Mr. Smith, so that the Court can review each criticized grouping as condensed.

113.    To be sure, there are several entries which appear to be ambiguous as to whether they are all constituent activities of one task or technically involve more than one task.

114.    But even if one were to assume that these entries were in fact blocked, they are so descriptive and the times so reasonable that they are not subject to criticism, consistent with the case law.

115.    Mr. Maloney particularly, often gives fulsome descriptions of time for an entry of only one hour or less.  Yet the basis for criticism of alleged block billing is that the reviewer

cannot tell what was done, usually because the questionable blocked entries are all so vague. That is not the case with Mr. Maloney's which, if they suffer at all, suffer happily from an overly fulsome description of what was done, far more description than necessary under prevailing custom and practice.

116.    The Court will note in the various categories of criticized entries that the time billed by Mr. Maloney, Mr. Chang and Mr. Lambdin is often not the "actual" time, which is noted, but some lesser amount.  Such exercise of billing judgment makes these entries further immune from criticism.

117.    I will treat each of these areas of criticism separately and as well provide a chart in the attached Exhibits in which I criticize the criticism.

118.    Finally, regarding block billing, the entries are in fact descriptive and do not appear to be designed to hide time that may or may not have been spent.  In other words, they do not suffer from the defect of vagueness, which is often the basis for a court to reduce fees for block billing.

119.    Because the billing descriptions of the lawyers, most notably Mr. Maloney, offer fulsome detail and are often billed in small increments, they have none of the vices that are usually present when a court does criticize block billing.

120.    Further, as noted above, the three lawyers often note the "actual" time spent, while billing a lower amount.  Because the amounts billed appeared to be quite efficient, there is no compelling need to reduce fees here.

121.    Put differently, courts are often understandably wary of large amounts of time with very vague component parts such as "review file," "prepare for discovery," or "confer with co-counsel." Courts on occasion see 7.0 and 8.0 daily entries which are comprised of these vague entries and understandably often grant discounts in such situations.  But that is not the case we have here.

/ / /

1

**Clerical Work**

2    122.    Mr. Smith flagged a total of 64.35 hours for "clerical work" billed at an attorney

3 rate, consisting of 33.2 hours for Mr. Chang and 31.15 hours for Mr. Maloney. (*See*, **Exhibits**

4 **B-1**, **B-7**.)

5    123.    A substantial area of claimed excessiveness is in what Mr. Smith and Defendants

6 claim is "clerical" billing.  It appears that Mr. Smith concludes that it is clerical if Mr. Maloney

7 makes "notes" or "indexes" the facts in preparation for trial or deposition.

8    124.    A "clerical" activity is one which the client would reasonably expect would be

9 performed by a non-billing secretarial employee.  Such tasks might include, for example, the

10 routine filing of a single written letter or the stamping of an envelope.

11    125.    On the other hand, services which might appear to be relatively simple or rote

12 are billable if they are beyond the routing housekeeping expected of a secretarial employee.  In

13 modern times, it is often a fact that thousands of documents must be produced with appropriate

14 relevance and privilege review, or received and indexed.  If there is a sufficient volume of such

15 tasks, they may properly be assigned to a paralegal, but nonetheless billable.

16    126.    In fact, by definition, paralegal work involves tasks which could be performed

17 and billed by a lawyer.  A paralegal is deemed reasonably assigned to such tasks when the

18 volume of such document work is such that the lower paralegal billing rate will save the client

19 legal expense that would be incurred if a lawyer performed those tasks.  On the other hand, if

20 the volume of a production of documents by an opponent is not particularly voluminous, the

21 review of such documents would appropriately remain with a litigating lawyer.

22    127.    In any case, the question must be asked in assessing whether a task is a non-

23 billable "clerical" job is whether or not the client would expect secretarial personnel to perform

24 the task.  The job of filing one letter might be secretarial but the job of organizing ten thousand

25 documents would likely be a paralegal task because in the latter case, the client would not

26 reasonably expect that the law firm would take on that task without compensation.  Another

27

measure of whether a task is properly billable is whether there need be some mental input into the process of reviewing and/or organizing the documents.  Any such task requiring some mental discernment of discretion is a billable task.

128.    In that background, it appears, oddly, that Mr. Smith considers it to be "clerical" if Mr. Maloney makes "notes" or "indexes" the facts in preparation for trial or deposition.  This is most assuredly legal work that is billable.

129.    Making notes, lists of questions or lists of facts – often by chronological or subject matter organization – is the essence of trial preparation.  Such tasks are not clerical merely because documents were handled, summarized, listed, or notated.

130.    I have prepared for trial on hundreds of occasions, and for deposition on over 1,000.  In so doing, I constantly cull and order exhibits for opening, direct and cross-examination.  I constantly note the facts by date, subject matter, or by witness, often noting exhibit numbers.  I often repeat and revise these tasks, even during breaks in the trial.  My firm's office and storage are full of boxes with notebooks and groupings of exhibits reflecting these tasks.

131.    The key question in this case is for such activities, should secretarial personnel perform these tasks? Of course not. In the billings I have reviewed here, and the flagged entries of Mr. Smith, I have not seen any entry where my reaction is that a secretary should have performed the task.  Because attorney trial preparation involves note-taking, listing of exhibits or indexing key events does not make these tasks "clerical."

132.    I have interviewed Mr. Maloney on this subject.  Part of his preparation for trial is listing key facts and dates in what he feels are the appropriate order and taking notes from document reviews.  He describes some of this activity as "indexing" facts and documents.

133.    Again, merely because a lawyer's activity involves some form of notetaking or organization of documents, does not render that activity "clerical."  In short, the client does not

expect a legal secretary to prepare for trial or deposition by indexing or listing the appropriate relevant documents and facts.

134.    To be sure, there are some "clerical" aspects to a lawyer's activities.  To impeach a witness, a lawyer might review his document list, pull out five pages from his files, hopefully with copies already in existence, staple or clip them, and give them to the Court Reporter, witness, and counsel.  Accordingly, there are clerical aspects to these activities, but they are an everyday part of taking a deposition and thus part of the time appropriately billed.

135.    Entries most closely approximating a "clerical" task is one entry of Mr. Maloney where he bills 0.2 hours for "boxed files to remove from the courtroom," billed at actual time of 0.4 hours.  While this cut of time for this routine task shows good billing judgment, it is simply the case that lawyers pack their briefcases or document boxes at the conclusion of a day or trial, all part of a lawyer's job, even if that job incidentally has some aspects of it which, taken in isolation, seem clerical.  But the client does not expect a secretary to be at the ready at the courtroom or deposition room so that 0.2 hours of boxing documents can be saved.  So, as pedestrian as boxing exhibits is, it is in fact a routine part of a lawyer's day.

136.    This was not such a document-intense case, albeit a complex one, that would have benefitted from the assignment of a paralegal.  Since paralegals organize documents, which lawyers eventually review, assignment of a lower-rate paralegal is only cost-effective is there is an economy of scale to justify it.

137.    There are some activities performed extensively by paralegals, such as routine privilege review of thousands of pages of requested documents.  But in this case, I did not see any significant legal time expenditure which would have benefited from a paralegal. In any case, paralegals are billing personnel.

/ / /

1

**Requires Further Clarification**

2     138.    Mr. Smith flagged a total of 16.7 hours for entries which require further

3 clarification, consisting of 4.4 hours for Mr. Lambdin, 0.9 hours for Mr. Chang, and 11.4 hours

4 for Mr. Maloney. (*See*, **Exhibits B-1**, **B-8**.)

5     139.    These flagged entries, attached hereto as **Exhibit B-8** are somewhat quizzical.

6 For instance, one entry in this category for November 15, 2019, is 1.0 hour for "depo Kip

7 Hymas." I do not see that there is any reason for further explanation or clarification as to this

8 entry.

9     140.    The next entry supposedly requiring explanation is 1.4 hours for "travel to

10 office" which was clearly travel from the Hymas deposition. When a lawyer is traveling on

11 assignment, travel time is appropriately measured from the assignment back to the office. I

12 would be surprised if Mr. Smith did not bill his time in that fashion as well, and therefore I am

13 somewhat surprised that these entries would be flagged as requiring further explanation. This

14 entry, and others like it, are certainly not vague when read in connection with other entries

15 billing that day.

16     141.    Another flagged entry which supposedly needs clarification is "travel from

17 Quincy for deposition of Hagwood." On the same day, 2.9 hours is charged for "depo of Sheriff

18 Hagwood." So, it seems obvious that the travel from Quincy is, as noted, for the deposition of

19 Sheriff Hagwood. Why these entries need clarification is unclear.

20     142.    In fact, I cannot see why any of the entries which are flagged as needing

21 explanation in fact need any clarification. It is sometimes the case that a reviewer may not

22 understand why another lawyer was performing an activity but that is not an objection to the

23 reasonableness of the billings, and, in any case, it is quite clear what work is being performed

24 for which the lawyer is billing.

25

26

27

**DECLARATION OF JOHN D. O'CONNOR**    **29**

143.    In short, the criticism of "needs further explanation" does not appear to be a valid category of criticism.  The entries are not vague.  Rather, Smith apparently is questioning what activities were performed even though they appear obvious.

### Private Investigation and Process Server Work

144.    Mr. Smith flagged a total of 71.8 hours for "private investigation" and "process server" work, consisting of 71.3 hours for Mr. Lambdin and 0.5 hours for Mr. Chang. (*See*, **Exhibits B-1**, **B-9**.)

145.    Another flagged color-coded criticism is of "investigation."  As we have discussed regarding Mr. Lambdin, there is no basis to claim that factual investigation is not a lawyer's work.  That is what a lawyer does.  In this case, Mr. Chang was confident that Mr. Lambdin had the knowledge and experience to question the witnesses sought, including Mr. Norberg.  In this situation, neither Mr. Chang nor Mr. Maloney should have performed this investigation because the investigator may need to be a testifying witness.

146.    Furthermore, counsel have provided further explanation for these services in their supplemental declarations.

147.    In short, it is difficult for Mr. Smith to criticize Mr. Chang's judgment that Mr. Lambdin's experience and abilities made him an appropriate investigator.

### <u>Multiplier</u>

148.    Two factors support a multiplier.  First, given the intentional expansion by the County of the Goodson employment saga, Plaintiff's lawyers were forced to expend hours far above those for more standard sexual harassment/assault case, turning it into a complex retaliation case with many tributaries.

149.    As a result, the lawyers were forced to face increasingly significant demands on their time.  That Mr. Maloney was, first, a required addition to Mr. Chang's services and thereafter in a relatively compressed period of time was forced to expend 800 hours to prepare

for and try this case, certainly means that he could not take on other significantly demanding work for over a year. The same holds true for Mr. Chang during several key time periods.

150. The second corollary of the County's expansion of the time is that the contingent risk was now abnormally high, especially as the County focused on the relationship between Ms. Goodson and an inmate. This focus made the case more doubtful and certainly increased the cost and attendant risk of these lawyers staying involved. In my view, this is an appropriate case to reward the lawyers by some form of multiplier. *Ketchum v. Moses* is instructive:

> The economic rationale for fee enhancement in contingency cases has been explained as follows: 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.' (Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567.) 'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.'

(*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132-1133.) This was not a simple FEHA case wherein counsel could be assured of their success when they agreed to take on this case. The contingent risk in this case was very real given challenging facts such as Plaintiff's relationship with an inmate.

151. Therefore, a multiplier appears warranted, which has the additional benefit of a cautionary lesson for the County. When a female employee is the victim of sexual assault, the County should be reflexively reactive to protection of that employee, and not, as here, reflexively circling its wagons while smearing the victim. From my reading of the Court's decision, it seems that Sgt. Compton's tendencies were widely known within the County. It also seems that Ms. Goodson's friendship with the inmate, a former peace officer, had been widely known as well, but not subject to discipline until she complained against Sgt. Compton.

152.     Defendants tenaciously litigated the instant case, directly leading to the amount of fees sought herein, yet seek to use its status as a government entity and the fact that taxpayers will ultimately bear the burden of the fee award as a shield.  "*Serrano III, Horsford, and Schmid* preclude a rule which awards less than the fair market value of attorneys' fees merely because the case was filed against a government agency." (*Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319, 1332.)  The *Rogel* Court held that awarding less than the fair market value of attorneys' fees because the losing party is a government entity "would also incentivize governmental entities to negligently or deliberately run up a claimant's attorneys' fees, without any concern for consequences." (*Id.*)  As such, Defendants cannot avoid the award of a multiplier merely because Defendant is a government body, and the taxpayers will ultimately bear the burden of the fee award.

**Plaintiff Successfully Litigated the Case**

153.     My final general criticism of the objections of Defendant and Mr. Smith regards defining what is "success."  The Defendant County and Mr. Smith appear to contend that Plaintiff is not "successful" if she does not achieve the entire *amount* of damages sought.  This is simply not the legal standard and punishes any principled plaintiff's lawyer who zealously seeks the highest amount of damages possible but does not obtain all of them.  In this case, it is difficult to argue that an award of $752,000 is not "success."  It is success, unalloyed.

154.     *Cosby v. Autozone, Inc.*, a FEHA case, is instructive.  The *Cosby* Court found that plaintiff's jury verdict advanced the public interest to some degree, regardless of the monetary award." (*Cosby v. Autozone, Inc.* (E.D.Cal. Apr. 24, 2016, No. 2:08-cv-00505-KJM-DAD) 2016 U.S.Dist.LEXIS 55051, at *31.)  The *Cosby* Court noted:

> As the Ninth Circuit has observed, a court 'should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested.' *Quesada v. Thomason*, 850 F.2d 537, 538 (9th Cir. 1988). Rather, a court should consider the 'important social benefits [] not reflected in nominal or relatively small damage

1

awards.' *Id.* at 540.

2

*Id.* Like *Cosby*, Plaintiff here fulfilled the important social benefits underlying FEHA.

3

155.    To be sure, if a plaintiff pushes an overblown case by billing large amounts of

4

time with the gist of the claims unsuccessful and meritorious only on the margins, and the part

5

of the claim that was successful could have been achieved with but a small fraction of time

6

billed, then the Court in its discretion can and perhaps should reduce the fees sought.  This is

7

only common sense.

8

156.    However, in this case Plaintiff initially sought relief for the sexual assault which

9

claim later morphed into as well retaliatory termination.  She was successful on these claims.

10

157.    Indeed, the quantum of proof necessary to prove the $200,000 in lost future

11

benefits was the same quantum of proof as would argue for an award of $2 million.  The Court

12

simply found that there was not proven a likelihood that Plaintiff Goodson would have

13

continued employment with the County through retirement.  But she was clearly successful in

14

her claims, even though the amount of damages was judiciously limited.

15

158.    Moreover, it is simply not the case, especially in civil rights litigation, that the

16

amount of fees cannot exceed the amount of damages awarded.  In fact, the contrary is often

17

true.

18

159.    This case illustrates why fees can and should so often be greater than the award,

19

especially in a case, as here, where Defendant raises the price of poker by expanding the scope

20

of the case to include various investigations into potential incrimination or pretextually justified

21

termination of the employee.

22

160.    It is admitted that this case began as being based on a straightforward claim:

23

Plaintiff asserted that Sergeant Compton sexually assaulted her on several occasions.

24

161.    Not content simply to dispute the claim and/or the damage caused (which could

25

have been limited), Defendant greatly expanded the scope of this case.

26

27

**DECLARATION OF JOHN D. O'CONNOR**     **33**

162.    As a result of the expansion of scope of this case, Plaintiff's relationship with an inmate, which had been apparently well known, became an asserted basis for her termination. This gambit of the County therefore needed to be disputed as primarily or substantially a pretextual basis for retaliatory firing.  And from that claim, there was the further corollary claim and investigation into whether and to what extent Plaintiff lied about the relationship, which also extended the scope of the litigation.

163.    With her termination, which had not occurred when Mr. Chang began his work, the damage case became far more complex, and the related issue of retaliatory motive loomed large.  This issue in turn brought into play the integrity and motives of various investigations into Plaintiff's conduct.

164.    As the case thereby expanded in complexity and workload, Mr. Chang felt compelled to bring in Mr. Maloney, a well respected former Assistant U.S. Attorney with great experience in similar litigation and an excellent reputation as a trial lawyer.

165.    This, then was not a case in which an overzealous plaintiff's lawyer expanded a claim beyond its elastic limits.  It was the County that expanded this case and is now complaining that the expansion has proven unsuccessful and thereby cause high fees.

166.    In light of this expansion, the point made by Plaintiff counsel is well taken that the County can afford to spent great amounts to strain the financial resources of litigating counsel.

167.    Mr. Smith claims that the County is "cost-conscious" because, like all governmental units, it bargains downwards the rates it pays its counsel.

168.    This proof of economy ignores the obvious.  A low hourly rate does not mean that the County would not cause increase in the hours billed when it deems advisable. Moreover, much of the cost expended by the County regarding Goodson related to County employees on salary, such that the County to some extent expanded the workload of Plaintiff's

**DECLARATION OF JOHN D. O'CONNOR    34**

counsel without costing the County.  In other words, the County was able to shift some of its existing resources to this case, often without hiring additional employees or contractors. In short, when the County intended to drive up costs for Plaintiff, it did so quite substantially. As a result, Plaintiff's counsel faced the choice of allowing the County to overwhelm the Plaintiff's case or to hang in at a considerable expenditure of time, without any assurance that the case would be ultimately successful. Parenthetically, this expansion not only justifies a large number of hours, but also a multiplier, as Plaintiff's counsel faces an extremely negative financial impact with lack of success. Additionally, the complexity thereby engendered justified bringing in Mr. Maloney, and justifies rates that are charged for other than simple, garden-variety litigation.

## IV.    CONCLUSION

169.    The County's objections to Plaintiff's counsel's billings are based on incorrect standards for fees in a civil rights case and an incorrect application of billing objections as to time spent.

170.    Often a slight "haircut" for petitioning lawyers is helpful to ensure that no recovery is granted for any questionable entry.  But counsel's principled self-policing of its time entries, together with unusually detailed descriptions, justify granting the fees in their entirety, plus some level of multiplier.

## V.    FEES INCURRED RENDERING OPINION

171.    My hourly rate for this matter is $595.  In rendering my opinion and preparing this declaration, I have expended a total of 19.9 hours for $11,840.50 in fees reviewing Plaintiff's Motion for Attorneys' Fees and supporting documents, Defendants' Opposition thereto and supporting documents, communicating with Plaintiff's counsel, drafting and revising my Declaration, and reviewing Plaintiff's Reply brief and supporting declarations.

172.    My associate, Benjamin Pekarek, helped me prepare my declaration.  Mr. Pekarek graduated from the University of San Diego School of Law and School of Business in

2014, concurrently obtaining his juris doctor and Master of Business Administration.  Mr. Pekarek has worked for O'Connor & Associates since 2017, assisting me with both my litigation practice and my attorney fee expert practice.  Mr. Pekarek has become remarkably proficient in attorneys' fees matters and co-lectures an attorneys' fees CLE with me. I charge $455 per hour for Mr. Pekarek's services.

173.    Mr. Pekarek billing a total of 24.6 hours for $11,193 in fees reviewing and analyzing Plaintiff's Motion for Attorneys' Fees and supporting documents, Defendants' Opposition thereto and supporting documents, communicating with Plaintiff's counsel, preparing exhibits analyzing Mr. Smith's exhibits, conducting legal research, and assisting with drafting my Declaration.

174.    In total, my firm has expended 44.5 hours for $23,033.50.


I declare under penalty of perjury that the foregoing is true and executed in Marin County, California, on October 6, 2023.

John D. O'Connor

# Exhibit A



**O'CONNOR**
**AND ASSOCIATES**
*Special Counsel Services*

4 Embarcadero Ctr, Ste 1400, San Francisco, CA 94111
T: 415-693-9960 / F: 415-692-6537 / www.joclaw.com



**JOHN D. O'CONNOR**
**4 Embarcadero Center, Suite 1400**
**San Francisco, CA 94111**
 **Phone:  415-693-9960**
**Direct:  415-464-6250**
**Mobile: 415-999-2528**
**john@joclaw.com**

*CURRICULUM VITAE*

**Education**

University of Michigan Law School, *cum laude* – Juris Doctorate, 1972

- Member, Michigan Law Review (1970-1972), Associate Editor (1971-1972)
- Member, *Order of the Coif* (1971-72)
- Winner of three AmJur awards as the most outstanding student in a subject.

University of Notre Dame, *magna cum laude* – A.B., 1968

**Work Experience**

Associate, Belli, Ashe & Choulos – 1972-1973

- Dealt mainly with assessing and negotiating "splits" with other attorneys of contingency fees

U.S. Attorney's Office, Civil Division – 1974-1979

- Dealt with attorneys fees, "fee-shifting" civil rights cases; assessed, negotiated, and litigated attorneys fees in both individual cases and class action cases; litigated Saunders v. NARF in the Northern District of California and the 9th Circuit

Senior Associate, Brobeck Phleger and Harrison – 1980-1981

- Working for prestigious litigation firm, learned staffing and billing procedures and protocols for large commercial cases

Managing Partner, Tarkington, O'Connor and O'Neill – 1982-2000

- Managing partner responsible for all firm billings
- Supervised billing seminars for newly graduated and recently hired lawyers within firm

- Kept current both with hourly fees charged in the community and billing protocols for various firms and cases throughout the area
- Subscribed to various periodicals such as <u>Partners Report</u> and <u>Altman & Weil</u> annual reports (Altman & Weil is a nationally known law firm consultant organization)
- Consulted with insurance executives regarding billing procedures for their companies
- Consulted with insurance claims executives regarding CUMIS issues including billing rates for various types of litigation throughout the Bay Area
- Worked with various government agencies, such as FDIC, FLIC, NCUA, and RTC regarding appropriate billing protocols, and discussed bills with government officials regarding compliance; Dealt with governmental auditors regarding same
- Consulted with insurance executives regarding CUMIS issues; was resource for those executives negotiating CUMIS fees with independent counsel
- Represented numerous entities including governmental entities, in attorneys fees litigation (e.g. in the Sonoma County jail class action litigation, litigated the fees of Heller Ehrman in a fee-shifting civil rights context)
- Defended legal malpractice cases and examined legal malpractice and other professional liability cases for clients, including the conservators and receivers of failed and failing financial institutions
- Interacted with legal counsel and claims executives for governmental and insurance clients in review and analysis of firm billings
- Dealt with <u>Brandt</u> fee issues both as a plaintiff and defendant in insurance coverage cases
- Reviewed bills of firms in underlying cases while representing insurers, reinsurers and access carriers
- Significant work regarding legal fee auditing and litigation regarding legal fees and legal fee auditing, detailed below

Director (Partner) and Special Counsel, Howard Rice – 2001-2006
- Regularly apprised of market rates of competing law firms, as firm annually reset its rates
- Acquired knowledge of total fees charged on various complex cases, both by the Howard Rice firm and others
- Named arbitrator on 3-arbitrator JAMS panel regarding over $2,000,000 of asbestos billings; heard and evaluated testimony of competing fee experts and auditors

Principal, O'Connor and Associates – 2006-Present
- Expert witness and consultant, legal fees and litigation management
- Member, National Associations of Legal Fee Experts
- Named as the "Nation's Top Attorney Fee Expert" by NALFA since 2017

**Overview of Services**

John D. O'Connor offers expert consultant services in a variety of attorney fee and litigation management contexts. He is regularly employed as both an expert and litigator in attorney fee disputes, and as a confidential fee consultant. His services often involve an analysis of the skill and efficiency of attorneys in litigation and litigation management.

**Background and Qualifications**

John O'Connor has over 45 years of experience in a wide variety of litigation matters, ranging from personal injury to civil rights and employment to complex business cases. A significant part of that experience is the trial of over 70 cases in both state and federal Courts throughout the country, and the preparation for and settlement of many more, as well as a substantial number of arbitrations. Additionally, for 20 years, O'Connor functioned as managing partner of a substantial litigation firm. His law firm experience includes partnerships in small boutique firms, a substantial mid- sized firm, and larger nationally known firms.

A significant portion of his work for over 40 years has been the evaluation, litigation and resolution of attorney fee issues. First as an Assistant United States Attorney, and later representing county and municipal governments, O'Connor has represented potential fee payors under "fee shifting" statutes.  He, as well, has worked extensively for fee petitioners.

As a private lawyer for federal government agencies during the financial institutions crises of the 1980's and 90's, and as well working with a variety of insurers and self-insurers, O'Connor has worked to develop with the client, and implement on behalf of his law firm, sophisticated billing guidelines. O'Connor has worked with many clients in mutually cooperative fashion to examine firm billings, assure compliance and rectify short comings.

Since the advent in the late 1980's of adversarial legal auditing, O'Connor has served extensively as both an expert and litigator analyzing audit criticisms, applying community standards, and construing applicable case law. In this context, O'Connor has consulted on hundreds of adversarial legal fee disputes over three decades. He has as well served as JAMS mediator, a litigator representing both law firms and fee payors on fee issues, and an expert witness both through written Declaration and oral testimony.

# Exhibit B

# Exhibit B-1

| Summary of Smith Objections to Hours | | | | |
|---|---|---|---|---|
| Objection | Lambdin | Chang | Maloney | Totals |
| Double Billing (Yellow) | 64.9 | 24.4 | 7 | **96.3** |
| Block Billing(Pink) | | 192.2 | 347.66 | **539.86** |
| Clerical Work (Blue) | | 33.2 | 31.15 | **64.35** |
| Further Clarification (Orange) | 4.4 | 0.9 | 11.4 | **16.7** |
| PI and Process Server (Green) | 71.3 | 0.5 | | **71.8** |
| **Totals** | **140.6** | **251.2** | **397.21** | **789.01** |

# Exhibit B-2

| Highlighted Lambdin Entries | | | | | | |
|---|---|---|---|---|---|---|
| Date | Timekeeper | Description | Hours | Rate | Amount | Color |
| 9/27/19 | Lambdin | Quincy with co-couns. - meet with NS and LJ(LT) | 2.1 | $550 | $1,155.00 | Green |
| 9/27/19 | Lambdin | Travel with co-couns.-witness meetings quincy | 3 | $550 | $1,650.00 | Green |
| 10/23/19 | Lambdin | Susanville to meet NP with co-couns. Also discussed meet with witness. | 2 | $550 | $1,100.00 | Green |
| 10/23/19 | Lambdin | Meet with Witnesses NP | 0.7 | $550 | $385.00 | Green |
| 11/4/19 | Lambdin | travel to mediation in sacramento RT | 4 | $550 | $2,200.00 | Yellow |
| 11/13/19 | Lambdin | querry shops owners/workers (norberg) | 1 | $550 | $550.00 | Yellow |
| 11/13/19 | Lambdin | Susanville to investigate travel 175 (norberg) | 3.5 | $550 | $1,925.00 | Green |
| 11/13/19 | Lambdin | visit address/neighbors (norberg) | 1.5 | $550 | $825.00 | Green |
| 11/14/19 | Lambdin | travel Susanville to Quincy to interview A. T. | 1.5 | $550 | $825.00 | Yellow |
| 11/15/19 | Lambdin | dep of Ki11 Hyams | 1 | $550 | $550.00 | Yellow |
| 11/15/19 | Lambdin | travel to office | 1.4 | $550 | $770.00 | Orange |
| 11/15/19 | Lambdin | depo of Brandon Compton 9-1 | 4 | $550 | $2,200.00 | Yellow |
| 11/15/19 | Lambdin | travel to BCJ | 2 | $550 | $1,100.00 | Yellow |
| 12/4/19 | Lambdin | prep. for deposition | 3.1 | $550 | $1,705.00 | Yellow |
| 12/5/19 | Lambdin | depo of Wagner | 5 | $550 | $2,750.00 | Yellow |
| 12/5/19 | Lambdin | travel to depo of wagner | 3 | $550 | $1,650.00 | Yellow |
| 12/6/19 | Lambdin | Depo of Sanders and Tusso | 3 | $550 | $1,650.00 | Yellow |
| 12/6/19 | Lambdin | T /C co-couns. re depo's | 0.3 | $550 | $165.00 | Yellow |
| 12/6/19 | Lambdin | deposition of sanderis and tusset | 4 | $550 | $2,200.00 | Yellow |
| 12/9/19 | Lambdin | site visit jail Quincy (calvin chang) | 2 | $550 | $1,100.00 | Yellow |
| 12/9/19 | Lambdin | site visit jail Quincy (calvin chang) | 3 | $550 | $1,650.00 | Yellow |
| 12/12/19 | Lambdin | deposition 30b6 | 2 | $550 | $1,100.00 | Yellow |
| 12/12/19 | Lambdin | deposition 30b6 | 3 | $550 | $1,650.00 | Yellow |
| 12/20/19 | Lambdin | depo of tw - continued | 5.2 | $550 | $2,860.00 | Yellow |
| 1/2/20 | Lambdin | R&R email from co-couns. RE: Tiffany | 0.1 | $550 | $55.00 | Yellow |
| 1/9/20 | Lambdin | travel to quincy for depo of chad herman | 3 | $550 | $1,650.00 | Yellow |
| 1/9/20 | Lambdin | depo of chad hermann | 2.5 | $550 | $1,375.00 | Yellow |
| 2/1/20 | Lambdin | Deposition of Sheriff Gregory Hagwood; confer with co-couns. | 2.9 | $550 | $1,595.00 | Yellow |
| 4/1/20 | Lambdin | travel to and from quincy for depo of hagwood | 3 | $550 | $1,650.00 | orange |
| 4/3/20 | Lambdin | Quincy - service of feasthen river supb. | 1 | $550 | $550.00 | Green |
| 4/3/20 | Lambdin | Susanville from Sacramento RT service of subpoenas and search for gott | 4 | $550 | $2,200.00 | Green |
| 4/8/20 | Lambdin | serve chp Quincy (from sparks) | 3 | $550 | $1,650.00 | Green |
| 4/16/20 | Lambdin | T/C w Chang & Maconey re inmate witnesses | 2.5 | $550 | $1,375.00 | Yellow |
| 4/17/20 | Lambdin | T/C w Chang & Maconey re inmate witnesses / norberg | 1.3 | $550 | $715.00 | Yellow |
| 4/29/20 | Lambdin | r&r emails re Belcher & belt issue | 0.6 | $550 | $330.00 | Yellow |
| 7/17/20 | Lambdin | susanville to locate norberg RT | 3 | $550 | $1,650.00 | Green |
| 7/21/20 | Lambdin | Prepare for County's taking of Kenyon Norberg deposition | 0.4 | $550 | $220.00 | Yellow |
| 7/21/20 | Lambdin | depo of norberg - no show - tech issues because of fires | 0.5 | $550 | $275.00 | Yellow |
| 10/15/20 | Lambdin | Travel: Rndtrip to Greenville for Deposition of Jeff Goodson | 4 | $550 | $2,200.00 | Yellow |
| 10/15/20 | Lambdin | depo of Jeff Goodson | 1 | $550 | $550.00 | Yellow |
| 8/10/22 | Lambdin | search/speak w/serve Lyndsey Tao chester | 3 | $550 | $1,650.00 | Green |
| 8/10/22 | Lambdin | search for Naomi Sanders to dad's house (chester) | 2 | $550 | $1,100.00 | Green |
| 8/11/22 | Lambdin | searching for norberg & potts susanville/quincy. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas | 3 | $550 | $1,650.00 | Green |

| 8/11/22 | Lambdin | travel to search for norberg & potts sparks-quincy-susanville-sparks (slept in van) | 4 | $550 | $2,200.00 | Green |
|---------|---------|-----------------------------------------------------------------------------------|---|------|-----------|-------|
| 8/13/22 | Lambdin | travel to susanville and search for norberg RT (slept in van) | 3 | $550 | $1,650.00 | Green |
| 8/14/22 | Lambdin | searching for norberg susanville/westwood/stake out trailer park. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas | 12 | $550 | $6,600.00 | Green |
| 8/15/22 | Lambdin | searching for norberg & potts. Hiked Susan River homeless camps. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas (slept in van) | 10 | $550 | $5,500.00 | Green |
| 8/15/22 | Lambdin | searching for norberg & potts/ call to Lemar | 0.5 | $550 | $275.00 | Green |
| 8/19/22 | Lambdin | susanville for norbert, Spoke with numerous 'street' people. Hiked Susan River homeless camps. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas (slept in van) | 9 | $550 | $4,950.00 | Green |
| **Total Objections to Lambdin Entries** | | | **140.6** | **N/A** | **$77,330.00** | |

# Exhibit
# B-3

| Date | Timekeeper | Description | Hours | Rate | Amount | Color |
|------|------------|-------------|-------|------|--------|-------|
| | | **Highlighted Chang Entries** | | | | |
| 7/26/18 | Chang | Travel to Reno meet with client regarding her case and back [reduced from actual 4.9] | 3.5 | $600.00 | $2,100.00 | Pink |
| 7/30/18 | Chang | Case Outline; Drafting demand letter [reduced from actual 3.5 hours]; review strategize case approach | 1.7 | $600.00 | $1,020.00 | Pink |
| 8/2/18 | Chang | Review Jail videos produced by County, 9 videos. | 3.5 | $600.00 | $2,100.00 | Pink |
| 8/4/18 | Chang | Review Plumas County Sheriff policy manual 900 Correctional Facilty 397-412, and relevant Sexual Assault Victim Rights, Discrimination 328, peruse for relevant policies. | 0.9 | $600.00 | $540.00 | Pink |
| 8/28/18 | Chang | Meeting with client and Alison Berry Wilkinson in my office; notes to computer. | 3.1 | $600.00 | $1,860.00 | Pink |
| 10/9/18 | Chang | Meet with client and LDF Attorney Alison Berry-Wilkenson in office; incorporate intems into case file. | 3.7 | $600.00 | $2,220.00 | Pink |
| 11/12/18 | Chang | Review 180 pages attachments personnel file | 3.5 | $600.00 | $2,100.00 | Pink |
| 1/21/19 | Chang | Review 4 folders with IA interview notes, analysis, and transcripts from Ia Interview #1; Notes and incorporate into case file. [Reduced from 5.7] | 4.7 | $600.00 | $2,820.00 | Pink |
| 4/1/19 | Chang | Review Def County production of 1,046 pages of documents [reduced from 4.2 hours] | 3.9 | $600.00 | $2,340.00 | Pink |
| 4/17/19 | Chang | Assemble all documents convert to pdf for initial disclosures [reduced from 3.2 hours] | 2.9 | $600.00 | $1,740.00 | Blue |
| 7/18/19 | Chang | Begin review of 40 page NOIT, IA report with exhibits, 970 pages [Reduced from 6.5] | 4.5 | $600.00 | $2,700.00 | Pink |
| 7/19/19 | Chang | Continue reviewing NOIT Notice of Termination materials with 22 exhibits, from ABW, approx. 37GB, IA file, reports, correspondence between ABW and County, policies [Reduced from 8.9] | 6.9 | $600.00 | $4,140.00 | Pink |
| 8/30/19 | Chang | Research female inmate names; 5, internet and subscription research names, addresses. [reduced from 4.1 hours] | 2.1 | $600.00 | $1,260.00 | Pink |
| 9/25/19 | Chang | Planning emails for trip to Quincy with informant witnesses (former female witnesses regarding sexual asaults by Brandon Compton. | 0.4 | $600.00 | $240.00 | Blue |
| 9/27/19 | Chang | Rndtrip Travel to Quincy; interview witness Naomi S,, Lindsay J, with EL | 6 | $600.00 | $3,600.00 | Pink |
| 10/20/19 | Chang | Review/Listen to Jail Audio Records of select conversations between client and Inmate Hymas [ Reduced from 5.5] | 4.5 | $600.00 | $2,700.00 | Pink |
| 10/31/19 | Chang | Review/Listen to Jail Audio Records of select conversations between client and Inmate Hymas in July 2018 Plumas Jail, 28 recordings; including phone sex and his disparaging comments | 3.7 | $600.00 | $2,220.00 | Pink |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/5/19 | Chang | Scheduling issues with depositions, emails to counsels, calendaring | 0.4 | $600.00 | $240.00 | Blue |
| 11/7/19 | Chang | Scheduling, coordinationg depositions [reduced from 1.4 hours] | 0.9 | $600.00 | $540.00 | Blue |
| 11/7/19 | Chang | Scheduling Depositions; travel planning [reduced from 1.5] | 0.8 | $600.00 | $480.00 | Blue |
| 11/14/19 | Chang | Preparing for Compton Deposition; Review his statements, review female inmate allegations. | 3.5 | $600.00 | $2,100.00 | Pink |
| 11/14/19 | Chang | Rndtrip Travel to Quincy; interview witness Angela T with EL., obtain declaration. | 6 | $600.00 | $3,600.00 | Pink |
| 11/15/19 | Chang | Prepare for Compton Deposition setup; video. | 0.4 | $600.00 | $240.00 | Blue |
| 11/19/19 | Chang | Prepare for Deposition of Sheriff Gregory Hagwood [reduced from 4.5 hours] | 3.5 | $600.00 | $2,100.00 | Pink |
| 12/1/19 | Chang | Travel; drive to SFO, by air from SFO to Kona, Hawaii for Defendant's Deposition of Andrea Murana. (reduced from 11.5, incl airport time check in, and drive to SFO] | 9.5 | $600.00 | $5,700.00 | Pink |
| 12/3/19 | Chang | Travel return from Kona to SFO [reduced from 11.5 incl airport time check in and drive back to Sacramento] | 9.5 | $600.00 | $5,700.00 | Pink |
| 12/3/19 | Chang | Prepare for 30b6 deposition of County [reduced from 4.8 hours] | 3.8 | $600.00 | $2,280.00 | Yellow |
| 12/6/19 | Chang | Quincy for depositions Waiting for witnesses to appear Lindsay Tissot Joa and Naomi Sanders; no shows. 1pm and 3 p.m. depo times. [reduced from 2.0 hours) | 1.5 | $600.00 | $900.00 | Blue |
| 12/11/19 | Chang | Review materials IR binders in prep for 30b6 deposition of County expecting Clark to be witness per Margaret Long | 3.1 | $600.00 | $1,860.00 | Pink |
| 2/12/20 | Chang | Draft and send Email to JM wtih summary of case for him to consider co-counsel; review his follow up emails to me. | 0.4 | $600.00 | $240.00 | Yellow |
| 2/21/20 | Chang | Meet with Co-Counsel JM re his representation | 1.2 | $600.00 | $720.00 | Yellow |
| 3/6/20 | Chang | Tel conference with JM and EL; Discuss case plan, and Norberg testimony | 0.4 | $600.00 | $240.00 | Yellow |
| 3/22/20 | Chang | Review and Prepare all documents for Expert Amy Oppenheimer for initial review | 3.3 | $600.00 | $1,980.00 | Pink |
| 3/23/20 | Chang | Continue to bates and assemble documents for Amy O to review; discuss with CC JM | 1.6 | $600.00 | $960.00 | Blue; yellow |
| 3/24/20 | Chang | Conferring with JM, and also preparding sets of discovery for all defendants ex Hagwood | 2.3 | $600.00 | $1,380.00 | Pink |
| 4/9/20 | Chang | converting documents produced by CDCR approx 1gb of documents | 3.5 | $600.00 | $2,100.00 | Pink |
| 4/9/20 | Chang | Reviewing docs produced by CDCR 1gb of email and docs | 3.6 | $600.00 | $2,160.00 | Pink |
| 4/10/20 | Chang | Listen to 1st half 39 audio files recordings from CDCR ; notes and correspond to case information. | 4.5 | $600.00 | $2,700.00 | Pink |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/11/20 | Chang | Review CDCR Investigative file ISU-MA-19-02-011 re titled "Plumas"; notes and correspond to case information. see sep entry for review of 39 calls, RFP 5, [50+ audio files reduced from 7 hrs hours. | 3.5 | $600.00 | $2,100.00 | Pink |
| 4/11/20 | Chang | Listen to 2nd half 39 audio files recordings from CDCR ; notes and correspond to case information. | 4.6 | $600.00 | $2,760.00 | Pink |
| 4/13/20 | Chang | Serve Subpoena to CA POST in person, | 0.5 | $600.00 | $300.00 | Green |
| 4/16/20 | Chang | Zoom Meeting with Co-counsel,and reviewing amended Disclosures | 1.2 | $600.00 | $720.00 | Yellow |
| 4/17/20 | Chang | Continued Zoom meeting with Co-counsels re amending disclosures reviwing names an dfacts | 1.4 | $600.00 | $840.00 | Yellow |
| 5/3/20 | Chang | Assembling 3rd production and master documents to produce in 3rd disclosure | 1.3 | $600.00 | $780.00 | Blue |
| 5/3/20 | Chang | Converting numerous CDCR emails with attachments to pdf [ Reduced from 2.3 hours) | 1.7 | $600.00 | $1,020.00 | Blue |
| 6/30/20 | Chang | Communicate with JM regarding Defendant's production/nonproduction (multiple emails); Research same. | 1.3 | $600.00 | $780.00 | Yellow |
| 7/3/20 | Chang | Begin Review 17.7 GB production of documents from Alison Berry Wilinson; look for items not previously reviewed. Numerous redundant versions produced by County. | 4.5 | $600.00 | $2,700.00 | Blue |
| 7/3/20 | Chang | Prepare and serve Notice of Deposition for Daniel Perreault | 0.2 | $600.00 | $120.00 | Blue |
| 7/3/20 | Chang | Prepare and serve Notice of Deposition for Manroop Sandhu | 0.3 | $600.00 | $180.00 | Blue |
| 7/14/20 | Chang | Review and prepare Bates 6647 to 7456 and bates, assemble and serve on parties | 2.4 | $600.00 | $1,440.00 | Blue |
| 7/17/20 | Chang | Tel conv with JM re discovery issues | 0.3 | $600.00 | $180.00 | Yellow |
| 9/24/20 | Chang | Convert .fv files from witness interviews to mp3; put on thumbdrive for listening | 1.2 | $600.00 | $720.00 | Blue |
| 9/29/20 | Chang | Listen to audio recordings from between Wagner and Hymas/ CDCR global tel link calls 20160025_2_26_18 33 TO 20180098_12-26_18 28, first 20 of 35 audio files | 4 | $600.00 | $2,400.00 | Yellow |
| 9/30/20 | Chang | Listen to audio recordings from between Wagner and Hymas/ CDCR global tel link calls 20160025_2_26_18 33 TO 20180098_12-26_18 28, last 15 of 35 audio files | 3.5 | $600.00 | $2,100.00 | Yellow |
| 10/1/20 | Chang | Listen to CDCR Visiting 7 Audio recordings between Wagner and Hymas | 6.5 | $600.00 | $3,900.00 | Yellow |
| 3/23/21 | Chang | Provide all initial information to economist | 2.5 | $600.00 | $1,500.00 | Pink |
| 5/11/21 | Chang | Assemble and send Expert disclosure | 1.2 | $600.00 | $720.00 | Blue |
| 5/24/21 | Chang | Rndtrip Travel RT to Reno for MSC remote with client at Regus Office | 4.5 | $600.00 | $2,700.00 | Pink |
| 12/21/21 | Chang | Reviewing evidence for documents and adding witness issues [Reduced from 6.5 hours] | 5.5 | $600.00 | $3,300.00 | Pink |

| 3/11/22 | Chang | Rndtrip Travel to Reno for 2nd Mediation/ JAMS Ken Gack, remote at Regus Office | 4.5 | $600.00 | $2,700.00 | Pink |
|---|---|---|---|---|---|---|
| 3/11/22 | Chang | Mediation (2nd), JAMS Ken Gack, remote with client in Reno | 5.3 | $600.00 | $3,180.00 | Pink |
| 7/22/22 | Chang | Review Defendants Trial Exhibits, take for printing, communicate with printer | 1.7 | $600.00 | $1,020.00 | Blue |
| 7/24/22 | Chang | Create/Transfer Exhibit list to Courts Exhibit List Template | 0.8 | $600.00 | $480.00 | Blue |
| 7/26/22 | Chang | Finish assembling Def exhibits; review documents | 4.5 | $600.00 | $2,700.00 | Blue |
| 7/26/22 | Chang | pdf and assemble motions in liminte 1, 2 and file | 0.4 | $600.00 | $240.00 | Blue |
| 7/26/22 | Chang | Drive exhibits 8 boxes and 2 defense exhibit boxes to JM, meet and discuss jail recordings | 1.7 | $600.00 | $1,020.00 | Blue |
| 8/4/22 | Chang | Settlement Conference/Mediation (3rd) before 9th Circuit Mediator Robert Kaiser, in person at EDC Courthouse. Meet with client before and after. MC and EL in attendance.; travel to. | 2 | $600.00 | $1,200.00 | Pink |
| 8/5/22 | Chang | Reveiw emails from JM, trial plan draft amendments; tel call with JM | 0.4 | $600.00 | $240.00 | Yellow |
| 8/7/22 | Chang | Reviewing draft of Trial Brief, researching evidence, adding facts | 3.5 | $600.00 | $2,100.00 | Pink |
| 8/8/22 | Chang | Reviewing draft of Trial Brief, researching evidence, adding facts [Reduced from 4.5 hours] | 3.5 | $600.00 | $2,100.00 | Pink |
| 8/12/22 | Chang | Review Jail videos, locate needed portions, and ready for trial playing; create clips for playing on demand during examinations. | 2.3 | $600.00 | $1,380.00 | Pink |
| 8/12/22 | Chang | Travel to Court for AV training session, prep laptop | 1.6 | $600.00 | $960.00 | Blue |
| 8/13/22 | Chang | Researching all witness Ah Wah's Statements; compiling examination prep points for JM, extract statements her statements and inconsistent statements. | 4.5 | $600.00 | $2,700.00 | Pink |
| 8/13/22 | Chang | Researching all Compton Statements; compiling examination prep points for JM, extract statements for submission of evidence at trial. | 3.2 | $600.00 | $1,920.00 | Pink |
| 8/14/22 | Chang | Finalize Steve Peay transcript for submission and add subject headings to Peay deposition cites; in preparation for admission at trial. | 2.1 | $600.00 | $1,260.00 | Pink |
| 8/14/22 | Chang | Researching all Witness Kyle Froggatt's Statements; compiling examination prep points for JM, extract statements , in preparation for submission at trial. | 2.5 | $600.00 | $1,500.00 | Pink |
| 8/14/22 | Chang | Finalize Steve Clark transcript for submission and Add subject headings to Clark deposition cites, in preparation for submission at trial. | 2.5 | $600.00 | $1,500.00 | Pink |
| 8/16/22 | Chang | Trial Day 1, meetings before and after with client/witnesses | 5.2 | $600.00 | $3,120.00 | Pink |
| 8/17/22 | Chang | Prep and File Declarations of Jordan Funk, Jody Goodson, Jeffrey Goodson, | 0.3 | $600.00 | $180.00 | Blue |
| 8/17/22 | Chang | File Depositions of Brandon Compton, (excerpts for admission0 | 0.3 | $600.00 | $180.00 | Blue |
| 8/17/22 | Chang | Trial Day 2, meetings with JM, Client before and after. | 5.5 | $600.00 | $3,300.00 | Pink |

| 8/18/22 | Chang | Trial Day 3, meetings with JM, Client before and after. | 5.5 | $600.00 | $3,300.00 | Pink |
|---|---|---|---|---|---|---|
| 8/23/22 | Chang | Trial Day 4, meet client and JM before and after trial | 5.5 | $600.00 | $3,300.00 | Pink |
| 8/24/22 | Chang | Trial Day 5, meet client and cocounsel before and after trial | 5.5 | $600.00 | $3,300.00 | Pink |
| 8/25/22 | Chang | Trial Day 6, last day of trial. | 0.9 | $600.00 | $540.00 | Orange |
| 8/25/22 | Chang | Transport 10+ boxes of trail exhibits from Courtroom [reduced from 0.4] | 0.2 | $600.00 | $120.00 | Blue |
| **Total Objections to Chang Entries** | | | **251.2** | **N/A** | **$150,720.00** | |

# Exhibit B-4

| Date | Timekeeper | Description | Hours | Rate | Amount | Color |
|------|-----------|-------------|-------|------|--------|-------|
| | | **Highlighted Maloney Entries** | | | | |
| 2/20/20 | Maloney | Review CCC notes of depo of plaintiff; actual time 2.25 | 1.5 | $650.00 | $975.00 | Yellow |
| 2/21/20 | Maloney | Conference with Chang case status; co-counsel arrangements; travel to and from conference; actual time 3.0 | 2.5 | $650.00 | $1,625.00 | Yellow |
| 2/24/20 | Maloney | download, organize, Review pleadings from CAED website; draft notice of association of counsel and send to Chang for filing; e-mail to co-counsel re: stipulation to proceed before the magistrate; create caption document; draft JSR; retrieve FAC draft; actual time 3 hours | 2 | $650.00 | $1,300.00 | Pink |
| 2/25/20 | Maloney | Draft FAC; e-mails t/f CCC re: impact of Order on claims we may assert, parties we may add; exhaustion paragraphs; | 1.5 | $650.00 | $975.00 | Pink |
| 3/3/20 | Maloney | E-mail to CCC re: review of some of discovery disputes, M&C letters; rough draft of JSRDD for 1/27/20 M&C letter | 1.5 | $650.00 | $975.00 | Pink |
| 3/4/20 | Maloney | Review Hagwood depo tran; e-mails to CC | 2 | $650.00 | $1,300.00 | pink |
| 3/4/20 | Maloney | Review Hagwood depo; actual time 2 hours; e-mail with comments to CCC | 1.5 | $650.00 | $975.00 | Pink |
| 3/6/20 | Maloney | Review dox re: Norberg Dec; Canalia NPR; Warren interim decision; Hargood final decision; Compton R26 disclosure & appraisal re: supervisor | 1 | $650.00 | $650.00 | Pink |
| 3/6/20 | Maloney | Organize notes for Teleconference w/Chang and EL re: Norberg dec; how to preserve testimony for trial; impact of dec evidence; interplay of notice of proposed removal, Warren's interim decision, and final decision with Norberg dec; discussion of meaning of Warren statement that SH claim is for courts & impact of Norberg Dec on Warren's reasoning; problem presented by Warren CLAIMING to eschew SH claim in his decison (versus NPR having relied on TW's false criminal report) and Hagwood's claim he had no role in the decision making process; impact of "supervisor Compton" issue; discovery of financial information issue; notes in witness folders | 1 | $650.00 | $650.00 | Pink |
| 3/9/20 | Maloney | E-mail to CCC re: assignment to HR expert | 1 | $650.00 | $650.00 | Orange |
| 3/9/20 | Maloney | E-mail to CCC re: HR expert issues and Warren's flawed interim decision; analysis of app of Policy 328 to DISCIPLINE proceeding | 0.5 | $650.00 | $325.00 | Orange |
| 3/9/20 | Maloney | E-mail toCCC re: impact of Warren's punt on SH | 1 | $650.00 | $650.00 | Orange |
| 3/16/20 | Maloney | E-mail to co-counsel opposing counsel re: suggestion for supplement JSR in view of Canalia difficulties and COVID | 1 | $650.00 | $650.00 | Orange |
| 3/16/20 | Maloney | E-mail to CCC re: TW "phone" and what might be on it | 0.4 | $650.00 | $260.00 | Orange |
| 3/27/20 | Maloney | Draft R26(f) letter to opposing counsel; draft to cocounsel; review discovery todo list of CCC; edit draft | 1.5 | $650.00 | $975.00 | Pink |
| 3/27/20 | Maloney | Draft e-mail to opposing counsel re: discovery plan; to CCC; comments in return | 1 | $650.00 | $650.00 | Pink |
| 4/3/20 | Maloney | Review Clark depo tran; e-mails to CCC | 1.5 | $650.00 | $975.00 | Pink |
| 4/8/20 | Maloney | Draft JSRDD Peay; TCT Uhrhammer; e-mail to Uhrhammer & Long; response from Long, reply, find M&C letter to provide to her per her request; actual time 5 hours | 4 | $650.00 | $2,600.00 | Pink |
| 4/9/20 | Maloney | Review 30b6 cases in preparatoin for TCT ML; brief call with proposal, which she will consider and get back to me; e-mail to Calvin discussing my proposal to resolve the discovery dispute and my call to ML; actual time 1.0 | 0.75 | $650.00 | $487.50 | Pink |
| 4/15/20 | Maloney | Conference with ML re: discovery dispute; deposition scheduling; e-mail confirming agreement; e-mail to co-counsel; prepare for conference; deposition transcript review re: Peay did not know if there was a SH investigation; actual time 3 hours | 2 | $650.00 | $1,300.00 | Pink |

| Date | Name | Description | Hours | Rate | Amount | Color |
|---|---|---|---|---|---|---|
| 4/15/20 | Maloney | Review declarations provided to Amy O re: inmate abuse as evidence of pretext; e-mails to and from co-counsel on this subject; actual time 2 hours | 1.5 | $650.00 | $975.00 | Pink |
| 4/16/20 | Maloney | preparation for and Conference with co-counsel re: witnesses in Supp Disc; cell check witnesses; discussion of mock trial; witness folder notes | 1.5 | $650.00 | $975.00 | Yellow |
| 4/17/20 | Maloney | Preparation and conference with CC/EL re: remaining witnesses; rebutting NOI lies; notes in witness folders | 1.5 | $650.00 | $975.00 | Yellow |
| 4/23/20 | Maloney | review Clark report re: jail checks; E-mail to opposing couunsel, co=counsel, TW re: impact of TW's statement to Clark re: jail commander hermann having criticized her performance in jail checks | 1 | $650.00 | $650.00 | Pink |
| 4/24/20 | Maloney | E-mail from expert AO regarding commencement of work; review of material to be sent to AO; discussion with CC regarding what we can ask AO to do before commencement of depos in mid-July; draft response to AO for CC review. actual time 1.5 | 1 | $650.00 | $650.00 | Pink |
| 4/24/20 | Maloney | Research: Pedersen consent decree; e-mails to and from counsel for plaintiffs in Pedersen re: consent decree and cell checks compliance by the county, lapses in same; | 1 | $650.00 | $650.00 | Pink |
| 4/24/20 | Maloney | Review NOI; work on chart; e-mails re: consent decree | 1.5 | $650.00 | $975.00 | Pink |
| 4/24/20 | Maloney | Review EDCal website, looking for "consent decree" litigation; Pederson; also, located litigation brought by Hagwood against the county; e-mails to CC on this subject; discussion of obtaining pleadings in case, long closed | 1 | $650.00 | $650.00 | Pink |
| 4/27/20 | Maloney | Review Canalia ROI; continue spread sheet through Category A Item 10. | 2.5 | $650.00 | $1,625.00 | Pink |
| 4/28/20 | Maloney | Review Clark report; incorporate into spread sheet; A1F1 (cell checks); Perault w/statement | 3 | $650.00 | $1,950.00 | Pink |
| 5/5/20 | Maloney | Review Clark report re: allegations 1 & 2; review Perrault w/statements; review allegation 3; e-mail to CC re: conclusions re: allegation 3, suggested approach to Clark depo | 2.5 | $650.00 | $1,625.00 | Pink |
| 5/7/20 | Maloney | Review material re: cell check documentation nunc pro tunc; tct client; e-mail to co-counsel summarizing conversation | 1.5 | $650.00 | $975.00 | Pink |
| 5/8/20 | Maloney | Review week of e-mails between CC & JEM & EL; note points in various wintess depo notes; actual time 1 hour | 0.5 | $650.00 | $325.00 | Orange |
| 5/11/20 | Maloney | Review Gott responses to RFP; research vagueness of response; draft e-mail to Margaret Long re: unsatisfactory responses; receive comments on draft from CC; incorporate CC suggestions, send e-mail to long; actual time 1.5 | 1 | $650.00 | $650.00 | Pink |
| 5/13/20 | Maloney | Draft 6646 Index; first 400 pages; e-mail to CC conveying draft | 1 | $650.00 | $650.00 | Blue |
| 5/13/20 | Maloney | Draft index (to 1011) | 1 | $650.00 | $650.00 | Blue |
| 5/14/20 | Maloney | Draft index, detailing 2017 & 2018 criminal investigations, page by page | 2 | $650.00 | $1,300.00 | Blue |
| 5/14/20 | Maloney | Draft Index; through 2758 | 0.5 | $650.00 | $325.00 | Blue |
| 5/15/20 | Maloney | Draft Index through 5004 | 1.5 | $650.00 | $975.00 | Blue |
| 5/16/20 | Maloney | Index through 5566 | 1.5 | $650.00 | $975.00 | Blue |
| 5/16/20 | Maloney | Draft index to end; e-mails to CC re: questions about some documents; e-mail to ML requesting better copies of some. | 1 | $650.00 | $650.00 | Blue |
| 5/16/20 | Maloney | Index to 6646. | 2 | $650.00 | $1,300.00 | Blue |
| 5/16/20 | Maloney | Edit index to permit comparison re: Exhibits in Plumas submissions to DFEH | 0.5 | $650.00 | $325.00 | Blue |
| 6/4/20 | Maloney | Review BCSS audit reports 2008-2018 re: safety checks; e-mail to co-counsel re impact, further steps | 1 | $650.00 | $650.00 | Pink |
| 6/25/20 | Maloney | Clark/Canalia depo prep - review NID & IA, notes for depo | 1.5 | $650.00 | $975.00 | Pink |

| Date | Name | Description | Hours | Rate | Amount | Color |
|------|------|-------------|-------|------|--------|-------|
| 6/26/20 | Maloney | Review Clark transcript; e-mails to CC with questions; review IA documents in file; actual time 2 hours | 1.5 | $650.00 | $975.00 | Pink |
| 6/29/20 | Maloney | Review NOI, IA, Peay Reports re: sex | 2 | $650.00 | $1,300.00 | Pink |
| 6/30/20 | Maloney | 19 E-mail t/f CC & ML re: issues with defendant's document production (supp) | 1.5 | $650.00 | $975.00 | Pink |
| 6/30/20 | Maloney | E-mail to/from CC & ML (18) re: various issues | 1 | $650.00 | $650.00 | Pink |
| 7/1/20 | Maloney | Staples trip to print exhibits for depo; actual time 1 hour | 0.5 | $650.00 | $325.00 | Blue |
| 7/2/20 | Maloney | Review, e-mail to ML; e-mail to ABW; e-mail to client; e-mail to CC all re: obtaining exhibits 1-22 from defendants | 1 | $650.00 | $650.00 | Pink |
| 7/2/20 | Maloney | Prepare for Canalia depo; sex issue | 3 | $650.00 | $1,950.00 | Pink |
| 7/3/20 | Maloney | Prepare for Canalia depo; crime issues 27-30 | 2 | $650.00 | $1,300.00 | Pink |
| 7/3/20 | Maloney | Prepare for Canalia depo; time card entries re: sex; review Exhibit 12; conference w/CC re: "pairs", missing exhibits | 2.5 | $650.00 | $1,625.00 | Pink |
| 7/3/20 | Maloney | Prepare for Canalia depo; sex - cross ref Ex 14; actual time 3.0 | 2 | $650.00 | $1,300.00 | Pink |
| 7/4/20 | Maloney | Prepare for Canalia depo; 30(b)(6) prep; MEL letter; e-mail to AO on this subject | 1.5 | $650.00 | $975.00 | Pink |
| 7/8/20 | Maloney | Prep for SP depo; review 16017; chart chron of investigation; chart TW incidents; cross-reference corroboration dox; locate pages from 16018 in 16017; review for duplicatoins; e-mails t/f co-counsel with questions, issues | 4 | $650.00 | $2,600.00 | Pink |
| 7/10/20 | Maloney | Create binders for Canalia, Clark, both Peay reports; actual time 1 hour | 0.5 | $650.00 | $325.00 | Blue |
| 7/17/20 | Maloney | preparation for Norberg/Perreault depos; review dox, retrieve their statements; TCF ML: depo scheduling chaos; e-mail to CC on this subject; e-mail to CC re: approach to Canalia/Clark depos; actual time 3.5 | 3 | $650.00 | $1,950.00 | Pink |
| 7/22/20 | Maloney | Prepare for Clark depo; review chart, Clark IA | 2 | $650.00 | $1,300.00 | Pink |
| 7/30/20 | Maloney | Index 4th prod of documents to 7451 | 1 | $650.00 | $650.00 | Blue |
| 7/31/20 | Maloney | Steve Peay depo prep; 16017; e-mail to CC | 2.5 | $650.00 | $1,625.00 | Pink |
| 7/31/20 | Maloney | Preparation: Steve Peay depo prep | 2 | $650.00 | $1,300.00 | Pink |
| 8/5/20 | Maloney | Peay depo prep (actual time 3.0) | 2 | $650.00 | $1,300.00 | Pink |
| 8/5/20 | Maloney | Peay depo; actual time 5.0 | 4 | $650.00 | $2,600.00 | Pink |
| 8/6/20 | Maloney | Kelley depo | 1.5 | $650.00 | $975.00 | Pink |
| 8/6/20 | Maloney | Kelley depo prep (actual time 2.0) | 1 | $650.00 | $650.00 | Pink |
| 8/12/20 | Maloney | Review notes; questions for Gott depo; RFPD 4 & 5; e-mails with CC re: Gott issues (actual time 3.0) | 2 | $650.00 | $1,300.00 | Pink |
| 8/12/20 | Maloney | Review statements of Gott for depo; butt slapping addressed through training; racial jokes addressed through counseling; testicle hitting not observed; various notice items to Gott of Wagner/Hymas conduct, inaction | 1.5 | $650.00 | $975.00 | Pink |
| 8/13/20 | Maloney | Depo prep Gott | 2 | $650.00 | $1,300.00 | Pink |
| 8/13/20 | Maloney | Depo Gott (DE 4/1/21) | 2 | $650.00 | $1,300.00 | Pink |
| 8/19/20 | Maloney | index def r26 01-1046 doc; actual time 2.0 | 1.5 | $650.00 | $975.00 | Blue |
| 8/19/20 | Maloney | RFA set on authentication of 22 exhibits, plus jail audits, various policies | 1.5 | $650.00 | $975.00 | Pink |
| 8/25/20 | Maloney | Clark depo prep; actual time 3.0 | 2.5 | $650.00 | $1,625.00 | Pink |
| 8/25/20 | Maloney | Clark prep 1 & 2 | 0.75 | $650.00 | $487.50 | Pink |
| 8/26/20 | Maloney | Clark depo prep #5, 6 & 32 (actual time 3.0) | 2.5 | $650.00 | $1,625.00 | Pink |
| 8/26/20 | Maloney | Clark depo prep #26, 27, 28, 29, 30, 31 | 1 | $650.00 | $650.00 | Pink |
| 8/27/20 | Maloney | Preparation for Clark depo (DE 4/1/21) | 2 | $650.00 | $1,300.00 | Pink |
| 8/27/20 | Maloney | Clark depo (DE 4/1/21) (actual time 5.0) | 4.5 | $650.00 | $2,925.00 | Pink |
| 9/1/20 | Maloney | Canalia depo prep; actual time 3.0 | 2 | $650.00 | $1,300.00 | Pink |
| 9/2/20 | Maloney | Canalia depo prep; actual time 3.5 | 3 | $650.00 | $1,950.00 | Pink |
| 9/3/20 | Maloney | Canalia depo prep | 2 | $650.00 | $1,300.00 | Pink |
| 9/3/20 | Maloney | Canalia depo prep | 2.5 | $650.00 | $1,625.00 | Pink |
| 9/3/20 | Maloney | Canalia depo | 2.5 | $650.00 | $1,625.00 | Pink |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | very frustrating exercise of examining exhbiit 12 to notice page 30 is missing, and 40-47 hgave been placed in it TWICE; e-mails to clerk for further | | | | |
| 9/22/20 | Maloney | analysis of new pages 40-47 and e-mail to Margaret to point out error | 1.75 | $650.00 | $1,137.50 | Pink |
| 9/24/20 | Maloney | listen to clark interview of Perreault; notes, e-mails to CC | 1.5 | $650.00 | $975.00 | Pink |
| | | review e-mail/proposed stip, existing scheduling order, calculate alternatives; | | | | |
| 9/26/20 | Maloney | e-mail to CC | 1 | $650.00 | $650.00 | Pink |
| | | Reivew stip, schedul order; review calendar; draft proposed alternative | | | | |
| 9/28/20 | Maloney | stip; e-mail to ML & SW re: alternative stip | 1 | $650.00 | $650.00 | Pink |
| | | Clark depo prep; review transcript pages 1-55; review CC suggestions; | | | | |
| 10/2/20 | Maloney | review notes | 2 | $650.00 | $1,300.00 | Pink |
| | | receive, review, save def discovery responses; e-mails t/f client, CC re | | | | |
| 10/2/20 | Maloney | various documents produced | 3 | $650.00 | $1,950.00 | Pink |
| | | review rest of Clark transcript; review transcripts of phone | | | | |
| 10/3/20 | Maloney | conversations referred to (exhibits 20, 22) | 1.25 | $650.00 | $812.50 | Pink |
| 10/28/20 | Maloney | review clark depo; cites for facts 2, 26, 3, 4 in SUFFID | 1.5 | $650.00 | $975.00 | Pink |
| | | incorporate Canalia depo into SH/DISC SUF/FID's; some draft of MSJ | | | | |
| 12/4/20 | Maloney | Opp | 3.5 | $650.00 | $2,275.00 | Pink |
| 12/8/20 | Maloney | fill in "@@" - mostly in regard to audit reports; actual time 2.0 | 1.5 | $650.00 | $975.00 | Orange |
| | | review KJM MSJ cases; actual time 3.0; first 10 pages of scholar | | | | |
| 12/15/20 | Maloney | listings MSJ & KJM in EDCal | 2.5 | $650.00 | $1,625.00 | Orange |
| | | edit MPNA MSJ Discip; research effect of Henderson comment to Gott | | | | |
| 12/18/20 | Maloney | re: Wagner's shit with Hymas | 2 | $650.00 | $1,300.00 | Pink |
| 12/19/20 | Maloney | draft SH msj/opp; e-mails to CC re: communications to Serena/Suell | 2.5 | $650.00 | $1,625.00 | Pink |
| | | review settlement correspondence; review FAC; suggest language for stip; | | | | |
| 12/22/20 | Maloney | e-mails t/f CC re: various aspects of dismissal, claims. | 1.5 | $650.00 | $975.00 | Pink |
| 2/4/21 | Maloney | draft opening argument for mock trial | 2.5 | $650.00 | $1,625.00 | Orange |
| 2/6/21 | Maloney | e-mail to cc re: verdict form for mock | 0.5 | $650.00 | $325.00 | Orange |
| | | review AmyO presentation re: importance of investigations; e-mail with comments to CC; tct CC re: engaging AO; prepare e-mail to AO | | | | |
| 3/14/21 | Maloney | with three policies, Canalia 30b6 depo | 2 | $650.00 | $1,300.00 | Pink |
| | | prepare and send e-mails to AO re: evidence produced in discovery, tasking; e-mails t/f CC re: details on this subject; actual time 5 hours | | | | |
| 3/15/21 | Maloney | | 3.5 | $650.00 | $2,275.00 | Pink |
| | | Research Trollson jury trial before KJM; download, review, save documents from docket; e-mail to Jill Telfer with Q's; actual time 3.5 | | | | |
| 4/1/21 | Maloney | (DE 4/7) | 2.5 | $650.00 | $1,625.00 | Pink |
| 4/8/21 | Maloney | Draft settlement conference statement; e-mail to CC with discussion | 2 | $650.00 | $1,300.00 | Pink |
| | | Draft settlement conference statement, editing SH portion and adding | | | | |
| 4/9/21 | Maloney | retaliation discussion; actual time 5 hours | 4 | $650.00 | $2,600.00 | Pink |
| | | Review & edit AmyO draft report; e-mails to CC, AO with suggestions, comments; brief phone call with AmyO | | | | |
| 5/5/21 | Maloney | (DE for 5/5 on 5/6) | 1.5 | $650.00 | $975.00 | Pink |
| | | Review & edit PE draft report; e-mails to PE with suggestions, comments; brief phone call with PE; review all greater than 60's entries, identify false | | | | |
| 5/5/21 | Maloney | positives, e-mails to correct; (DE for 5/5 on 5/6) | 2.5 | $650.00 | $1,625.00 | Pink |
| 5/6/21 | Maloney | Review AO draft, questions; reply with comments (5/7 for 5/6) | 1.5 | $650.00 | $975.00 | Pink |
| | | Review PE draft, check data, questions; reply with comments (5/7 for | | | | |
| 5/6/21 | Maloney | 5/6) | 2.5 | $650.00 | $1,625.00 | Pink |
| 5/7/21 | Maloney | Review PE draft, check data, questions; reply with comments | 1 | $650.00 | $650.00 | Pink |
| 5/7/21 | Maloney | Review AO draft, check data, questions; reply with comments | 1 | $650.00 | $650.00 | Pink |
| | | Review/comment on PE spreadsheet re: name sorted list, with greater than 60 indicated; review other final versions in PDF; review/comment/edit report | | | | |
| 5/9/21 | Maloney | (DE 5/10 for 5/9) | 1.5 | $650.00 | $975.00 | Pink |
| | | Review PE final report, comments; organize various documents into final | | | | |
| 5/10/21 | Maloney | version, bate-stamp; send to CC with comments/explanations | 1.5 | $650.00 | $975.00 | Pink |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/10/21 | Maloney | Draft/edit settlement conference statement; e-mails to CC re: lodging statement;draft notice of lodging pleading; e-mails re: plans for conference, logistics; e-mails re: plans for serving expert witness disclosures on Wed | 1.5 | $650.00 | $975.00 | Pink |
| 5/19/21 | Maloney | Review e-mail to opposing counsel re: failure to make proper expert witness disclosures; review County's proposal for extending dates for Rebuttal disclosures and Expert discovery; TCT CC to discuss; finalize & edit e-mail to opposing counsel re: failure to make proper disclosures, edit for response thursday afternoon | 1.25 | $650.00 | $812.50 | Pink |
| 5/27/21 | Maloney | Review defendant's motion to alter deadlines; research rule 60 v. 16; Mammoth; e-mail to CC on this subject | 1 | $650.00 | $650.00 | Pink |
| 6/7/21 | Maloney | e-mails t/f County, Calvin, Edmonds, Oppenheimer/her office, re: scheduling depositions; discussion with Edmonds re permissible scope of deposition; actual time 1.5 | 1 | $650.00 | $650.00 | Pink |
| 7/13/21 | Maloney | Preparation for Obayashi depo actual time 3.0 | 2 | $650.00 | $1,300.00 | Pink |
| 7/14/21 | Maloney | Preparation for Obayashi depo; actual time 2.5 hours | 1.5 | $650.00 | $975.00 | Pink |
| 12/20/21 | Maloney | Draft/edit Exhibit C: Pl Exhibits, for JPTS - review document index to check for necessary exhibits not already included (8000 pages); actual time 2.0 | 1.5 | $650.00 | $975.00 | Pink |
| 12/24/21 | Maloney | Edit JPTS; e-mails to CC with comments; actual time 2.5 | 2 | $650.00 | $1,300.00 | Pink |
| 12/30/21 | Maloney | e-mails back and forth with edits re: JPTS, exhibits A-D; actual time 4.0 | 3 | $650.00 | $1,950.00 | Pink |
| 12/31/21 | Maloney | Review/organize e-mails re: JPTS, trial arguments, Tahara impact, TW direct notes re: Sergeant issue; rebuttal draft points; actual time 2 hours | 1.5 | $650.00 | $975.00 | Pink |
| 1/10/22 | Maloney | Review e-mails re: Compton acts as supervisor; exhibit 8 & 50 (added to exhibit list); edit Wagner Direct and Compton Direct re: supervisor; Review JI 2525; edit Final Arg; actual time 3.0 | 2 | $650.00 | $1,300.00 | Pink |
| 1/13/22 | Maloney | Review disputed facts document to confirm all exhibits accounted for in existing list; review substance of various of Facts 1-32, to confirm necessary witnesses listed; planning for other slides in closing argument; actual time 2.0 | 1 | $650.00 | $650.00 | Pink |
| 1/13/22 | Maloney | Edit Exhibit C to include 50 and add pages to 26; file document, retrieve ECF, forward to client with explanation of purpose of additions and how they fit in with her proposed testimony | 0.75 | $650.00 | $487.50 | Pink |
| 2/15/22 | Maloney | Review PTO & enter dates in calendar | 1 | $650.00 | $650.00 | Blue |
| 2/23/22 | Maloney | edit mediation brief | 1 | $650.00 | $650.00 | Pink |
| 2/24/22 | Maloney | Edit mediation brief (2/26 for 2/24) (actual time 3.0) | 2.5 | $650.00 | $1,625.00 | Pink |
| 2/25/22 | Maloney | Edit mediation brief (2/26 for 2/25) (actual time 3.5) | 3 | $650.00 | $1,950.00 | Pink |
| 2/28/22 | Maloney | Preparation of pleadings - mediation brief; take to Kinko's for binding; actual time 1.0 (3/1 for 2/28) | 0.5 | $650.00 | $325.00 | Blue |
| 3/1/22 | Maloney | e-mail with Mediator's assistant re: address, phone numbers; Pick up bound briefs - incorrectly bound, re-done; fedex to mediator - prevented clerk from mailing "go by" brief to mediator; priority mail to CC & client; actual time 2.0 | 1 | $650.00 | $650.00 | Blue |
| 3/9//22 | Maloney | Review defendant's mediation brief (actual time 4.0) | 3 | $650.00 | $1,950.00 | Pink |
| 3/10/22 | Maloney | Preparation - packing for mediation at remote location; actual time 3 hours | 1.5 | $650.00 | $975.00 | Blue |
| 5/2/22 | Maloney | File Review: identify, extract, save, title, upload plaintiff's exhibits to drop box account for one legal exhibit processing.Actual time 4.0 hours | 2.5 | $650.00 | $1,625.00 | Blue |
| 5/12/22 | Maloney | Review, extract, label and upload Pl Exhibits; e-mails to service re: various issues | 3 | $650.00 | $1,950.00 | Blue |

| Date | Name | Description | Hours | Rate | Amount | Color |
|---|---|---|---|---|---|---|
| 6/7/22 | Maloney | TCF Jen at one legal: layout of exhibits, books | 0.5 | $650.00 | $325.00 | Blue |
| 6/7/22 | Maloney | Review joint and plaintiff's exhibit lists, determine appropriate falls and breaks for exhibit books; print, mark up and scan exhibit lists to send to Jen at one legal | 1.5 | $650.00 | $975.00 | Blue |
| 6/17/22 | Maloney | Travel to one legal office to examine exhibit books; meet with CC to discuss progress of exhibits; return; actual time 3 hours | 2 | $650.00 | $1,300.00 | Blue, pink |
| 6/17/22 | Maloney | Review notes re: exhibit "falls" in books; e-mails for arrangements for meeting to examine binders | 0.5 | $650.00 | $325.00 | Blue |
| 6/24/22 | Maloney | Review exhibit covers/spines for joint, plaintiff's exhibits; e-mails to Legal One with specifications | 0.25 | $650.00 | $162.50 | Blue |
| 6/27/22 | Maloney | Review/organize binders for exhibits; prepare covers/spines for work copies. | 0.5 | $650.00 | $325.00 | Blue |
| 6/29/22 | Maloney | E-mail to Jen 1legal re: how to share plaintiff's exhibits with defense side, and to document it; subsequent e-mails following up | 0.5 | $650.00 | $325.00 | Blue |
| 7/6/22 | Maloney | E-mail to/from first legal re: availability of exhibit books for review and pickup, scheduling; e-mail to Calvin with details and suggestions | 0.4 | $650.00 | $260.00 | Blue |
| 7/11/22 | Maloney | Review clerk's e-mail requesting parties to provide information about time allocated to witnesses; review witness list; review calendar; attempt to order witnesses and estimate time; | 2 | $650.00 | $1,300.00 | Pink |
| 7/14/22 | Maloney | Travel to CC office in Sacramento; meet with CC to review JE & PL exhibit books; sort, note corrections; review witness list and times/compare CC estimates for his witnesses; discuss OSC re: settlement; | 4 | $650.00 | $2,600.00 | Pink |
| 7/15/22 | Maloney | receive NEF; retrieve county response to OSC; review; retrieve Compton response to OSC; review; forward to client; e-mails t/f CC re: response; draft response; share, review, edit. Actual time 2.0 | 1.5 | $650.00 | $975.00 | Pink |
| 7/18/22 | Maloney | Draft/edit pl resp to OSC; e-mails with drafts to/fr CC; file pleading; receive NEF, retrieve, review, forward document to client with explanation | 1.25 | $650.00 | $812.50 | Pink |
| 7/19/22 | Maloney | Review Deffendant's Exhibits; sort; relabel to put in order; review and compare to JE/PE to identify duplication; notes and research re: various objections; actually spent all day on this | 3 | $650.00 | $1,950.00 | Pink |
| 7/22/22 | Maloney | Conference with JEMIV; his review of JE 19-22; review examples, connection to JE 9; e-mail to TW with one example. | 1.25 | $650.00 | $812.50 | Pink |
| 7/23/22 | Maloney | Review client e-mails regarding issue #9, reply; check sources; and regarding settlement posture, procedures | 1.25 | $650.00 | $812.50 | Pink |
| 7/23/22 | Maloney | review client e-mails, order; TCT CC to discuss settleement issues; client e-mail; client health; MIL issues re: obayashi; aspects of judge's order | 1 | $650.00 | $650.00 | Pink |
| 7/24/22 | Maloney | Review JE 9 to make index of dates of Clarkinterviews of witnesses; edits to directs of Kelly & Compton based on this review; e-mail to client re: dates of interviews | 1.5 | $650.00 | $975.00 | Pink |
| 7/25/22 | Maloney | E-mail to MEDIATOR Kaiswer re: scheduling; e-amils to Calvin responding to e-mails; e-mails to client discussing discipline facts 7:30-9:00 | 1.5 | $650.00 | $975.00 | Pink |
| 7/25/22 | Maloney | create agenda, review calendar for TCT CC re: all the pending scheduling issues, disciplinary issues; settlement; trial plan, experts | 0.66 | $650.00 | $429.00 | Pink |

| 7/25/22 | Maloney | Draft trial plan | 1 | $650.00 | $650.00 | Pink |
|---|---|---|---|---|---|---|
| 7/25/22 | Maloney | Draft trial plan | 0.75 | $650.00 | $487.50 | Pink |
| 7/25/22 | Maloney | Draft trial plan | 1.5 | $650.00 | $975.00 | Pink |
| 7/28/22 | Maloney | Review notes/exhibits in preparation for today's meeting; review results of KK inventory; pack | 1.25 | $650.00 | $812.50 | Pink, blue |
| 7/29/22 | Maloney | Review witness time allocation chart; review/edit trial plan; TCT CC to discuss; more edits; e-mail to opposing counsel | 1.25 | $650.00 | $812.50 | Pink |
| 8/2/22 | Maloney | Preparation of pleadings: pl objections to def exhibits; edit, finalize, file; receive NEF, retrieve, download, forward to client with explanation | 1.5 | $650.00 | $975.00 | Pink |
| 8/2/22 | Maloney | E-mail to/from Kaiser re: mediation; draft to CC; tct CC to discuss; receive corrections, edit, finalize, send to Mr. Kaiser | 0.75 | $650.00 | $487.50 | Pink |
| 8/3/22 | Maloney | Review defense proposed trial plan edits; review CC comments; e-mails to CC, opposing counsel; additional review; compare calendar; actual time 2.5 | 2 | $650.00 | $1,300.00 | Pink |
| 8/3/22 | Maloney | E-mail from/to CCabout how to manage the depo transcript designation task; conference with MM re: how to extract relevant depo pages; necessary software, source documents | 1 | $650.00 | $650.00 | Pink |
| 8/4/22 | Maloney | Preparation for settlement conference: packing, reviewing last mediation statement | 1 | $650.00 | $650.00 | Pink, blue |
| 8/4/22 | Maloney | Court Appearance - settlement conference; travel, meet, travel home; actual time 6.0 | 5 | $650.00 | $3,250.00 | Pink |
| 8/5/22 | Maloney | Draft PTB | 2 | $650.00 | $1,300.00 | Pink |
| 8/5/22 | Maloney | Draft PTB; actual time 4 hours | 3.5 | $650.00 | $2,275.00 | Pink |
| 8/5/22 | Maloney | Review trial plan; e-mails t/f opposing counsel and CC; prepare pleading; file 1.0 | 1 | $650.00 | $650.00 | Pink |
| 8/6/22 | Maloney | Draft trial brief; e-mails t/f CC | 2.25 | $650.00 | $1,462.50 | Pink |
| 8/6/22 | Maloney | Draft PTB | 2 | $650.00 | $1,300.00 | Pink |
| 8/6/22 | Maloney | Draft PTB; actual time 2.5 | 2 | $650.00 | $1,300.00 | Pink |
| 8/7/22 | Maloney | Draft PTB; actual time 3.0 | 2 | $650.00 | $1,300.00 | Pink |
| 8/8/22 | Maloney | Review Kelly depo tran, continue depo summary; JE 9 interviews; actual time 1.5 | 1 | $650.00 | $650.00 | Pink |
| 8/8/22 | Maloney | Draft/edit ptb (actual time 4.0) | 3.5 | $650.00 | $2,275.00 | Pink |
| 8/9/22 | Maloney | Preparation of pleadings PTB finalize, file; receive NEF; retrieve; forward to client | 1.5 | $650.00 | $975.00 | Pink |
| 8/9/22 | Maloney | Preparation of pleadings: discovery lodgment; create cover; retrieve discovery docuemnts, sort, insert into master, number; e-mail to CC to confirm | 1.75 | $650.00 | $1,137.50 | Pink |
| 8/10/22 | Maloney | Preparation of pleadings: AMENDED Notice of Lodgment; eliminate some pages; re-number page references and edit document to reflect; file document; receive NEF; retrieve, store, print pleading; forward to client with explanation | 1.5 | $650.00 | $975.00 | Blue |
| 8/10/22 | Maloney | Review defense trial briefs; check Sandhu statements re: nut checking and butt slapping; research in 115.22 standard pursuant to PREA. Is phone sex sexual abuse withing the meaning of the act/standard? | 1.5 | $650.00 | $975.00 | Pink |
| 8/11/22 | Maloney | Draft Direct | 3.75 | $650.00 | $2,437.50 | Pink |
| 8/11/22 | Maloney | Draft dir | 1 | $650.00 | $650.00 | Pink |
| 8/11/22 | Maloney | Draft direct | 1.25 | $650.00 | $812.50 | Pink |
| 8/13/22 | Maloney | Conference with client: travel to site, meet, return; actual time 4.5 | 4 | $650.00 | $2,600.00 | Pink |
| 8/14/22 | Maloney | Draft excerpts citations for Peay (reviewing depo transcripts); actual time 4.0 | 3 | $650.00 | $1,950.00 | Pink |

| Date | Name | Description | Hours | Rate | Amount | Color |
|---|---|---|---|---|---|---|
| 8/14/22 | Maloney | Edit Clark excerpts; create cover document (actual time 2.0) | 1.5 | $650.00 | $975.00 | Pink |
| 8/15/22 | Maloney | Preparation for conference with client re: direct; actual time 2.0 | 1.5 | $650.00 | $975.00 | pink |
| 8/15/22 | Maloney | Preparation: organize materials for travel to court; clerk, bench books/redwells of exhibits | 1.5 | $650.00 | $975.00 | Blue |
| 8/16/22 | Maloney | Preparation for trial; actual time 4 hours | 1 | $650.00 | $650.00 | Pink |
| 8/16/22 | Maloney | Travel to trial; exhibit logistics; trial; post trial conference; travel home; actual time 9 hours | 7 | $650.00 | $4,550.00 | Pink |
| 8/17/22 | Maloney | Travel to court; trial; post-trial conference with client, further conference with CC; travel home; actual time 8.5 | 7.5 | $650.00 | $4,875.00 | Pink |
| 8/19/22 | Maloney | Preparation for trial: Review witness statements and CX prep for Adams, froggatt; organize other w/folders; review JE 9 re: all witnesses; actual time 4.0 | 3 | $650.00 | $1,950.00 | Pink |
| 8/19/22 | Maloney | Receive 9 NEF's; retrieve; save; print; initial review | 2 | $650.00 | $1,300.00 | Pink |
| 8/20/22 | Maloney | review Mahla report: re: objections based on "transparent california" e-mail to CC with suggestions for response; additional Mahla report review; e-mail to Mahla from CC; review trial plan; review Compton documents for CX; review Mahla response; review documents for Hermann & Gott cx; actual time 4.0 | 3 | $650.00 | $1,950.00 | Pink |
| 8/20/22 | Maloney | Review Sgt. Gott depo; prepare summary | 1.5 | $650.00 | $975.00 | Pink |
| 8/21/22 | Maloney | Review documents for Chad Hermann CX; actual time 1.5 | 1.25 | $650.00 | $812.50 | Pink |
| 8/22/22 | Maloney | Preparation for trial; edit, finalize, review, file, receive NEF's, retrieve docuemnts, print; prepare CX of Compton, other witnesses 6-11 actual time 5 hours | 4 | $650.00 | $2,600.00 | Pink |
| 8/22/22 | Maloney | Preparation for trial; prepare CX of Compton, other witnesses 1-6 actual time 5 hours | 4 | $650.00 | $2,600.00 | Pink |
| 8/23/22 | Maloney | Preparation CX Compton, Perreault, Gott 4-6 | 2 | $650.00 | $1,300.00 | Pink |
| 8/23/22 | Maloney | Court Appearance, trial. Office to court; court; post-trial day conference; travel to home; actual time 7-3pm 8 hours | 7 | $650.00 | $4,550.00 | Pink |
| 8/24/22 | Maloney | Preparation: review edit Gott CX notes; Hermann notes; phone records forGott; edit MTDopposition, e-mail to CC re: MTD draft; (actual time 3 hours 3-6am) | 2 | $650.00 | $1,300.00 | Pink |
| 8/24/22 | Maloney | Court Appearance, trial day 5; travel, court, return; actual time 7.5 | 6.5 | $650.00 | $4,225.00 | Pink |
| 8/25/22 | Maloney | Court Appearance, trial; travel; trial; post trial conference; retrieve exhibits from courtroom, remove from building; return; actual time 6.5 | 5 | $650.00 | $3,250.00 | Pink |
| 9/1/22 | Maloney | Draft PFFCL | 3 | $650.00 | $1,950.00 | Pink |
| 9/3/22 | Maloney | Draft PFFCL retal | 3 | $650.00 | $1,950.00 | Pink |
| 9/4/22 | Maloney | Draft PFFCL; actual time 4 hours | 3 | $650.00 | $1,950.00 | Pink |
| 9/5/22 | Maloney | Draft PFFCL | 3.5 | $650.00 | $2,275.00 | Pink |
| 8/23/23 | Maloney | Draft Memorandum; review Local Rule 293. e-mail to co-counsel conveying this and suggesting review of declarations to consider the topics there; review of exiisting declarations to "plug in". E-mails to co-counsel about particularized topics for their declarations. Actual time 4 hours | 2 | $650.00 | $1,300.00 | Pink |
| 8/25/23 | Maloney | draft memoranda, edit discussion of .5 multiplier re: extraordinary risk; incorporate declarations; e-mails to/f Tellfer, Clark, Mussel; review Tellfer declaration; actual time 4 hours | 2 | $650.00 | $1,300.00 | Pink |
| 8/28/23 | Maloney | edit MPA to provide paragraph cites for declarations, various cases plugged in; e-mails to cc re: need to clarify certain points in declarations; actual time 4 hours | 2 | $650.00 | $1,300.00 | Pink |
| **Total Objections to Maloney Entries** | | | **397.21** | **N/A** | **$258,186.50** | |

# Exhibit
# B-5

| Multiple Appearance/Double (Yellow) | | | | | |
|---|---|---|---|---|---|
| Date | Timekeeper | Description | Hours | Rate | Amount |
| 11/4/19 | Lambdin | travel to mediation in sacramento RT | 4 | $550 | $2,200.00 |
| 11/14/19 | Lambdin | travel Susanville to Quincy to interview A. T. | 1.5 | $550 | $825.00 |
| 11/15/19 | Lambdin | dep of Ki11 Hyams | 1 | $550 | $550.00 |
| 11/15/19 | Lambdin | depo of Brandon Compton 9-1 | 4 | $550 | $2,200.00 |
| 11/15/19 | Lambdin | travel to BCJ | 2 | $550 | $1,100.00 |
| 12/3/19 | Chang | Prepare for 30b6 deposition of County [reduced from 4.8 hours] | 3.8 | $600.00 | $2,280.00 |
| 12/4/19 | Lambdin | prep. for deposition | 3.1 | $550 | $1,705.00 |
| 12/5/19 | Lambdin | depo of Wagner | 5 | $550 | $2,750.00 |
| 12/5/19 | Lambdin | travel to depo of wagner | 3 | $550 | $1,650.00 |
| 12/6/19 | Lambdin | Depo of Sanders and Tusso | 3 | $550 | $1,650.00 |
| 12/6/19 | Lambdin | T /C co-couns. re depo's | 0.3 | $550 | $165.00 |
| 12/6/19 | Lambdin | deposition of sanderis and tusset | 4 | $550 | $2,200.00 |
| 12/9/19 | Lambdin | site visit jail Quincy (calvin chang) | 2 | $550 | $1,100.00 |
| 12/9/19 | Lambdin | site visit jail Quincy (calvin chang) | 3 | $550 | $1,650.00 |
| 12/12/19 | Lambdin | deposition 30b6 | 2 | $550 | $1,100.00 |
| 12/12/19 | Lambdin | deposition 30b6 | 3 | $550 | $1,650.00 |
| 12/20/19 | Lambdin | depo of tw - continued | 5.2 | $550 | $2,860.00 |
| 1/2/20 | Lambdin | Tiffany | 0.1 | $550 | $55.00 |
| 1/9/20 | Lambdin | travel to quincy for depo of chad herman | 3 | $550 | $1,650.00 |
| 1/9/20 | Lambdin | depo of chad hermann | 2.5 | $550 | $1,375.00 |
| 2/1/20 | Lambdin | Deposition of Sheriff Gregory Hagwood; confer with co-couns. | 2.9 | $550 | $1,595.00 |
| 2/12/20 | Chang | Draft and send Email to JM wtih summary of case for him to consider co-counsel; review his follow up emails to me. | 0.4 | $600.00 | $240.00 |
| 2/20/20 | Maloney | Review CCC notes of depo of plaintiff; actual time 2.25 | 1.5 | $650.00 | $975.00 |
| 2/21/20 | Chang | Meet with Co-Counsel JM re his representation | 1.2 | $600.00 | $720.00 |
| 2/21/20 | Maloney | Conference with Chang case status; co-counsel arrangements; travel to and from conference; actual time 3.0 | 2.5 | $650.00 | $1,625.00 |
| 3/6/20 | Chang | Tel conference with JM and EL; Discuss case plan, and Norberg testimony | 0.4 | $600.00 | $240.00 |
| 4/16/20 | Lambdin | T/C w Chang & Maconey re inmate witnesses | 2.5 | $550 | $1,375.00 |

| | | | | | |
|---|---|---|---|---|---|
| 4/16/20 | Chang | Zoom Meeting with Co-counsel,and reviewing amended Disclosures | 1.2 | $600.00 | $720.00 |
| 4/16/20 | Maloney | preparation for and Conference with co-counsel re: witnesses in Supp Disc; cell check witnesses; discussion of mock trial; witness folder notes | 1.5 | $650.00 | $975.00 |
| 4/17/20 | Lambdin | T/C w Chang & Maconey re inmate witnesses / norberg | 1.3 | $550 | $715.00 |
| 4/17/20 | Chang | Continued Zoom meeting with Co-counsels re amending disclosures reviwing names an dfacts | 1.4 | $600.00 | $840.00 |
| 4/17/20 | Maloney | Preparation and conference with CC/EL re: remaining witnesses; rebutting NOI lies; notes in witness folders | 1.5 | $650.00 | $975.00 |
| 4/29/20 | Lambdin | r&r emails re Belcher & belt issue | 0.6 | $550 | $330.00 |
| 6/30/20 | Chang | Communicate with JM regarding Defendant's production/nonproduction (multiple emails); Research same. | 1.3 | $600.00 | $780.00 |
| 7/17/20 | Chang | Tel conv with JM re discovery issues | 0.3 | $600.00 | $180.00 |
| 7/21/20 | Lambdin | Prepare for County's taking of Kenyon Norberg deposition | 0.4 | $550 | $220.00 |
| 7/21/20 | Lambdin | depo of norberg - no show - tech issues because of fires | 0.5 | $550 | $275.00 |
| 9/29/20 | Chang | Listen to audio recordings from between Wagner and Hymas/ CDCR global tel link calls 20160025_2_26_18 33 TO 20180098_12-26_18 28, first 20 of 35 audio files | 4 | $600.00 | $2,400.00 |
| 9/30/20 | Chang | Listen to audio recordings from between Wagner and Hymas/ CDCR global tel link calls 20160025_2_26_18 33 TO 20180098_12-26_18 28, last 15 of 35 audio files | 3.5 | $600.00 | $2,100.00 |
| 10/1/20 | Chang | recordings between Wagner and Hymas | 6.5 | $600.00 | $3,900.00 |
| 10/15/20 | Lambdin | Travel: Rndtrip to Greenville for Deposition of Jeff Goodson | 4 | $550 | $2,200.00 |
| 10/15/20 | Lambdin | depo of Jeff Goodson | 1 | $550 | $550.00 |

| 8/5/22 | Chang | Reveiw emails from JM, trial plan draft amendments; tel call with JM | 0.4 | $600.00 | $240.00 |
|---|---|---|---|---|---|
| **Multiple Appearance/Double Billing Objection Totals** | | | **96.3** | **N/A** | **$54,885.00** |

# Exhibit
# B-6

| Block Billing Objections (Pink) | | | | | |
|---|---|---|---|---|---|
| Date | Timekeeper | Description | Hours | Rate | Amount |
| 7/26/18 | Chang | Travel to Reno meet with client regarding her case and back [reduced from actual 4.9] | 3.5 | $600.00 | $2,100.00 |
| 7/30/18 | Chang | Case Outline; Drafting demand letter [reduced from actual 3.5 hours]; review strategize case approach | 1.7 | $600.00 | $1,020.00 |
| 8/2/18 | Chang | Review Jail videos produced by County, 9 videos. | 3.5 | $600.00 | $2,100.00 |
| 8/4/18 | Chang | Review Plumas County Sheriff policy manual 900 Correctional Facilty 397-412, and relevant Sexual Assault Victim Rights, Discrimination 328, peruse for relevant policies. | 0.9 | $600.00 | $540.00 |
| 8/28/18 | Chang | Meeting with client and Alison Berry Wilkinson in my office; notes to computer. | 3.1 | $600.00 | $1,860.00 |
| 10/9/18 | Chang | Meet with client and LDF Attorney Alison Berry-Wilkenson in office; incorporate intems into case file. | 3.7 | $600.00 | $2,220.00 |
| 11/12/18 | Chang | Review 180 pages attachments personnel file | 3.5 | $600.00 | $2,100.00 |
| 1/21/19 | Chang | Review 4 folders with IA interview notes, analysis, and transcripts from Ia Interview #1; Notes and incorporate into case file. [Reduced from 5.7] | 4.7 | $600.00 | $2,820.00 |
| 4/1/19 | Chang | Review Def County production of 1,046 pages of documents [reduced from 4.2 hours] | 3.9 | $600.00 | $2,340.00 |
| 7/18/19 | Chang | Begin review of 40 page NOIT, IA report with exhibits, 970 pages [Reduced from 6.5] | 4.5 | $600.00 | $2,700.00 |

| 7/19/19 | Chang | Continue reviewing NOIT Notice of Termination materials with 22 exhibits, from ABW, approx. 37GB, IA file, reports, correspondence between ABW and County, policies [Reduced from 8.9] | 6.9 | $600.00 | $4,140.00 |
|---|---|---|---|---|---|
| 8/30/19 | Chang | internet and subscription research names, addresses. [reduced from 4.1 hours] | 2.1 | $600.00 | $1,260.00 |
| 9/27/19 | Chang | Rndtrip Travel to Quincy; interview witness Naomi S,, Lindsay J, with EL | 6 | $600.00 | $3,600.00 |
| 10/20/19 | Chang | Review/Listen to Jail Audio Records of select conversations between client and Inmate Hymas [ Reduced from 5.5] | 4.5 | $600.00 | $2,700.00 |
| 10/31/19 | Chang | Review/Listen to Jail Audio Records of select conversations between client and Inmate Hymas in July 2018 Plumas Jail, 28 recordings; including phone sex and his disparaging comments | 3.7 | $600.00 | $2,220.00 |
| 11/14/19 | Chang | Preparing for Compton Deposition; Review his statements, review female inmate allegations. | 3.5 | $600.00 | $2,100.00 |
| 11/14/19 | Chang | Rndtrip Travel to Quincy; interview witness Angela T with EL., obtain declaration. | 6 | $600.00 | $3,600.00 |
| 11/19/19 | Chang | Prepare for Deposition of Sheriff Gregory Hagwood [reduced from 4.5 hours] | 3.5 | $600.00 | $2,100.00 |
| 12/1/19 | Chang | Travel; drive to SFO, by air from SFO to Kona, Hawaii for Defendant's Deposition of Andrea Murana. (reduced from 11.5, incl airport time check in, and drive to SFO] | 9.5 | $600.00 | $5,700.00 |
| 12/3/19 | Chang | Travel return from Kona to SFO [reduced from 11.5 incl airport time check in and drive back to Sacramento] | 9.5 | $600.00 | $5,700.00 |

| 12/11/19 | Chang | Review materials IR binders in prep for 30b6 deposition of County expecting Clark to be witness per Margaret Long | 3.1 | $600.00 | $1,860.00 |
|---|---|---|---|---|---|
| 2/24/20 | Maloney | download, organize, Review pleadings from CAED website; draft notice of association of counsel and send to Chang for filoing; e-mail to co-counsel re: stipulation to proceed before the magistrate; create caption document; draft JSR; retrieve FAC draft; actual time 3 hours | 2 | $650.00 | $1,300.00 |
| 2/25/20 | Maloney | Draft FAC; e-mails t/f CCC re: impact of Order on claims we may assert, parties we may add; exhaustion paragraphs; | 1.5 | $650.00 | $975.00 |
| 3/3/20 | Maloney | E-mail to CCC re: review of some of discovery disputes, M&C letters; rough draft of JSRDD for 1/27/20 M&C letter | 1.5 | $650.00 | $975.00 |
| 3/4/20 | Maloney | Review Hagwood depo tran; e-mails to CC | 2 | $650.00 | $1,300.00 |
| 3/4/20 | Maloney | Review Hagwood depo; actual time 2 hours; e-mail with comments to CCC | 1.5 | $650.00 | $975.00 |
| 3/6/20 | Maloney | Review dox re: Norberg Dec; Canalia NPR; Warren interim decision; Hargood final decision; Compton R26 disclosure & appraisal re: supervisor | 1 | $650.00 | $650.00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/6/20 | Maloney | Organize notes for Teleconference w/Chang and EL re: Norberg dec; how to preserve testimony for trial; impact of dec evidence; interplay of notice of proposed removal, Warren's interim decision, and final decision with Norberg dec; discussion of meaning of Warren statement that SH claim is for courts & impact of Norberg Dec on Warren's reasoning; problem presented by Warren CLAIMING to eschew SH claim in his decison (versus NPR having relied on TW's false criminal report) and Hagwood's claim he had no role in the decision making process; impact of "supervisor Compton" issue; discovery of financial information issue; notes in witness folders | 1 | $650.00 | $650.00 |
| 3/22/20 | Chang | Review and Prepare all documents for Expert Amy Oppenheimer for initial review | 3.3 | $600.00 | $1,980.00 |
| 3/24/20 | Chang | preparding sets of discovery for all defendants ex Hagwood | 2.3 | $600.00 | $1,380.00 |
| 3/27/20 | Maloney | Draft R26(f) letter to opposing counsel; draft to cocounsel; review discovery todo list of CCC; edit draft | 1.5 | $650.00 | $975.00 |
| 3/27/20 | Maloney | Draft e-mail to opposing counsel re: discovery plan; to CCC; comments in return | 1 | $650.00 | $650.00 |
| 4/3/20 | Maloney | Review Clark depo tran; e-mails to CCC | 1.5 | $650.00 | $975.00 |
| 4/8/20 | Maloney | Draft JSRDD Peay; TCT Uhrhammer; e-mail to Uhrhammer & Long; response from Long, reply, find M&C letter to provide to her per her request; actual time 5 hours | 4 | $650.00 | $2,600.00 |
| 4/9/20 | Chang | converting documents produced by CDCR approx 1gb of documents | 3.5 | $600.00 | $2,100.00 |
| 4/9/20 | Chang | Reviewing docs produced by CDCR 1gb of email and docs | 3.6 | $600.00 | $2,160.00 |

| Date | Name | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 4/9/20 | Maloney | Review 5066 cases in preparatoin for TCT ML; brief call with proposal, which she will consider and get back to me; e-mail to Calvin discussing my proposal to resolve the discovery dispute and my call to ML; actual time 1.0 | 0.75 | $650.00 | $487.50 |
| 4/10/20 | Chang | Listen to 1st half 39 audio files recordings from CDCR ; notes and correspond to case information. | 4.5 | $600.00 | $2,700.00 |
| 4/11/20 | Chang | MA-19-02-011 re titled "Plumas"; notes and correspond to case information. see sep entry for review of 39 calls, RFP 5, [50+ audio files reduced from 7 hrs hours. | 3.5 | $600.00 | $2,100.00 |
| 4/11/20 | Chang | Listen to 2nd half 39 audio files recordings from CDCR ; notes and correspond to case information. | 4.6 | $600.00 | $2,760.00 |
| 4/15/20 | Maloney | Conference with ML re: discovery dispute; deposition scheduling; e-mail confirming agreement; e-mail to co-counsel; prepare for conference; deposition transcript review re: Peay did not know if there was a SH investigation; actual time 3 hours | 2 | $650.00 | $1,300.00 |
| 4/15/20 | Maloney | Review declarations provided to Amy O re: inmate abuse as evidence of pretext; e-mails to and from co-counsel on this subject; actual time 2 hours | 1.5 | $650.00 | $975.00 |
| 4/23/20 | Maloney | review Clark report re: jail checks; E-mail to opposing couunsel, co=counsel, TW re: impact of TW's statement to Clark re: jail commander hermann having criticized her performance in jail checks | 1 | $650.00 | $650.00 |
| 4/24/20 | Maloney | E-mail from expert AO regarding commencement of work; review of material to be sent to AO; discussion with CC regarding what we can ask AO to do before commencement of depos in mid-July; draft response to AO for CC review. actual time 1.5 | 1 | $650.00 | $650.00 |

| 4/24/20 | Maloney | Research: Pedersen consent decree; e-mails to and from counsel for plaintiffs in Pedersen re: consent decree and cell checks compliance by the county, lapses in same; | 1 | $650.00 | $650.00 |
|---|---|---|---|---|---|
| 4/24/20 | Maloney | Review NOI; work on chart; e-mails re: consent decree | 1.5 | $650.00 | $975.00 |
| 4/24/20 | Maloney | Review EDCal website, looking for "consent decree" litigation; Pederson; also, located litigation brought by Hagwood against the county; e-mails to CC on this subject; discussion of obtaining pleadings in case, long closed | 1 | $650.00 | $650.00 |
| 4/27/20 | Maloney | Review Canalia ROI; continue spread sheet through Category A Item 10. | 2.5 | $650.00 | $1,625.00 |
| 4/28/20 | Maloney | Review Clark report; incorporate into spread sheet; A1F1 (cell checks); Perault w/statement | 3 | $650.00 | $1,950.00 |
| 5/5/20 | Maloney | Review Clark report re: allegations 1 & 2; review Perrault w/statements; review allegation 3; e-mail to CC re: conclusions re: allegation 3, suggested approach to Clark depo | 2.5 | $650.00 | $1,625.00 |
| 5/7/20 | Maloney | Review material re: cell check documentation nunc pro tunc; tct client; e-mail to co-counsel summarizing conversation | 1.5 | $650.00 | $975.00 |
| 5/11/20 | Maloney | Review Gott responses to RFP; research vagueness of response; draft e-mail to Margaret Long re: unsatisfactory responses; receive comments on draft from CC; incorporate CC suggestions, send e-mail to long; actual time 1.5 | 1 | $650.00 | $650.00 |
| 6/4/20 | Maloney | Review BCSS audit reports 2008-2018 re: safety checks; e-mail to co-counsel re impact, further steps | 1 | $650.00 | $650.00 |
| 6/25/20 | Maloney | Clark/Canalia depo prep - review NID & IA, notes for depo | 1.5 | $650.00 | $975.00 |
| 6/26/20 | Maloney | Review Clark transcript; e-mails to CC with questions; review IA documents in file; actual time 2 hours | 1.5 | $650.00 | $975.00 |
| 6/29/20 | Maloney | Review NOI, IA, Peay Reports re: sex | 2 | $650.00 | $1,300.00 |
| 6/30/20 | Maloney | 19 E-mail t/f CC & ML re: issues with defendant's document production (supp) | 1.5 | $650.00 | $975.00 |

| 6/30/20 | Maloney | E-mail to/from CC & ML (18) re: various issues | 1 | $650.00 | $650.00 |
|---|---|---|---|---|---|
| 7/2/20 | Maloney | Review, e-mail to ML; e-mail to ABW; e-mail to client; e-mail to CC all re: obtaining exhibits 1-22 from defendants | 1 | $650.00 | $650.00 |
| 7/2/20 | Maloney | Prepare for Canalia depo; sex issue | 3 | $650.00 | $1,950.00 |
| 7/3/20 | Maloney | Prepare for Canalia depo; crime issues 27-30 | 2 | $650.00 | $1,300.00 |
| 7/3/20 | Maloney | Prepare for Canalia depo; time card entries issue; review Exhibit 12; conference w/CC re: "pairs", missing exhibits | 2.5 | $650.00 | $1,625.00 |
| 7/3/20 | Maloney | Prepare for Canalia depo; sex - cross ref Ex 14; actual time 3.0 | 2 | $650.00 | $1,300.00 |
| 7/4/20 | Maloney | Prepare for Canalia depo; 30(b)(6) prep; MEL letter; e-mail to AO on this subject | 1.5 | $650.00 | $975.00 |
| 7/8/20 | Maloney | Prep for SP depo; review 16017; chart chron of investigation; chart TW incidents; cross-reference corroboration dox; locate pages from 16018 in 16017; review for duplicatoins; e-mails t/f co-counsel with questions, issues | 4 | $650.00 | $2,600.00 |
| 7/17/20 | Maloney | preparation for Norberg/Perreault depos; review dox, retrieve their statements; TCF ML: depo scheduling chaos; e-mail to CC on this subject; e-mail to CC re: approach to Canalia/Clark depos; actual time 3.5 | 3 | $650.00 | $1,950.00 |
| 7/22/20 | Maloney | Prepare for Clark depo; review chart, Clark IA | 2 | $650.00 | $1,300.00 |
| 7/31/20 | Maloney | Steve Peay depo prep; 16017; e-mail to CC | 2.5 | $650.00 | $1,625.00 |
| 7/31/20 | Maloney | Preparation: Steve Peay depo prep | 2 | $650.00 | $1,300.00 |
| 8/5/20 | Maloney | Peay depo prep (actual time 3.0) | 2 | $650.00 | $1,300.00 |
| 8/5/20 | Maloney | Peay depo; actual time 5.0 | 4 | $650.00 | $2,600.00 |
| 8/6/20 | Maloney | Kelley depo | 1.5 | $650.00 | $975.00 |
| 8/6/20 | Maloney | Kelley depo prep (actual time 2.0) | 1 | $650.00 | $650.00 |
| 8/12/20 | Maloney | Review notes; questions for Gott depo; RFPD 4 & 5; e-mails with CC re: Gott issues (actual time 3.0) | 2 | $650.00 | $1,300.00 |

| 8/12/20 | Maloney | Review statements of Gott for depo; butt slapping addressed through training; racial jokes addressed through counseling; testicle hitting not observed; various notice items to Gott of Wagner/Hymas conduct, inaction | 1.5 | $650.00 | $975.00 |
|---------|---------|---------|---------|---------|---------|
| 8/13/20 | Maloney | Depo prep Gott | 2 | $650.00 | $1,300.00 |
| 8/13/20 | Maloney | Depo Gott (DE 4/1/21) | 2 | $650.00 | $1,300.00 |
| 8/19/20 | Maloney | RFA set on authentication of 22 exhibits, plus jail audits, various policies | 1.5 | $650.00 | $975.00 |
| 8/25/20 | Maloney | Clark depo prep; actual time 3.0 | 2.5 | $650.00 | $1,625.00 |
| 8/25/20 | Maloney | Clark prep 1 & 2 | 0.75 | $650.00 | $487.50 |
| 8/26/20 | Maloney | Clark depo prep #5, 6 & 32 (actual time 3.0) | 2.5 | $650.00 | $1,625.00 |
| 8/26/20 | Maloney | Clark depo prep #26, 27, 28, 29, 30, 31 | 1 | $650.00 | $650.00 |
| 8/27/20 | Maloney | Preparation for Clark depo (DE 4/1/21) | 2 | $650.00 | $1,300.00 |
| 8/27/20 | Maloney | Clark depo (DE 4/1/21) (actual time 5.0) | 4.5 | $650.00 | $2,925.00 |
| 9/1/20 | Maloney | Canalia depo prep; actual time 3.0 | 2 | $650.00 | $1,300.00 |
| 9/2/20 | Maloney | Canalia depo prep; actual time 3.5 | 3 | $650.00 | $1,950.00 |
| 9/3/20 | Maloney | Canalia depo prep | 2 | $650.00 | $1,300.00 |
| 9/3/20 | Maloney | Canalia depo prep | 2.5 | $650.00 | $1,625.00 |
| 9/3/20 | Maloney | Canalia depo | 2.5 | $650.00 | $1,625.00 |
| 9/22/20 | Maloney | very frustrating exercise of examining exhbiit 12 to notice page 30 is missing, and 40-47 hgave been placed in it TWICE; e-mails to clerk for further analysis of new pages 40-47 and e-mail to Margaret to point out error | 1.75 | $650.00 | $1,137.50 |
| 9/24/20 | Maloney | listen to clark interview of Perreault; notes, e-mails to CC | 1.5 | $650.00 | $975.00 |
| 9/26/20 | Maloney | review e-mail/proposed stip, existing scheduling order, calculate alternatives; e-mail to CC | 1 | $650.00 | $650.00 |
| 9/28/20 | Maloney | Reivew stip, schedul order; review calendar; draft proposed alternative stip; e-mail to ML & SW re: alternative stip | 1 | $650.00 | $650.00 |
| 10/2/20 | Maloney | Clark depo prep; review transcript pages 1-55; review CC suggestions; review notes | 2 | $650.00 | $1,300.00 |
| 10/2/20 | Maloney | receive, review, save def discovery responses; e-mails t/f client, CC re various documents produced | 3 | $650.00 | $1,950.00 |

| 10/3/20 | Maloney | review rest of Clark transcript; review transcripts of phone conversations referred to (exhibits 20, 22) | 1.25 | $650.00 | $812.50 |
|---------|---------|---------|------|---------|---------|
| 10/28/20 | Maloney | review clark depo; cites for facts 2, 26, 3, 4 in SUFFID | 1.5 | $650.00 | $975.00 |
| 12/4/20 | Maloney | incorporate Canalia depo into SH/DISC SUF/FID's; some draft of MSJ Opp | 3.5 | $650.00 | $2,275.00 |
| 12/18/20 | Maloney | edit MPNA MSJ Discip; research effect of Henderson comment to Gott re: Wagner's shit with Hymas | 2 | $650.00 | $1,300.00 |
| 12/19/20 | Maloney | draft SH msj/opp; e-mails to CC re: communications to Serena/Suell | 2.5 | $650.00 | $1,625.00 |
| 12/22/20 | Maloney | review settlement correspondence; review FAC; suggest language for stip; e-mails t/f CC re: various aspects of dismissal, claims. | 1.5 | $650.00 | $975.00 |
| 3/14/21 | Maloney | review AmyO presentation re: importance of investigations; e-mail with comments to CC; tct CC re: engaging AO; prepare e-mail to AO with three policies, Canalia 30b6 depo | 2 | $650.00 | $1,300.00 |
| 3/15/21 | Maloney | prepare and send e-mails to AO re: evidence produced in discovery, tasking; e-mails t/f CC re: details on this subject; actual time 5 hours | 3.5 | $650.00 | $2,275.00 |
| 3/23/21 | Chang | Provide all initial information to economist | 2.5 | $600.00 | $1,500.00 |
| 4/1/21 | Maloney | Research Trollson jury trial before KJM; download, review, save documents from docket; e-mail to Jill Telfer with Q's; actual time 3.5 (DE 4/7) | 2.5 | $650.00 | $1,625.00 |
| 4/8/21 | Maloney | Draft settlement conference statement; e-mail to CC with discussion | 2 | $650.00 | $1,300.00 |
| 4/9/21 | Maloney | Draft settlement conference statement, editing SH portion and adding retaliation discussion; actual time 5 hours | 4 | $650.00 | $2,600.00 |
| 5/5/21 | Maloney | Review & edit AmyO draft report; e-mails to CC, AO with suggestions, comments; brief phone call with AmyO (DE for 5/5 on 5/6) | 1.5 | $650.00 | $975.00 |

| 5/5/21 | Maloney | Review & edit PE draft report; e-mails to PE with suggestions, comments; brief phone call with PE; review all greater than 60's entries, identify false positives, e-mails to correct; (DE for 5/5 on 5/6) | 2.5 | $650.00 | $1,625.00 |
|---|---|---|---|---|---|
| 5/6/21 | Maloney | Review AO draft, questions; reply with comments (5/7 for 5/6) | 1.5 | $650.00 | $975.00 |
| 5/6/21 | Maloney | Review PE draft, check data, questions; reply with comments (5/7 for 5/6) | 2.5 | $650.00 | $1,625.00 |
| 5/7/21 | Maloney | Review PE draft, check data, questions; reply with comments | 1 | $650.00 | $650.00 |
| 5/7/21 | Maloney | Review AO draft, check data, questions; reply with comments | 1 | $650.00 | $650.00 |
| 5/9/21 | Maloney | Review/comment on PE spreadsheet re: name sorted list, with greater than 60 indicated; review other final versions in PDF; review/comment/edit report (DE 5/10 for 5/9) | 1.5 | $650.00 | $975.00 |
| 5/10/21 | Maloney | Review PE final report, comments; organize various documents into final version, bate-stamp; send to CC with comments/explanations | 1.5 | $650.00 | $975.00 |
| 5/10/21 | Maloney | Draft/edit settlement conference statement; e-mails to CC re: lodging statement;draft notice of lodging pleading; e-mails re: plans for conference, logistics; e-mails re: plans for serving expert witness disclosures on Wed | 1.5 | $650.00 | $975.00 |
| 5/19/21 | Maloney | Review e-mail to opposing counsel re: failure to make proper expert witness disclosures; review County's proposal for extending dates for Rebuttal disclosures and Expert discovery; TCT CC to discuss; finalize & edit e-mail to opposing counsel re: failure to make proper disclosures, edit for response thursday afternoon | 1.25 | $650.00 | $812.50 |
| 5/24/21 | Chang | Rndtrip Travel RT to Reno for MSC remote with client at Regus Office | 4.5 | $600.00 | $2,700.00 |
| 5/27/21 | Maloney | Review defendant's motion to alter deadlines; research rule 60 v. 16; Mammoth; e-mail to CC on this subject | 1 | $650.00 | $650.00 |

| 6/7/21 | Maloney | e-mails t/f County, Calvin, Edmonds, Oppenheimer/her office, re: scheduling depositions; discussion with Edmonds re permissible scope of deposition; actual time 1.5 | 1 | $650.00 | $650.00 |
|--------|---------|---------|---|---------|---------|
| 7/13/21 | Maloney | Preparation for Obayashi depo actual time 3.0 | 2 | $650.00 | $1,300.00 |
| 7/14/21 | Maloney | Preparation for Obayashi depo; actual time 2.5 hours | 1.5 | $650.00 | $975.00 |
| 12/20/21 | Maloney | Draft/edit Exhibit C: Pl Exhibits, for JPTS - review document index to check for necessary exhibits not already included (8000 pages); actual time 2.0 | 1.5 | $650.00 | $975.00 |
| 12/21/21 | Chang | adding witness issues [Reduced from 6.5 hours] | 5.5 | $600.00 | $3,300.00 |
| 12/24/21 | Maloney | Edit JPTS; e-mails to CC with comments; actual time 2.5 | 2 | $650.00 | $1,300.00 |
| 12/30/21 | Maloney | e-mails back and forth with edits re: JPTS, exhibits A-D; actual time 4.0 | 3 | $650.00 | $1,950.00 |
| 12/31/21 | Maloney | Review/organize e-mails re: JPTS, trial arguments, Tahara impact, TW direct notes re: Sergeant issue; rebuttal draft points; actual time 2 hours | 1.5 | $650.00 | $975.00 |
| 1/10/22 | Maloney | Review e-mails re: Compton acts as supervisor; exhibit 8 & 50 (added to exhibit list); edit Wagner Direct and Compton Direct re: supervisor; Review JI 2525; edit Final Arg; actual time 3.0 | 2 | $650.00 | $1,300.00 |
| 1/13/22 | Maloney | Review disputed facts document to confirm all exhibits accounted for in existing list; review substance of various of Facts 1-32, to confirm necessary witnesses listed; planning for other slides in closing argument; actual time | 1 | $650.00 | $650.00 |
| 1/13/22 | Maloney | Edit Exhibit C to include 50 and add pages to 26; file document, retrieve ECF, forward to client with explanation of purpose of additions and how they fit in with her proposed testimony | 0.75 | $650.00 | $487.50 |
| 2/23/22 | Maloney | edit mediation brief | 1 | $650.00 | $650.00 |
| 2/24/22 | Maloney | Edit mediation brief (2/26 for 2/24) (actual time 3.0) | 2.5 | $650.00 | $1,625.00 |

| 2/25/22 | Maloney | Edit mediation brief (2/26 for 2/25) (actual time 3.5) | 3 | $650.00 | $1,950.00 |
|---|---|---|---|---|---|
| 3/9//22 | Maloney | Review defendant's mediation brief (actual time 4.0) | 3 | $650.00 | $1,950.00 |
| 3/11/22 | Chang | Rndtrip Travel to Reno for 2nd Mediation/ JAMS Ken Gack, remote at Regus Office | 4.5 | $600.00 | $2,700.00 |
| 3/11/22 | Chang | Mediation (2nd), JAMS Ken Gack, remote with client in Reno | 5.3 | $600.00 | $3,180.00 |
| 6/17/22 | Maloney | Travel to one legal office to examine exhibit books; meet with CC to discuss progress of exhibits; return; actual time 3 hours | 2 | $650.00 | $1,300.00 |
| 7/11/22 | Maloney | Review clerk's e-mail requesting parties to provide information about time allocated to witnesses; review witness list; review calendar; attempt to order witnesses and estimate time; | 2 | $650.00 | $1,300.00 |
| 7/14/22 | Maloney | Travel to CC office in Sacramento; meet with CC to review JE & PL exhibit books; sort, note corrections; review witness list and times/compare CC estimates for his witnesses; discuss OSC re: settlement; | 4 | $650.00 | $2,600.00 |
| 7/15/22 | Maloney | receive NEF; retrieve county response to OSC; review; retrieve Compton response to OSC; review; forward to client; e-mails t/f CC re: response; draft response; share, review, edit. Actual time 2.0 | 1.5 | $650.00 | $975.00 |
| 7/18/22 | Maloney | Draft/edit pl resp to OSC; e-mails with drafts to/fr CC; file pleading; receive NEF, retrieve, review, forward document to client with explanation | 1.25 | $650.00 | $812.50 |
| 7/19/22 | Maloney | Review Deffendant's Exhibits; sort; relabel to put in order; review and compare to JE/PE to identify duplication; notes and research re: various objections; actually spent all day on this | 3 | $650.00 | $1,950.00 |
| 7/22/22 | Maloney | Conference with JEMTV, his review of JE 19-22; review examples, connection to JE 9; e-mail to TW with one example. | 1.25 | $650.00 | $812.50 |

| 7/23/22 | Maloney | Review client e-mails regarding issue #9, reply; check sources; and regarding settlement posture, procedures | 1.25 | $650.00 | $812.50 |
|---|---|---|---|---|---|
| 7/23/22 | Maloney | review client e-mails, order; TCT CC to discuss settleement issues; client e-mail; client health; MIL issues re: obayashi; aspects of judge's order | 1 | $650.00 | $650.00 |
| 7/24/22 | Maloney | Review JE 9 to make index of dates of Clarkinterviews of witnesses; edits to directs of Kelly & Compton based on this review; e-mail to client re: dates of interviews | 1.5 | $650.00 | $975.00 |
| 7/25/22 | Maloney | E-mail to MEDIATOR Kaiswer re: scheduling; e-amils to Calvin responding to e-mails; e-mails to client discussing discipline facts 7:30-9:00 | 1.5 | $650.00 | $975.00 |
| 7/25/22 | Maloney | create agenda, review calendar for TCT CC re: all the pending schedculing issues, disciplinary issues; settlement; trial plan, experts | 0.66 | $650.00 | $429.00 |
| 7/25/22 | Maloney | Draft trial plan | 1 | $650.00 | $650.00 |
| 7/25/22 | Maloney | Draft trial plan | 0.75 | $650.00 | $487.50 |
| 7/25/22 | Maloney | Draft trial plan | 1.5 | $650.00 | $975.00 |
| 7/28/22 | Maloney | Review notes/exhibits in preparation for today's meeting; review results of KK inventory; pack | 1.25 | $650.00 | $812.50 |
| 7/29/22 | Maloney | Review witness time allocation chart; review/edit trial plan; TCT CC to discuss; more edits; e-mail to opposing counsel | 1.25 | $650.00 | $812.50 |
| 8/2/22 | Maloney | Preparation of pleadings: pl objections to def exhibits; edit, finalize, file; receive NEF, retrieve, download, forward to client with explanation | 1.5 | $650.00 | $975.00 |
| 8/2/22 | Maloney | E-mail to/from Kaiser re: mediation; draft to CC; tct CC to discuss; receive corrections, edit, finalize, send to Mr. Kaiser | 0.75 | $650.00 | $487.50 |
| 8/3/22 | Maloney | Review defense proposed trial plan edits; review CC comments; e-mails to CC, opposing counsel; additional review; compare calendar; actual time 2.5 | 2 | $650.00 | $1,300.00 |

| | | | | | |
|---|---|---|---|---|---|
| 8/3/22 | Maloney | E-mail from/to CCabout how to manage the depo transcript designation task; conference with MM re: how to extract relevant depo pages; necessary software, source documents | 1 | $650.00 | $650.00 |
| 8/4/22 | Chang | Settlement Conference/Mediation (3rd) before 9th Circuit Mediator Robert Kaiser, in person at EDC Courthouse. Meet with client before and after. MC and EL in attendance.; travel to. | 2 | $600.00 | $1,200.00 |
| 8/4/22 | Maloney | Preparation for settlement conference: packing, reviewing last mediation statement | 1 | $650.00 | $650.00 |
| 8/4/22 | Maloney | Court Appearance - settlement conference; travel, meet, travel home; actual time 6.0 | 5 | $650.00 | $3,250.00 |
| 8/5/22 | Maloney | Draft PTB | 2 | $650.00 | $1,300.00 |
| 8/5/22 | Maloney | Draft PTB; actual time 4 hours | 3.5 | $650.00 | $2,275.00 |
| 8/5/22 | Maloney | Review trial plan; e-mails t/f opposing counsel and CC; prepare pleading; file 1.0 | 1 | $650.00 | $650.00 |
| 8/6/22 | Maloney | Draft trial brief; e-mails t/f CC | 2.25 | $650.00 | $1,462.50 |
| 8/6/22 | Maloney | Draft PTB | 2 | $650.00 | $1,300.00 |
| 8/6/22 | Maloney | Draft PTB; actual time 2.5 | 2 | $650.00 | $1,300.00 |
| 8/7/22 | Chang | Reviewing draft of Trial Brief, researching evidence, adding facts | 3.5 | $600.00 | $2,100.00 |
| 8/7/22 | Maloney | Draft PTB; actual time 3.0 | 2 | $650.00 | $1,300.00 |
| 8/8/22 | Chang | Reviewing draft of Trial Brief, researching evidence, adding facts [Reduced from 4.5 hours] | 3.5 | $600.00 | $2,100.00 |
| 8/8/22 | Maloney | Review Kelly depo tran, continue depo summary; JE 9 interviews; actual time 1.5 | 1 | $650.00 | $650.00 |
| 8/8/22 | Maloney | Draft/edit ptb (actual time 4.0) | 3.5 | $650.00 | $2,275.00 |
| 8/9/22 | Maloney | Preparation of pleadings PTB finalize, file; receive NEF; retrieve; forward to client | 1.5 | $650.00 | $975.00 |
| 8/9/22 | Maloney | Preparation of pleadings: discovery lodgment; create cover; retrieve discovery docuemnts, sort, insert into master, number; e-mail to CC to confirm | 1.75 | $650.00 | $1,137.50 |

| 8/10/22 | Maloney | Review defense trial briefs; check Sandhu statements re: nut checking and butt slapping; research in 115.22 standard pursuant to PREA. Is phone sex sexual abuse withing the meaning of the act/standard? | 1.5 | $650.00 | $975.00 |
|---|---|---|---|---|---|
| 8/11/22 | Maloney | Draft Direct | 3.75 | $650.00 | $2,437.50 |
| 8/11/22 | Maloney | Draft dir | 1 | $650.00 | $650.00 |
| 8/11/22 | Maloney | Draft direct | 1.25 | $650.00 | $812.50 |
| 8/12/22 | Chang | Review Jail videos, locate needed portions, and ready for trial playing; create clips for playing on demand during examinations. | 2.3 | $600.00 | $1,380.00 |
| 8/13/22 | Chang | Researching all witness Ah Wah's Statements; compiling examination prep points for JM, extract statements her statements and inconsistent statements. | 4.5 | $600.00 | $2,700.00 |
| 8/13/22 | Chang | Researching all Compton Statements; compiling examination prep points for JM, extract statements for submission of evidence at trial. | 3.2 | $600.00 | $1,920.00 |
| 8/13/22 | Maloney | Conference with client: travel to site, meet, return; actual time 4.5 | 4 | $650.00 | $2,600.00 |
| 8/14/22 | Chang | Finalize Steve Peay transcript for submission and add subject headings to Peay deposition cites; in preparation for admission at trial. | 2.1 | $600.00 | $1,260.00 |
| 8/14/22 | Chang | Researching all Witness Kyle Froggatt's Statements; compiling examination prep points for JM, extract statements , in preparation for submission at trial. | 2.5 | $600.00 | $1,500.00 |
| 8/14/22 | Chang | Finalize Steve Clark transcript for submission and Add subject headings to Clark deposition cites, in preparation for submission at trial. | 2.5 | $600.00 | $1,500.00 |
| 8/14/22 | Maloney | Draft excerpts citations for Peay (reviewing depo transcripts); actual time 4.0 | 3 | $650.00 | $1,950.00 |

| 8/14/22 | Maloney | Edit Clark excerpts; create cover document (actual time 2.0) | 1.5 | $650.00 | $975.00 |
|---------|---------|-------------------------------------------------------------|-----|---------|---------|
| 8/15/22 | Maloney | Preparation for conference with client re: direct; actual time 2.0 | 1.5 | $650.00 | $975.00 |
| 8/16/22 | Chang | Trial Day 1, meetings before and after with client/witnesses | 5.2 | $600.00 | $3,120.00 |
| 8/16/22 | Maloney | Preparation for trial; actual time 4 hours | 1 | $650.00 | $650.00 |
| 8/16/22 | Maloney | Travel to trial; exhibit logistics; trial; post trial conference; travel home; actual time 9 hours | 7 | $650.00 | $4,550.00 |
| 8/17/22 | Chang | Trial Day 2, meetings with JM, Client before and after. | 5.5 | $600.00 | $3,300.00 |
| 8/17/22 | Maloney | Travel to court; trial; post-trial conference with client, further conference with CC; travel home; actual time 8.5 | 7.5 | $650.00 | $4,875.00 |
| 8/18/22 | Chang | Trial Day 3, meetings with JM, Client before and after. | 5.5 | $600.00 | $3,300.00 |
| 8/19/22 | Maloney | Preparation for trial: Review witness statements and CX prep for Adams, froggatt; organize other w/folders; review JE 9 re: all witnesses; actual time 4.0 | 3 | $650.00 | $1,950.00 |
| 8/19/22 | Maloney | Receive 9 NEF's; retrieve; save; print; initial review | 2 | $650.00 | $1,300.00 |
| 8/20/22 | Maloney | review Mahla report: re: objections based on "transparent california" e-mail to CC with suggestions for response; additional Mahla report review; e-mail to Mahla from CC; review trial plan; review Compton documents for CX; review Mahla response; review documents for Hermann & Gott cx; actual time 4.0 | 3 | $650.00 | $1,950.00 |
| 8/20/22 | Maloney | Review Sgt. Gott depo; prepare summary | 1.5 | $650.00 | $975.00 |
| 8/21/22 | Maloney | Review documents for Chad Hermann CX; actual time 1.5 | 1.25 | $650.00 | $812.50 |
| 8/22/22 | Maloney | Preparation for trial; edit, finalize, review, file, receive NEF's, retrieve docuemnts, print; prepare CX of Compton, other witnesses 6-11 actual time 5 hours | 4 | $650.00 | $2,600.00 |

| 8/22/22 | Maloney | Preparation for trial; prepare CX of Compton, other witnesses 1-6 actual time 5 hours | 4 | $650.00 | $2,600.00 |
|---|---|---|---|---|---|
| 8/23/22 | Chang | Trial Day 4, meet client and JM before and after trial | 5.5 | $600.00 | $3,300.00 |
| 8/23/22 | Maloney | Preparation CX Compton, Perreault, Gott 4-6 | 2 | $650.00 | $1,300.00 |
| 8/23/22 | Maloney | Court Appearance, trial. Office to court; court; post-trial day conference; travel to home; actual time 7-3pm 8 hours | 7 | $650.00 | $4,550.00 |
| 8/24/22 | Chang | Trial Day 5, meet client and cocounsel before and after trial | 5.5 | $600.00 | $3,300.00 |
| 8/24/22 | Maloney | Preparation: review edit Gott CX notes; Hermann notes; phone records forGott; edit MTDopposition, e-mail to CC re: MTD draft; (actual time 3 hours 3-6am) | 2 | $650.00 | $1,300.00 |
| 8/24/22 | Maloney | Court Appearance, trial day 5; travel, court, return; actual time 7.5 | 6.5 | $650.00 | $4,225.00 |
| 8/25/22 | Maloney | Court Appearance, trial; travel; trial; post trial conference; retrieve exhibits from courtroom, remove from building; return; actual time 6.5 | 5 | $650.00 | $3,250.00 |
| 9/1/22 | Maloney | Draft PFFCL | 3 | $650.00 | $1,950.00 |
| 9/3/22 | Maloney | Draft PFFCL retal | 3 | $650.00 | $1,950.00 |
| 9/4/22 | Maloney | Draft PFFCL; actual time 4 hours | 3 | $650.00 | $1,950.00 |
| 9/5/22 | Maloney | Draft PFFCL | 3.5 | $650.00 | $2,275.00 |
| 8/23/23 | Maloney | Draft Memorandum; review Local Rule 293. e-mail to co-counsel conveying this and suggesting review of declarations to consider the topics there; review of exiisting declarations to "plug in". E-mails to co-counsel about particularized topics for their declarations. Actual time 4 hours | 2 | $650.00 | $1,300.00 |
| 8/25/23 | Maloney | draft memoranda, edit discussion of .5 multiplier re: extraordinary risk; incorporate declarations; e-mails to/f Tellfer, Clark, Mussel; review Tellfer declaration; actual time 4 hours | 2 | $650.00 | $1,300.00 |

| 8/28/23 | Maloney | edit MPA to provide paragraph cites for declarations, various cases plugged in; e-mails to cc re: need to clarify certain points in declarations; actual time 4 hours | 2 | $650.00 | $1,300.00 |
|---|---|---|---|---|---|
| **Block Billing Objection Totals** | | | **539.86** | **N/A** | **$341,299.00** |

# Exhibit B-7

| Clerical Work Objections (Blue) | | | | | |
|---|---|---|---|---|---|
| Date | Timekeeper | Description | Hours | Rate | Amount |
| 4/17/19 | Chang | Assemble all documents convert to pdf for initial disclosures [reduced from 3.2 hours] | 2.9 | $600.00 | $1,740.00 |
| 9/25/19 | Chang | Planning emails for trip to Quincy with informant witnesses (former female witnesses regarding sexual asaults by Brandon Compton. | 0.4 | $600.00 | $240.00 |
| 11/5/19 | Chang | Scheduling issues with depositions, emails to counsels, calendaring | 0.4 | $600.00 | $240.00 |
| 11/7/19 | Chang | Scheduling, coordinationg depositions [reduced from 1.4 hours] | 0.9 | $600.00 | $540.00 |
| 11/7/19 | Chang | Scheduling Depositions; travel planning [reduced from 1.5] | 0.8 | $600.00 | $480.00 |
| 11/15/19 | Chang | Prepare for Compton Deposition setup; video. | 0.4 | $600.00 | $240.00 |
| 12/6/19 | Chang | Quincy for depositions Waiting for witnesses to appear Lindsay Tissot Joa and Naomi Sanders; no shows. 1pm and 3 p.m. depo times. [reduced from 2.0 hours) | 1.5 | $600.00 | $900.00 |
| 3/23/20 | Chang | Continue to bates and assemble documents for Amy O to review; discuss with CC JM | 1.6 | $600.00 | $960.00 |
| 5/3/20 | Chang | Assembling 3rd production and master documents to produce in 3rd disclosure | 1.3 | $600.00 | $780.00 |
| 5/3/20 | Chang | Converting numerous CDCR emails with attachments to pdf [ Reduced from 2.3 hours) | 1.7 | $600.00 | $1,020.00 |
| 5/13/20 | Maloney | Draft 6646 Index; first 400 pages; e-mail to CC conveying draft | 1 | $650.00 | $650.00 |
| 5/13/20 | Maloney | Draft index (to 1011) | 1 | $650.00 | $650.00 |
| 5/14/20 | Maloney | Draft index, detailing 2017 & 2018 criminal investigations, page by page | 2 | $650.00 | $1,300.00 |
| 5/14/20 | Maloney | Draft Index; through 2758 | 0.5 | $650.00 | $325.00 |
| 5/15/20 | Maloney | Draft Index through 5004 | 1.5 | $650.00 | $975.00 |
| 5/16/20 | Maloney | Index through 5566 | 1.5 | $650.00 | $975.00 |
| 5/16/20 | Maloney | Draft index to end; e-mails to CC re: questions about some documents; e-mail to ML requesting better copies of some. | 1 | $650.00 | $650.00 |
| 5/16/20 | Maloney | Draft index to 6646. | 2 | $650.00 | $1,300.00 |
| 5/16/20 | Maloney | Edit index to permit comparison re: Exhibits in Plumas submissions to DFEH | 0.5 | $650.00 | $325.00 |
| 7/1/20 | Maloney | Staples trip to print exhibits for depo; actual time 1 hour | 0.5 | $650.00 | $325.00 |
| 7/3/20 | Chang | Begin Review 17.7 GB production of documents from Alison Berry Wilinson; look for items not previously reviewed. Numerous redundant versions produced by County. | 4.5 | $600.00 | $2,700.00 |
| 7/3/20 | Chang | Prepare and serve Notice of Deposition for Daniel Perreault | 0.2 | $600.00 | $120.00 |

| 7/3/20 | Chang | Prepare and serve Notice of Deposition for Manroop Sandhu | 0.3 | $600.00 | $180.00 |
|---|---|---|---|---|---|
| 7/10/20 | Maloney | Create binders for Canalia, Clark, both Peay reports; actual time 1 hour | 0.5 | $650.00 | $325.00 |
| 7/14/20 | Chang | Review and prepare Bates 6647 to 7456 and bates, assemble and serve on parties | 2.4 | $600.00 | $1,440.00 |
| 7/30/20 | Maloney | Index 4th prod of documents to 7451 | 1 | $650.00 | $650.00 |
| 8/19/20 | Maloney | index def r26 01-1046 doc; actual time 2.0 | 1.5 | $650.00 | $975.00 |
| 9/24/20 | Chang | Convert .fv files from witness interviews to mp3; put on thumbdrive for listening | 1.2 | $600.00 | $720.00 |
| 5/11/21 | Chang | Assemble and send Expert disclosure | 1.2 | $600.00 | $720.00 |
| 2/15/22 | Maloney | Review PTO & enter dates in calendar | 1 | $650.00 | $650.00 |
| 2/28/22 | Maloney | Preparation of pleadings - mediation brief; take to Kinko's for binding; actual time 1.0 (3/1 for 2/28) | 0.5 | $650.00 | $325.00 |
| 3/1/22 | Maloney | e-mail with Mediator's assistant re: address, phone numbers; Pick up bound briefs - incorrectly bound, re-done; fedex to mediator - prevented clerk from mailing "go by" brief to mediator; priority mail to CC & client; actual time 2.0 | 1 | $650.00 | $650.00 |
| 3/10/22 | Maloney | Preparation - packing for mediation at remote location; actual time 3 hours | 1.5 | $650.00 | $975.00 |
| 5/2/22 | Maloney | File Review: identify, extract, save, title, upload plaintiff's exhibits to drop box account for one legal exhibit processing.Actual time 4.0 hours | 2.5 | $650.00 | $1,625.00 |
| 5/12/22 | Maloney | Review, extract, label and upload Pl Exhibits; e-mails to service re: various issues | 3 | $650.00 | $1,950.00 |
| 6/7/22 | Maloney | TCF Jen at one legal: layout of exhibits, books | 0.5 | $650.00 | $325.00 |
| 6/7/22 | Maloney | Review joint and plaintiff's exhibit lists, determine appropriate falls and breaks for exhibit books; print, mark up and scan exhibit lists to send to Jen at one legal | 1.5 | $650.00 | $975.00 |
| 6/17/22 | Maloney | Review notes re: exhibit "falls" in books; e-mails for arrangements for meeting to examine binders | 0.5 | $650.00 | $325.00 |
| 6/24/22 | Maloney | Review exhibit covers/spines for joint, plaintiff's exhibits; e-mails to Legal One with specifications | 0.25 | $650.00 | $162.50 |
| 6/27/22 | Maloney | Review/organize binders for exhibits; prepare covers/spines for work copies. | 0.5 | $650.00 | $325.00 |
| 6/29/22 | Maloney | E-mail to Jen 1legal re: how to share plaintiff's exhibits with defense side, and to document it; subsequent e-mails following up | 0.5 | $650.00 | $325.00 |
| 7/6/22 | Maloney | E-mail to/from first legal re: availability of exhibit books for review and pickup, scheduling; e-mail to Calvin with details and suggestions | 0.4 | $650.00 | $260.00 |

| 7/22/22 | Chang | Review Defendants Trial Exhibits, take for printing, communicate with printer | 1.7 | $600.00 | $1,020.00 |
|---------|-------|-------------------------------------------------------------------------------|-----|---------|-----------|
| 7/24/22 | Chang | Create/Transfer Exhibit list to Courts Exhibit List Template | 0.8 | $600.00 | $480.00 |
| 7/26/22 | Chang | Finish assembling Def exhibits; review documents | 4.5 | $600.00 | $2,700.00 |
| 7/26/22 | Chang | pdf and assemble motions in liminte 1, 2 and file | 0.4 | $600.00 | $240.00 |
| 7/26/22 | Chang | Drive exhibits 8 boxes and 2 defense exhibit boxes to JM, meet and discuss jail recordings | 1.7 | $600.00 | $1,020.00 |
| 8/10/22 | Maloney | Preparation of pleadings: AMENDED Notice of Lodgment; eliminate some pages; re-number page references and edit document to reflect; file document; receive NEF; retrieve, store, print pleading; forward to client with explanation | 1.5 | $650.00 | $975.00 |
| 8/12/22 | Chang | Travel to Court for AV training session, prep laptop | 1.6 | $600.00 | $960.00 |
| 8/15/22 | Maloney | Preparation: organize materials for travel to court; clerk, bench books/redwells of exhibits | 1.5 | $650.00 | $975.00 |
| 8/17/22 | Chang | Prep and File Declarations of Jordan Funk, Jody Goodson, Jeffrey Goodson, | 0.3 | $600.00 | $180.00 |
| 8/17/22 | Chang | File Depositions of Brandon Compton, (excerpts for admission0 | 0.3 | $600.00 | $180.00 |
| 8/25/22 | Chang | Transport 10+ boxes of trail exhibits from Courtroom [reduced from 0.4] | 0.2 | $600.00 | $120.00 |
| | | **Clerical Work Objections (Blue) Totals** | **64.35** | **N/A** | **$40,167.50** |

# Exhibit B-8

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
|  | **Further Clarification Objections (Orange)** |||||
| 11/15/19 | Lambdin | travel to office | 1.4 | $550 | $770.00 |
| 3/9/20 | Maloney | E-mail to CCC re: assignment to HR expert | 1 | $650.00 | $650.00 |
| 3/9/20 | Maloney | E-mail to CCC re: HR expert issues and Warren's flawed interim decision;<br>analysis of app of Policy 328 to DISCIPLINE proceeding | 0.5 | $650.00 | $325.00 |
| 3/9/20 | Maloney | E-mail toCCC re: impact of Warren's punt on SH | 1 | $650.00 | $650.00 |
| 3/16/20 | Maloney | E-mail to co-counsel opposing counsel re: suggestion for supplement JSR in<br>view of Canalia difficulties and COVID | 1 | $650.00 | $650.00 |
| 3/16/20 | Maloney | E-mail to CCC re: TW "phone" and what might be on it | 0.4 | $650.00 | $260.00 |
| 4/1/20 | Lambdin | travel to from quincy for depo of hagwood | 3 | $550 | $1,650.00 |
| 5/8/20 | Maloney | Review week of e-mails between CC & JEM & EL;<br>note points in various<br>wintess depo notes; actual time 1 hour | 0.5 | $650.00 | $325.00 |
| 12/8/20 | Maloney | fill in "@@" - mostly in regard to audit reports; actual time 2.0 | 1.5 | $650.00 | $975.00 |
| 12/15/20 | Maloney | review KJM MSJ cases; actual time 3.0; first 10 pages of scholar listings MSJ & KJM in EDCal | 2.5 | $650.00 | $1,625.00 |
| 2/4/21 | Maloney | draft opening argument for mock trial | 2.5 | $650.00 | $1,625.00 |
| 2/6/21 | Maloney | e-mail to cc re: verdict form for mock | 0.5 | $650.00 | $325.00 |
| 8/25/22 | Chang | Trial Day 6, last day of trial. | 0.9 | $600.00 | $540.00 |
|  | **Further Clarification Objections (Orange) Totals** ||| **16.7** | **N/A** | **$10,370.00** |

# Exhibit
# B-9

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
|  | **Private Investigation and Process Server Work Objections (Green)** |
| 9/27/19 | Lambdin | Quincy with co-couns. - meet with NS and LJ(LT) | 2.1 | $550 | $1,155.00 |
| 9/27/19 | Lambdin | Travel with co-couns.-witness meetings quincy | 3 | $550 | $1,650.00 |
| 10/23/19 | Lambdin | Susanville to meet NP with co-couns. Also discussed meet with witness. | 2 | $550 | $1,100.00 |
| 10/23/19 | Lambdin | Meet with Witnesses NP | 0.7 | $550 | $385.00 |
| 11/13/19 | Lambdin | querry shops owners/workers (norberg) | 1 | $550 | $550.00 |
| 11/13/19 | Lambdin | Susanville to investigate travel 175 (norberg) | 3.5 | $550 | $1,925.00 |
| 11/13/19 | Lambdin | visit address/neighbors (norberg) | 1.5 | $550 | $825.00 |
| 4/3/20 | Lambdin | Quincy - service of feasthen river supb. | 1 | $550 | $550.00 |
| 4/3/20 | Lambdin | Susanville from Sacramento RT service of subpoeonas and search for gott | 4 | $550 | $2,200.00 |
| 4/8/20 | Lambdin | serve chp Quincy (from sparks) | 3 | $550 | $1,650.00 |
| 4/13/20 | Chang | Serve Subpoena to CA POST in person, | 0.5 | $600.00 | $300.00 |
| 7/17/20 | Lambdin | susanville to locate norberg RT | 3 | $550 | $1,650.00 |
| 8/10/22 | Lambdin | search/speak w/serve Lyndsey Tao chester | 3 | $550 | $1,650.00 |
| 8/10/22 | Lambdin | search for Naomi Sanders to dad's house (chester) | 2 | $550 | $1,100.00 |
| 8/11/22 | Lambdin | searching for norberg & potts susanville/quincy. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas | 3 | $550 | $1,650.00 |
| 8/11/22 | Lambdin | travel to search for norberg & potts sparks-quincy-susanville-sparks (slept in van) | 4 | $550 | $2,200.00 |
| 8/13/22 | Lambdin | travel to susanville and search for norberg RT (slept in van) | 3 | $550 | $1,650.00 |
| 8/14/22 | Lambdin | searching for norberg susanville/westwood/stake out trailer park. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas | 12 | $550 | $6,600.00 |
| 8/15/22 | Lambdin | searching for norberg & potts. Hiked Susan River homeless camps. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas (slept in van) | 10 | $550 | $5,500.00 |
| 8/15/22 | Lambdin | searching for norberg & potts/ call to Lemar | 0.5 | $550 | $275.00 |
| 8/19/22 | Lambdin | susanville for norbert, Spoke with numerous 'street' people. Hiked Susan River homeless camps. Repeated visits to trailer park, safeway parking lot, Mcdonalds, Walmart parking lot, Burger King, Grocery Outlet parking lot (known to panhandle in these areas (slept in van) | 9 | $550 | $4,950.00 |
| colspan="3" | **Private Investigation and Process Server Work Objections (Green) Totals** | **71.8** | **N/A** | **$39,515.00** |

# Exhibit C

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2022 – Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2022 | 2021 | 2020 |
|------|------|---|------|------|------|------|------|------|
| **Rochester NY** | Partner | 14 | $261 | $360 | $425 | $369 | $325 | $389 |
| | Associate | 18 | $221 | $278 | $365 | $298 | $267 | $274 |
| **Sacramento CA** | Partner | 17 | $375 | $430 | $659 | $503 | $478 | $436 |
| | Associate | 13 | $263 | $350 | $375 | $320 | $341 | $333 |
| **Salt Lake City UT** | Partner | 53 | $290 | $370 | $449 | $384 | $355 | $361 |
| | Associate | 24 | $220 | $240 | $270 | $252 | $244 | $227 |
| **San Antonio TX** | Partner | 12 | $406 | $440 | $450 | $436 | $499 | $422 |
| **San Diego CA** | Partner | 107 | $316 | $457 | $996 | $643 | $637 | $569 |
| | Associate | 90 | $225 | $300 | $380 | $340 | $342 | $306 |
| **San Francisco CA** | Partner | 320 | $440 | $718 | $979 | $751 | $732 | $721 |
| | Associate | 239 | $334 | $458 | $706 | $537 | $544 | $494 |
| **San Jose CA** | Partner | 72 | $658 | $878 | $1,209 | $949 | $956 | $880 |
| | Associate | 61 | $401 | $505 | $749 | $613 | $621 | $544 |
| **Seattle WA** | Partner | 194 | $443 | $548 | $760 | $592 | $554 | $535 |