UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tiffany Goodson,<br><br>                    Plaintiff,<br><br>    v.<br><br>County of Plumas, et al.,<br><br>                    Defendants. | No. 2:18-cv-03105-KJM-DB<br><br>ORDER |

Plaintiff Tiffany Goodson moves for an award of attorneys' fees and costs and requests injunctive relief. For the reasons below, the court **grants her motion in part**.

I.    BACKGROUND

After a six-day bench trial, Goodson proved defendants Brandon Compton and the County of Plumas are liable for sexual harassment under the California Fair Employment and Housing Act (FEHA). *See* Findings of Fact & Conclusions of Law at 29–31, ECF No. 167 (citing Cal. Gov't Code § 12940(j)(1)). Goodson also proved the County is liable for retaliation in violation of the FEHA. *Id.* at 32–36 (citing Cal Gov't Code § 12940(h)). By contrast, she did not prove her federal claims, or her claim the County had failed to prevent sexual harassment in violation of the FEHA. *See id.* at 31–32, 36–38 (discussing 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), and Cal. Gov't Code § 12940(k)). The court awarded $752,214 in damages to compensate Goodson for her pain and suffering and lost wages and pension benefits. *Id.* at 40–43. The court also

1  concluded Goodson is entitled to equitable relief to reaffirm her standing in the community, to
2  condemn harassment and retaliation and to prevent future harassment and retaliation. *Id.* at 43.
3  The court did not decide whether Goodson was entitled to an award of attorneys' fees and costs or
4  pre- and post-judgment interest. *Id.* at 43–44. Nor did the court decide how to divide the
5  damages attributable to the hostile work environment from those attributable to retaliation. *See*
6  *id.* at 42. The court instructed the parties to meet and confer and propose a resolution. *Id.* at 44.

7  The parties met and conferred. They have agreed to attribute $350,000 in compensatory
8  damages to Goodson's sexual harassment claim and $150,000 to her retaliation claim. Joint
9  Report at 2, ECF No. 168. They also agree to apply a pre-judgment interest rate of 7 percent to
10 the award of lost wages to Goodson. *Id.* They have not agreed to the terms of an injunction, an
11 award of attorneys' fees and costs, whether Goodson was entitled to pre-judgment interest on the
12 damages attributable to lost pension benefits, and the appropriate rate of post-judgment interest.
13 *See id.* at 2–3. They proposed post-trial motions and a hearing. *See id.* at 3–4. The court
14 approved their proposal and received briefing. *See* Order (Aug. 23, 2023), ECF No. 169; Fees
15 Mot., ECF No. 170; Fees Mem., ECF No. 171; Fees Opp'n, ECF No. 184; Fees Reply, ECF
16 No. 190; Remedies Mot., ECF No. 177; Remedies Opp'n, ECF No. 187; Remedies Reply, ECF
17 No. 196. The court then submitted the unresolved matters for decision without a hearing.

18 **II.   ATTORNEYS' FEES**

19 The court begins with Goodson's request for an award of attorneys' fees. The FEHA
20 permits courts to award attorneys' fees to prevailing parties. Cal. Gov't Code § 12965(c)(6).
21 Federal courts apply that rule. *See, e.g.*, *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 218,
22 227 (9th Cir. 2013). Both federal and California courts use the "lodestar" method to decide what
23 award is appropriate. *Id.* at 222 (citing *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985
24 (2010)). For each attorney, the court first determines what hourly rate is reasonable. *Chavez*,
25 47 Cal. 4th at 985. The reasonable hourly rate is the prevailing rate in the local community
26 normally charged for similar work. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *PLCM*
27 *Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). The court then multiplies that reasonable rate by
28 the number of hours the attorney reasonably devoted to the case, excluding any inefficient or

2

1    duplicative efforts.  *Chavez*, 47 Cal. 4th at 985; *Ketchum*, 24 Cal. 4th at 1132.  The result, the
2    "lodestar," may be adjusted upward or downward as the circumstances require.  *Chavez*, 47 Cal.
3    4th at 985.  For example, an upward adjustment might be appropriate to recognize exceptionally
4    skilled advocacy, success in the face of a novel and difficult problem, or an attorney's willingness
5    to take the case on contingency.  *Ketchum*, 24 Cal. 4th at 1132.

6    Defendants invite the court to dispense with the lodestar calculation and instead award
7    Goodson's attorneys a percentage of her damages.  *See* Fee Opp'n at 13.  In defendants' view,
8    any fee award that outstrips the damages would be unreasonable.  *See, e.g.*, *id.* at 7.  But they cite
9    no California judicial decisions to support their percent-based proposal, nor any cases in which
10   courts have agreed attorneys' fees must not exceed damages.  Defendants instead cite a federal
11   case addressing a common settlement fund.  *See id.* at 13 (citing *Paul, Johnson, Alston & Hunt v.*
12   *Graulty*, 886 F.2d 268 (9th Cir. 1989)).  This case involves no common fund, and the court
13   declines to limit attorneys' fees to the value of the damages awarded or some smaller percentage.
14   Fees in employment discrimination and retaliation cases "are not 'limited to a percentage of the
15   plaintiff's recovery,' and ordinarily, 'the attorney who takes an FEHA case can anticipate
16   receiving full compensation for every hour spent litigating a claim.'"  *Beaty v. BET Holdings,*
17   *Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (verbatim; alterations omitted) (quoting *Weeks v. Baker &*
18   *McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998)).  Civil rights and discrimination lawsuits are not
19   only about compensating the victims of harassment and mistreatment; they also vindicate the
20   broader public interest in workplaces free of discrimination and harassment.  *See, e.g.*, *id.*  For
21   that reason, federal and state courts repeatedly have rejected requests to impose percentage limits
22   and similar caps on fees in civil rights and employment discrimination cases.  *See, e.g.*,
23   *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *City of Riverside v. Rivera*, 477 U.S. 561, 575
24   (1986); *Beaty*, 222 F.3d at 612–13; *Taylor v. Nabors Drilling USA, LP*, 222 Cal. App. 4th 1228,
25   1251 (2014); *Harman v. City & County of San Francisco*, 158 Cal. App. 4th 407, 421 (2007).
26   The court will rely on the well-known lodestar fee approach to determine what award is
27   reasonable.

A.     **Reasonable Hourly Rate**

Goodson requests fees for three of her attorneys' time.  First, Joseph E. Maloney served as lead counsel at trial.  *See* Maloney Decl. ¶ 5, ECF No. 172.  Maloney was admitted to the California Bar in 1980.  *Id.* ¶ 1.  He worked initially for the Pacific Legal Foundation before joining the Office of the United States Attorney in the Eastern District of California, where he primarily represented the United States and its agencies in employment disputes.  *Id.* ¶ 2; Maloney Decl. Ex. 1 at 1, ECF No. 172-1.  He entered private practice in 2006.  Maloney Decl. ¶ 3.  Since then, he has represented plaintiffs in employment and personal injury cases for the most part.  *Id.*  Attorneys in the Sacramento legal community describe Maloney as a mentor and respected advisor with an excellent reputation.  *See, e.g.*, Whelan Decl. ¶ 13, ECF No. 175-1; Velez Decl. ¶ 20, ECF No. 175-2; Reinach Decl. ¶ 4, ECF No. 175-3; Telfer Decl. ¶ 16, ECF No. 175-4; Clark Decl. ¶ 9, ECF No. 175-5.  Maloney requests $650 per hour for his time.  Maloney Decl. ¶ 4.

Second, Calvin Chang was the attorney who represented Goodson when she filed this case, and he was second chair at trial.  *See* Chang Decl. ¶¶ 1, 14, ECF No. 173.  He was admitted to the California bar in 2011 after working as a law enforcement officer for twenty years.  *Id.* ¶¶ 3–4.  He often represents clients who are or were law enforcement officers and who have claims against their employers.  *Id.* ¶ 6.  He took this case on a contingency basis and covered more than $100,000 in costs over the five years this case has been pending; he is the only attorney to indicate he fronted costs.  *Id.* ¶ 24.  Other attorneys describe him as a skilled and dedicated lawyer with an excellent reputation.  Whelan Decl. ¶¶ 12, 14; Velez Decl. ¶ 17;  Reinach Decl. ¶ 5; Telfer Decl. ¶ 17.  Chang requests $600 per hour for his time.  Chang Decl. ¶ 23.

Third, Eric Lambdin graduated from law school in 2003 and began his law practice in 2013.  Lambdin Decl. ¶ 3, ECF No. 174.  He often has served as co-counsel with Chang.  *Id.* ¶ 5; Chang Decl. ¶ 18.  Lambdin helped find and interview witnesses, including former law enforcement officers and former inmates in desperate circumstances—many who did not want to speak to anyone about this case and feared reprisals.  Lambdin Decl. ¶¶ 8–12, 15; Chang Decl. ¶ 18.  Chang believes Lambdin was "uniquely suited to represent Ms. Goodson," and he doubts a

non-attorney investigator could have obtained the same information. Chang Decl. ¶ 18. Lambdin requests $550 per hour for his time. Lambdin Decl. at 7.

Like many attorneys who represent plaintiffs with claims against their former employers, Maloney, Chang and Lambdin did not charge Goodson by the hour. They represented her on a contingency basis. *See* Maloney Decl. ¶¶ 4, 9–10; Chang Decl. ¶ 24; Lambdin Decl. ¶ 20. Contingency billing arrangements can make it difficult to determine what hourly rate is reasonable. What hourly rate is the prevailing market rate if the attorneys in that market do not usually charge by the hour?

Courts often consider the opinions of other attorneys who practice in the same geographic area if they have personal knowledge of what rates are commonly charged. *See, e.g.*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Maloney and Chang cite declarations by other attorneys who practice in Sacramento to support their request; each of these attorneys bills at higher hourly rates than those Maloney and Chang now request. *See* Whelan Decl. ¶ 11 ($1,000 per hour); Velez Decl. ¶ 4 ($700 per hour); Reinach Decl. ¶¶ 7–8 ($750–$800); Telfer Decl. ¶ 9 ($700 per hour). It is unclear, however, whether these attorneys' rates are rates that clients have paid in the past. Nor do these attorneys claim to have arrived at their hourly rates by dividing contingency awards in a particular case by the number of hours they devoted to that case. Nor do the attorneys' declarations show other courts have consistently found their rates to be reasonable in cases similar to this one. For these reasons, the court does not find, based on these attorneys' declarations alone, that attorneys in the Sacramento area commonly charge and are paid at $700 to $1,000 per hour in discrimination and employment cases.

In addition to rates charged by other lawyers, courts can check what rates other judges in the same district and courthouse have used in similar cases. *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). To say there is unanimity regarding what reasonable rates are is impossible, however, given the range of rates judges approve. That said, fees awarded in other civil cases involving some level of complexity in this district and by judges in this courthouse commonly are greater than $500 per hour, and in some cases $600 per hour, for

reputable attorneys with a great deal of relevant experience and $300 or less for attorneys with less than ten years' experience, depending on the type of litigation and other circumstances. *See, e.g.*, *Diaz v. United Parcel Serv., Inc.*, No. 22-00246, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) (reporting results of "comprehensive survey of fees awarded" in this district, in determining appropriate fees in class action settlement); *Avery v. Akima Support Operations, LLC*, No. 19-00924, 2022 WL 4473211, at *13 (E.D. Cal. Sept. 26, 2022) (describing results of similar analysis, also in class action settlement context). In general, however, most other published cases did not involve complex discrimination claims and did not go to trial. *See, e.g.*, *Schmidt v. Shasta Cnty. Marshal's Off.*, No. 14-02471, 2020 WL 1158083, at *4 (E.D. Cal. Mar. 10, 2020) ($400, $280 and $175 per hour for attorneys with undisclosed experience in a civil rights action following summary judgment); *Prehired, LLC v. Provins*, No. 22-00384, 2023 WL 4187461, at *4 (E.D. Cal. June 26, 2023) ($395 per hour for a litigator with 45 years' experience was on the low end of the range following successful motion to strike under California Code of Civil Procedure section 425.16, the "anti-SLAPP" statute); *Olfati v. City of Sacramento*, No. 21-00606, 2023 WL 2602227, at *2 (E.D. Cal. Mar. 22, 2023) ($400 per hour for litigating straightforward discovery dispute in civil rights action); *Davis v. Mercedes-Benz USA, LLC*, No. 21-0174, 2022 WL 16529527, at *2 (E.D. Cal. Oct. 28, 2022) ($175–$300 for attorneys with less than ten years' experience in an action under the Song-Beverly Consumer Warranty Act); *Reynolds v. Singh*, No. 22-00601, 2022 WL 3135895, at *4 (E.D. Cal. Aug. 5, 2022) ($450 for an experienced litigator litigating remand in personal injury suit); *Cianchetta v. BMW of N. Am., LLC*, No. 20-00241, 2022 WL 2160556, at *5–6 (E.D. Cal. June 15, 2022) ($225–$505 per hour based on one to eight years' experience in an action under the Song-Beverly Consumer Warranty Act); *Quinonez v. FCA US, LLC*, No. 19-02032, 2022 WL 2007429, at *2 (E.D. Cal. June 6, 2022) ($500 for attorneys with more than 20 years' experience in an action under the Song-Beverly Consumer Warranty Act); *Price Simms Holding, LLC v. Candle3, LLC*, No. 18-1851, 2021 WL 1884995, at *2 (E.D. Cal. May 11, 2021), *findings & recommendation adopted*, 2021 WL 2016915 (E.D. Cal. May 20, 2021) ($450 per hour for experienced litigator after settlement in a contract dispute)..

This type of evidence from reported judicial decisions has obvious limits. On the one hand, by referring to hourly rates awarded in the past, the court might artificially depress hourly rates. In *Moreno*, for example, the district court had incorrectly "held the line" at a particular hourly rate for ten years. 534 F.3d at 1115. On the other hand, it is possible to inadvertently inflate hourly rates. By relying on the opinions of attorneys who cite their experience and awards in previous cases—but not evidence that any client has actually paid any particular hourly rates—then those attorneys can add a judge's approving decision to their list for future cases, and so the cycle could continue. *See, e.g.*, *Taylor v. Chiang*, No. 01-2407, 2009 WL 453050, at *9 (E.D. Cal. Feb. 23, 2009) ("The potential for unwarranted inflation of the then established 'reasonable hourly rate' is great because the increase methodology [sic] is also not based . . . on the same attorney suppositions, extrapolations and alliances which set the rate in the first place . . . ."), *adopted in full*, 2009 WL 1119390 (E.D. Cal. Apr. 24, 2009), *aff'd*, 405 F. App'x 167 (9th Cir. 2010) (unpublished).

To avoid these risks, a court can consider what rates the opposing party has paid its own attorneys in the same case. *See, e.g.*, *United States ex rel. Doe v. Biotronik, Inc.*, No. 09-3617, 2015 WL 6447489, at *12 (E.D. Cal. Oct. 23, 2015), *aff'd*, 716 F. App'x 590 (9th Cir. 2017) (unpublished). The defendants argue their hourly rates are a more accurate indicator of what the market would bear. *See* Fee Opp'n at 13. But an opposing party's rates may not accurately represent the local market, either. In this case, for example, the defendants have relied on a declaration by an attorney who works at the same firm as the attorney who represented Compton at trial. *See generally* Smith Decl., ECF No. 186. He cites the lower rates his clients regularly pay his firm. *See id.* ¶ 5 ("For corporate clients we charge $300.00 for partner time and $275.00 per hour for associate time."). As he acknowledges, the rates his firm "can charge public agency clients is somewhat smaller than what can be charged to corporate clients for similar trial work." *Id.* And a firm like his, which commonly represents institutional defendants, might be willing to offer discounted rates to repeat clients. Attorneys who more commonly represent plaintiffs may be less likely to represent the same clients many times, and so may have little reason or ability to offer concessions based on their hopes of an ongoing relationship.

On balance, the court finds Maloney's good reputation and extensive relevant experience in employment litigation justify an hourly rate of $650, a high rate for this district. Chang's and Lambdin's more limited experience justify hourly rates of $500 and $400, respectively.

**B.    Reasonable Number of Hours**

The defendants object that Maloney, Chang and Lambdin duplicated one another's efforts, did not delegate clerical and other non-legal tasks, and have relied on "block" billing and vague descriptions of their work. The court considers these objections in turn.

First, although the court agrees attorneys should not be compensated for duplicative work, Maloney's, Chang's and Lambdin's timekeeping records do not reveal duplicative work. The defendants object primarily that Chang and Lambdin both prepared for and attended several depositions. *See* Fee Opp'n at 15; Smith Decl. Ex. B. In the opinion of defense counsel, one attorney could have handled each of these depositions alone. Warner Decl. ¶¶ 2–3, ECF No. 185. The court will not impose that judgment on Ms. Goodson's attorneys, who built a compelling case from a complex and difficult record. "By and large," district courts "defer to the winning lawyer's professional judgment" about where to spend their time. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (alterations in original) (quoting *Moreno*, 534 F.3d at 1112). That is all the more true in this case. Goodson's attorneys agreed to represent her on a contingency basis, so they had little incentive to inflate their hours unnecessarily; they would not recover anything if they were not successful.

Second, attorneys should not be compensated at their ordinary rates for legal work if they are not actually performing legal work. *Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redlands Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006). But it is not always easy to make that distinction. Some tasks lie in a "grey area"; that is, they could be "appropriately performed" either by an attorney or a non-attorney. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Some of Chang's time was devoted to clerical tasks, such as assembling documents, converting their file formats, printing documents, transporting documents and making travel plans. *See* Chang Decl. Ex. 1 at 9, 11, 15, 27, 30, 31, 38, 53, 54, ECF No. 173-1. Chang does not propose or support a non-legal rate for his time on these non-legal tasks, and the court declines to do so on its

8

own initiative. The court will subtract eleven hours for these non-legal tasks. The defendants argue Maloney also has sought legal rates for clerical work, but his timekeeping records do not support the defendants' argument completely. Many of the disputed entries show Maloney spent time indexing and reviewing documents in preparation for trial. *See* Maloney Decl. Ex. 1 at 9, ECF No. 172-1. Mastering a trial record is legal work. But other entries in his timekeeping records do describe clerical work, such as printing, copying and uploading documents. *See id.* at 11, 12, 31. Again, Maloney does not propose a non-legal rate for these non-legal tasks. The court will subtract eight hours for work on non-legal tasks. Finally, defendants argue Lambdin should not be compensated at his legal hourly rate for investigative work that a private investigator could have completed more efficiently and cheaply. *See* Fee Opp'n at 15; Smith Decl. Ex. B. Chang credibly explains why it was necessary for an attorney to complete this work: first, many witnesses would otherwise have been unwilling to discuss the case, and second, an attorney's expertise was necessary, as some witnesses were represented or faced legal challenges of their own. *See* Chang Decl. ¶ 18. The court declines to reduce Lambdin's hours for performing non-legal work.

     Third, defendants argue the fee award should be reduced to discourage vague "block billing." Block billing is the aggregation of time spent on a case into "blocks" rather than task-by-task divisions. *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). Block billing "makes it more difficult to determine how much time was spent on particular activities." *Id.* at 948. The court has reviewed the time entries in question and finds they do not impermissibly obscure counsel's request for fees. Maloney, Chang and Lambdin also have made reductions to their time voluntarily in many instances. Nor are their timekeeping descriptions impermissibly vague or overly generalized. "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

### C. Multiplier

     Maloney, Chang and Lambdin each request a multiplier of 1.5—i.e., 50 percent above the lodestar—to compensate them for taking on the representation despite the risk of a defense

9

verdict, which would have deprived them of all compensation. *See* Fees Mem. at 13–14. They also argue "[t]he results obtained weigh in favor of an enhancement." *Id.* at 13; *see also* Fee Reply at 8. California courts have recognized that attorneys may be entitled to an enhancement as compensation for the additional risk they took on when they agreed to represent their client on a contingency basis. *See, e.g.*, *Ketchum*, 24 Cal. 4th at 1132–33.

A 50 percent enhancement is appropriate in this case because the risk of going without payment was unusually large. As discussed in this court's findings of fact and conclusions of law, relatively little evidence corroborated Goodson's sexual harassment allegations, those allegations were heavily disputed, the County's decision to terminate her employment was motivated only partially by those allegations, and Goodson had maintained an inappropriate relationship with an inmate while working as a correctional officer. *See, e.g.*, Findings of Fact and Conclusions of Law at 9–10, 14, 22–23, 32–38, ECF No. 167. An enhancement also is appropriate to recognize counsel's skill in litigating the case through trial. *See Ketchum*, 24 Cal. 4th at 1133.

**D.  Fees Incurred Litigating this Motion**

After reviewing the County's opposition to her motion for attorneys' fees, Goodson's counsel engaged John O'Connor, an attorney, to offer opinions about the reasonableness of her attorneys' fees. Suppl. Fee Req., ECF No. 195. O'Connor submitted a declaration in support of Goodson's motion. *See generally* O'Connor Decl., ECF No. 191. The court has not relied on O'Connor's declaration. It is lengthy and includes primarily legal arguments. Considering it would permit Goodson to exceed the page limits imposed by this court's standing orders and would deprive defendants of a fair opportunity to respond. The court accordingly denies Goodson's request for an award of O'Connor's fee. *See* Suppl. Fee Req. at 2, ECF No. 195.

Maloney, Chang and Lambdin also submitted supplemental declarations with their reply brief. *See generally* Suppl. Maloney Decl, ECF No. 192; Suppl. Chang Decl., ECF No. 193; Suppl. Lambdin Decl., ECF No. 194. Defendants object to these declarations as inappropriate attempts to correct deficiencies in Goodson's original brief. The court has considered these declarations. They appropriately respond to arguments in the defendants' opposition brief and

10

declarations. Finally, the court finds Maloney and Chang reasonably devoted 13.25 and 6.0 hours, respectively, to their reply, after reductions for time related to O'Connor's declaration.[1]

### E. Summary: Fees

The court grants Goodson's request for an award of attorneys' fees in part:

- Joseph Maloney: 799.4 hours[2] at a rate of $650 per hour with a multiplier of 1.5 and 37.7 hours[3] at a rate of $650 per hour with no multiplier, in total $803,920.
- Calvin Chang: 762 hours[4] at a rate of $500 per hour with a multiplier of 1.5 and 12.5 hours[5] at a rate of $500 per hour with no multiplier, in total $577,750.
- Eric Lambdin: 213.8 hours at a rate of $400 per hour with a multiplier of 1.5, in total $128,280.

## III. INJUNCTIVE RELIEF

The FEHA authorizes injunctive relief, including permanent injunctions. *See* Cal. Gov't Code § 12965(d); *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 390 (2005). An injunction under the FEHA reflects a determination the plaintiff has prevailed on a FEHA claim "and that equitable relief is appropriate." *Horsford*, 132 Cal. App. 4th at 390 (quoting *Art Movers, Inc. v. Ni West, Inc.*, 3 Cal. App. 4th 640, 646 (1992)). The plaintiff must, in other words, explain the reasons for equitable relief, including the inadequacy of the legal remedy, irreparable injury and the public interest. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003); *Tahoe Keys Prop. Owners' Ass'n v. State Water Res. Control Bd.*, 23 Cal. App. 4th 1459, 1472–73 (1994). But because the FEHA authorizes injunctive relief, plaintiffs are not normally

---

[1] Lambdin does not request fees for time spent on the reply.

[2] This figure represents 807.4 hours recorded in paragraph 11 of ECF No. 172 minus 8 hours for time spent on non-legal tasks.

[3] This figure represents 6.65 hours recorded in paragraph 12 of ECF No. 172, plus 17.8 hours recorded in paragraph 13 of ECF No. 172, plus 15.25 hours recorded on page 5 of ECF No. 192, minus 2 hours devoted to the O'Connor declaration.

[4] This figure represents 773 hours recorded on page 9 of ECF No. 173 minus 11 hours for time spent on non-legal tasks.

[5] This figure represents 6.5 hours recorded on page 9 of ECF No. 173 plus 6.4 hours recorded in paragraph 16 of ECF No. 193 minus 0.4 hours devoted to the O'Connor declaration.

11

required to show legal remedies are inadequate. *See* 6 Witkin's Cal. Proc. Rem. § 285(4) (6th ed. Mar. 2023 Update).

The parties agree an injunction would be appropriate, but they disagree what form that injunction should take. Goodson proposes an injunction "in the form of an Order that states the facts of the County's unlawful conduct, requires the County to post a notice regarding [the] Court's Order, and requires the County to follow the provisions of its own County Code with respect to harassment complaints, and, specifically, that the Sheriff's Department stop investigating such complaints internally." Remedies Mem. at 5. The County proposes an injunction (1) to "remove the record of Plaintiff's Termination from her personnel record"; (2) to "create a Disciplinary Team, to include the Sheriff, Human Resource Director and County Counsel to review all terminations within the Sheriff's Department, prior to their implementation"; (3) to "continue to ensure that all employees within the Sheriff's Office receive their sexual harassment training"; (4) "ensure the internal affairs investigators within the Plumas County Sheriff's Office receive training on conducting sexual harassment investigations pursuant to the requirements of the Fair Employment and Housing Act" and (5) to post the judgment on the employee bulletin board for 30 days. Opp'n at 4. The parties' primary disagreement thus is whether the Plumas County Sheriff's Office should be ordered to submit all future complaints of harassment to the County's Human Resources Office.

Goodson is entitled to injunctive relief. She proved at trial the County is liable for harassment and retaliation, the FEHA authorizes injunctive relief, the prevention of harassment and retaliation generally is in the public interest and Goodson's injuries are irreparable in part. The court agrees with the County, however, that the public interest does not favor a broad injunction prohibiting the Sheriff's Department from investigating sexual harassment. Sexual harassment can be criminal. The court will not prohibit the Sheriff's Department from investigating violations of the criminal law, even within its own ranks. That said, Goodson suffered irreparable harm in this case in part because the Sheriff's Office conducted a criminal investigation only—rather than investigating whether the workplace had become sexually hostile under the FEHA, a civil statute. *See* Findings of Fact & Conclusions of Law at 28, 35. Just as the

12

Sheriff's Office should be free to investigate suspected violations of California Criminal Law, the County's human resources professionals should be free to investigate suspected workplace misconduct that might not amount to any crime but violate civil law, and it must be free to do so without interference by the Sheriff's Office. The court therefore will enjoin the Sheriff's Office by requiring it to forward any complaints of sexual harassment and other workplace misconduct to the County's proposed "Disciplinary Team," including the Sheriff, Human Resource Director and County Counsel.

## IV. OTHER REMEDIES

The court approves the parties' proposal to allocate $350,000 of Goodson's compensatory damages to her sexual harassment claim and $150,000 to her retaliatory termination claim. *See* Remedies Mem. at 2; Remedies Opp'n at 1.

The court grants Goodson's unopposed request for an award of $99,098.95 in costs incurred through trial. *See* Chang Decl. at 9–10.

The court grants Goodson's unopposed request for prejudgment interest at a rate of 7 percent on damages for past wages lost. *See* Remedies Mem. at 3; Remedies Opp'n at 1–2.

The court denies Goodson's request for prejudgment interest on her award of damages related to a loss of future pension benefits. Those damages do not represent a "vested" interest she possessed "on a particular day" prior to judgment, *see* Cal. Civ. Code § 3287(a), but rather an approximation of a future loss based on an estimation of the present value of a future payment, accounting for the uncertainty of her continued employment, *see* Findings of Fact & Conclusions of Law at 42–43.

The court grants Goodson's unopposed request for postjudgment interest at a rate of 5.34 percent to be applied to the judgment if not paid by the fifteenth day after entry of judgment. *See* Remedies Opp'n at 2; Remedies Reply at 3.

/////

/////

## V. CONCLUSION

For the reasons above, Goodson's motions for fees, costs, injunctive relief and other relief are granted in part:

- The court **grants** Goodson's request for an award of attorneys' fees in part. Joseph Maloney is awarded $803,920, Calvin Chang is awarded $577,750, and Eric Lambdin is awarded $128,280.
- The court **grants** Goodson's request for an award of $99,098.95 in costs.
- The court **approves** the parties' proposal to allocate $350,000 of Goodson's compensatory damages to her sexual harassment claim and $150,000 to her retaliatory termination claim.
- The court **grants** Goodson's request for prejudgment interest at a rate of 7 percent on damages for past wages lost.
- The court **denies** Goodson's request for prejudgment interest on her award of damages related to a loss of future pension benefits.
- The court **grants** Goodson's request for postjudgment interest at a rate of 5.34 percent to be applied to the judgment if not paid by the fifteenth day after entry of judgment.

The court **grants** Goodson's request for injunctive relief in part as follows:

- The County must remove the record of Plaintiff's termination from her personnel record within thirty days of the date this order is filed.
- Within thirty days of the date this order is filed, the County must create a Disciplinary Team, to include the Sheriff, Human Resource Director and County Counsel. The Sheriff's Office must forward all complaints of sexual harassment, sexually hostile work environments and similar workplace misconduct to the Disciplinary Team. The Sheriff's Department must not interfere in any of the Disciplinary Team's investigations of sexual harassment, sexually hostile work environments or similar misconduct. The Disciplinary Team must review all terminations within the Sheriff's Department prior to their implementation.

- The County must ensure all employees within the Sheriff's Office receive sexual harassment training, at least annually.
- The County must ensure the internal affairs investigators within the Plumas County Sheriff's Office receive training on conducting sexual harassment investigations as required by the Fair Employment and Housing Act.
- The deadlines imposed in this order will not be modified absent a detailed showing of good cause.
- This injunction is permanent and will remain in force unless modified by a court order based on "a significant change in facts or law." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

IT IS SO ORDERED.

DATED: January 9, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE